UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUDSON REALTY CAPITAL FUND III, LP,
HRC FUND III POOLING DOMESTIC LLC,
and HRC FUND III POOLING REIT, LLC,

          Plaintiffs,

      -against-

MILLENIA LUXURY CONDOMINIUMS
(FLORIDA) LLC, EDUARDO AVILA and
JACK KAPLAN,

          Defendants.

Case No.  07 Civ. 03614 (RPP)

ECF CASE

This document has been electronically filed.

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
OR, IN THE ALTERNATIVE, TO TRANSFER THE CASE TO THE UNITED
STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

_____

Howard E. Cotton (HC-1081)
Michael S. Gordon (MG-2181)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Phone: (212) 940-6666
Fax:    (212) 894-5966

*Attorneys for Plaintiffs Hudson Realty
Capital Fund III, LP, HRC Fund III
Pooling Domestic LLC, and HRC Fund III
Pooling REIT LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................. 1

Statement of Relevant Facts and Procedural History....................................................... 4

A. The Complaint.................................................................................................. 4

B. The Mandatory Forum Selection Clauses in the Mezzanine Loan Documents ................. 5

C. Procedural History ........................................................................................... 8

    1. The Improperly Commenced Florida Federal Action ................................................. 8

ARGUMENT ........................................................................................................ 11

I. THE MANDATORY FORUM SELECTION CLAUSES
   IN THE MEZZANINE LOAN DOCUMENTS TRUMP THE
   COMPULSORY COUNTERCLAIM RULE AND PERMIT
   PLAINTIFFS TO PROCEED WITH THIS ACTION...................................................... 11

    A. The Forum Selection Clauses in the Mezzanine Loan
      Documents are Mandatory and Enforceable .............................................. 12

    B. Defendants' Misapplication of the Compulsory Counterclaim
      Rule in an Attempt to Nullify the Mandatory Forum Selection
      Clauses in the Mezzanine Loan Documents Must Be Rejected............................... 13

II. DEFENDANT'S ALTERNATIVE MOTION TO
    TRANSFER VENUE ALSO IS DEFEATED BY THE
    PARTIES' MANDATORY FORUM SELECTION CLAUSE....................................... 15

III. DEFENDANTS HAVE FAILED TO MEET THEIR
    BURDEN OF DEMONSTRATING THAT DISMISSAL
    OF PLAINTIFFS HRC DOMESTIC AND HRC REIT
    IS WARRANTED UNDER FED R. CIV. P. 8(a) ......................................................... 18

CONCLUSION...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

800-Flowers, Inc. v. Intercontinental Florist, Inc.,
860 F. Supp. 128 (S.D.N.Y. 1994)...................................................................... 17

AGR Financial, LLC v. Ready Staffing, Inc.,
99 F.Supp.2d 399 (S.D.N.Y. 2000)................................................................ 12, 13

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v.
LaFarge North America, Inc.,
474 F.Supp.2d 474 (S.D.N.Y. 2007)................................................................... 17

Argonaut Partnership, L.P. v. Bankers Trustee Co., Ltd.,
Nos. 96 Civ. 1970 (MBM), 96 Civ. 2222 (MBM),
1997 WL 45521 (S.D.N.Y. Feb. 4, 1997) ............................................................ 13

Citibank N.A. v. Collins,
No 90 Civ. 3330 (KMW), 1991 WL 64174 (S.D.N.Y. Apr. 15, 1991) .................... 16

Internet Law Library, Inc. v. Southridge Capital Management LLC,
208 F.R.D. 59 (S.D.N.Y. 2002) ......................................................................... 17

Jones v. Weibrecht,
901 F.2d 17 (2d Cir. 1990)................................................................................. 12

K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition,
36 F.Supp.2d 200 (S.D.N.Y. 1999).................................................................... 13

Karl Koch Erecting Co., Inc. v. New York Convention Center Development Corp.,
838 F.2d 656 (2d Cir. 1988).............................................................................. 14

Koch v. Hicks (In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.),
457 F.Supp.2d 298 (S.D.N.Y. 2006).................................................................. 18

Koninklijke Philips Electronics v. Digital Works, Inc.,
358 F.Supp.2d 328 (S.D.N.Y 2005).................................................................. 12

Kramer v. Time Warner, Inc.,
937 F.2d 767 (2d Cir. 1991).............................................................................. 11

Leasing Service Corp. v. Graham,
646 F. Supp. 1410 (S.D.N.Y. 1986).................................................................. 16

Lombardozzi v. Debroux,
     No. 91-CV-1001, 1992 WL 246872, (N.D.N.Y. Sept. 23, 1992) ........................................... 14

Marshall v. Grant,
     No. 06-5358 (DRH), 2007 WL 3307006 (E.D.N.Y. Nov. 6, 2007)....................................... 20

M/S Bremen v. Zapata Off-Shore Co.,
     407 U.S. 1 (1972) ................................................................................................................ 13

National Ass'n of College Bookstores v. Cambridge University Press,
     990 F. Supp. 245 (S.D.N.Y. 1997) ...................................................................................... 18

Prezzi v. Schelter,
     469 F.2d 691 (2d Cir. 1972) ................................................................................................ 20

Publicis Communications v. True North Communications, Inc.,
     132 F.3d 363 (7th Cir. 1997) ............................................................................................... 14

Sokkia Credit Corp. v. Bush,
     147 F.Supp.2d 1101 (D. Kansas 2001) ................................................................................ 14

Southern Constr. Co. v. Pickard,
     371 U.S. 57 (1962) .............................................................................................................. 14

Starad, Inc. v. Lawson Software, Inc.,
     2004 WL 2093512 (S.D.N.Y. Sept. 16, 2004) ..................................................................... 13

Subaru Distribs. Corp. v. Subaru of Am., Inc.,
     425 F.3d 119 (2d Cir. 2005).................................................................................................. 11

STATE CASES

Nat'l Union Fire Ins. Co. v. Weir,
     131 A.D.2d 380, 517 N.Y.S.2d 141 (1st Dep't 1987) ............................................................ 12

FEDERAL STATUTES

28 U.S.C. § 1404 .................................................................................................... 2, 4, 15, 16, 17

Fed R. Civ. P. 8(a) ................................................................................................... 4, 18, 20, 21

Fed. R. Civ. P. 12(b)(3)................................................................................................................ 3, 9

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 4, 11, 18

Fed. R. Civ. P. 13(a) ...................................................................................................... 13, 14

Plaintiffs, Hudson Realty Capital Fund III, LP ("Hudson"), HRC Fund III Pooling Domestic LLC ("HRC Domestic"), and HRC Fund III Pooling REIT, LLC ("HRC REIT") (collectively, "Plaintiffs") respectfully submit this memorandum of law, together with the accompanying affidavit of Michael S. Gordon, sworn to November 30, 2007 ("Gordon Aff."), in opposition to the motion of Defendants, Millenia Luxury Condominiums (Florida), LLC ("Millenia"), Eduardo Avila ("Avila") and Jack Kaplan ("Kaplan") (collectively "Defendants") to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, to transfer the case to the United States District Court for the Southern District of Florida.[1]

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that the action pending before this Court "is a virtual mirror image" and "arises from the same transactions and occurrences" (Def. Mem. at 1) of an action previously filed by Defendants in the U.S. District Court for the Southern District of Florida, which action is entitled Millenia Luxury Condominiums (Florida) LLC, Eduardo Avila and Jack Kaplan v. Hudson Realty Capital Fund III LP, HRC Fund III Pooling Domestic LLC, and HRC Fund III Pooling REIT, LLC, No. 07-20332-CIV-Graham/O'Sullivan (S.D. Fla.) (the "Florida Federal Action"). Indeed, the same parties here are before the Southern District of Florida, both actions turn on the same operative facts, and in both actions, the parties seek declaratory relief and damages in connection with the same loan documents, i.e., a Mezzanine Guaranty and a Mezzanine Loan Agreement (the "Mezzanine Loan Documents").

---

[1]    Defendants' Memorandum of Law in Support of their Motion to Dismiss or, in the Alternative, to Transfer Venue to the Southern District of Florida is referred to herein as "Def. Mem."

However, Defendants purport to rewrite history by arguing that Plaintiffs' commencement of the instant action was part and parcel of an "epic saga of avoidance, evasion and misdirection," all designed to "forum shop this litigation" to a jurisdiction that would "serve to disadvantage" Defendants (Def. Mem at 1-2). Quite the opposite is true. As amplified below, only a New York court is the proper forum for the parties' dispute based on Defendants' contractual agreement, in clear and unambiguous terms: (i) that the Mezzanine Loan Documents were governed by New York law, (ii) that all disputes "arising out of or relating to" the Mezzanine Loan Documents would be litigated in any state or federal court located in the City of New York, and (iii) that Defendants "irrevocably submitted" to the jurisdiction of these New York courts. Further, in the Mezzanine Loan Documents, Defendants expressly **waived** any and all objections based on venue or forum non conveniens—the very foundation of their improper "alternative" motion, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Southern District of Florida.

In advancing their tale, Defendants utterly ignore the mandatory forum selection clauses at issue here and, instead, attempt to cast Plaintiffs in the very role that Defendants themselves have played in their race to the courthouse (*i.e.*, to beat Plaintiffs) and commence an action, albeit, in an improper forum. Indeed, Defendants, as guarantors on the defaulted loans at issue, are the true defendants here, which is precisely why the Mezzanine Loan Documents conferred exclusive authority upon Plaintiffs to enforce their rights under these Documents solely in the state and federal courts of New York. Defendants apparently believed that, by assuming an offensive posture (*i.e.*, as purported plaintiffs) in an improper forum (the Southern District of Florida)—in patent contravention of the Mezzanine Loan Documents they signed—they somehow would avoid, or at least delay, the enforcement of their obligations under the

Mezzanine Loan Documents at issue. That they would impute such dilatory motives to Plaintiffs is equally preposterous, and, in any event, belied by the fact that shortly after Defendants filed their Amended Complaint in the Florida Federal Action, Plaintiffs commenced the instant action in New York Supreme Court (which Defendants later removed to this Court), and then four days later, moved to dismiss the Florida Federal Action, pursuant to Fed. R. Civ. P. 12(b)(3), based on the mandatory forum selection clauses contained in the Mezzanine Loan Documents. Although Plaintiffs' dismissal motion still is *sub judice* before the Southern District of Florida, Plaintiffs fully expect that the Florida federal court will reach the same conclusion that the Court will reach here: that the mandatory forum selection clauses in the Mezzanine Loan Documents require that the instant action remain in New York.

In the same vein, the lynchpin of Defendants' argument for dismissal on the instant motion—that Plaintiffs' claims here should have been asserted as compulsory counterclaims in the Florida Federal Action, or, alternatively, that the venue of this action should be transferred to the Southern District of Florida—ultimately turns on the fallacy that the "first-filed" Florida Federal Action was proper. To the contrary, Defendants brought the Florida Federal Action not only to avoid the mandatory forum selection clauses at issue here, but to assume the guise of plaintiffs, when they are, in fact, defendant guarantors on a defaulted loan. Indeed, as amplified below, it is well-settled that a party to a forum selection clause does not have to file a compulsory counterclaim in an improper forum, like the Southern District of Florida, in order to avoid having that claim barred in a proper forum, *i.e.*, the courts of New York. Similarly, where, like here, parties contractually have agreed to litigate in a specific forum, and have waived objections based on venue or forum non conveniens (as Defendants have done here), courts

routinely have enforced these mandatory forum selection clauses and have denied venue transfer motions premised on "inconvenience" or the "first-filed" rule.

Finally, Plaintiffs more than adequately have complied with the notice pleading requirement of Fed. R. Civ. P. 8(a), such that Defendants' motion to dismiss the claims of Plaintiffs HRC Domestic and HRC REIT must be denied. Consistent with Rule 8(a)'s liberal pleading requirements, the Complaint clearly affords Defendants fair notice of the claims of HRC Domestic and HRC REIT and the grounds upon which they rest. Moreover, the Court may take judicial notice of the fact that Defendants themselves have named HRC Domestic and HRC REIT as defendants in their Second Amended Complaint in the Florida Federal Action based on the same facts and circumstances alleged in the Complaint here. As such, Defendants' motion to dismiss these parties from the instant action must be denied.

For all these reasons, and those set forth below, Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) must be denied in its entirety.

## <u>Statement of Relevant Facts and Procedural History</u>

### A.    <u>The Complaint</u>

In their Complaint, Plaintiffs allege that this is an action for declaratory relief regarding the extent of recourse available under a Mezzanine Guaranty Agreement (the "Guaranty"), signed by Defendants, as guarantors of certain loan obligations under a Mezzanine Loan Agreement (the "Loan Agreement") (Gordon Aff., Ex. A, Compl. ¶ 1 and Exs. A and B thereto) (the Guaranty and Loan Agreement are referred to herein as the "Mezzanine Loan Documents"). Under the Guaranty, Plaintiffs have agreed to guarantee obligations of borrower, Mezzanine Luxury Condominiums Mezz LLC (the "Mezzanine Borrower"), for a mezzanine loan in the

amount of $13,400,000 (the "Mezzanine Loan") made by Plaintiff Hudson in connection with a residential condominium project in Orlando, Florida (the "Condo Project") (Gordon Aff., Ex. A, Compl. ¶ 12).  Further, it is alleged that, to secure repayment on the Mezzanine Loan, Defendant Millenia pledged all membership interests in itself to Plaintiff Hudson as collateral on the Mezzanine Loan (the "Pledged Equity") (id. ¶¶ 16 and 18), which Pledged Equity was assigned by Plaintiff Hudson to Plaintiff HRC Domestic (id. ¶ 18).  The Mezzanine Loan matured on February 1, 2007, and despite such maturity, the Complaint alleges that the balance due thereunder has not been paid.  (Id. ¶ 23).

Concurrent with the creation of the Mezzanine Loan, non-party Fremont Investment & Loan ("Fremont") loaned Defendant Millenia the amount of $69,750,000  (the "Fremont Loan"), in consideration for which Defendant Millenia granted Fremont a first mortgage on the Condo Project to secure repayment of the Fremont Loan.  (Gordon Aff., Ex. A, Compl. ¶¶ 19-21).  The Fremont Loan matured on January 1, 2007, and despite such maturity, the Complaint alleges that the balance due thereunder has not been paid.  (Id. ¶ 22).  Further, it is alleged that Plaintiff HRC REIT has commenced a foreclosure action in Orange County, Florida in connection with the Fremont Loan. (Id. ¶ 32).

Accordingly, in this action, Plaintiffs seek a declaration that the recourse available to them under the Guaranty extends to all Outstanding Loan Obligations (id. ¶¶ 32-34) and further seek a judgment for breach of Defendants' payment obligations under the Guaranty (id. ¶¶ 36-38).

**B.**    **The Mandatory Forum Selection Clauses in the Mezzanine Loan Documents**

Although conspicuously omitted from Defendants' moving papers, the Complaint alleges that Defendants "contractually consented to the exclusive jurisdiction of the courts located in

New York County, New York, and waived any claim based on *forum non conveniens*." (Gordon

Aff., Ex. A, Compl. ¶ 10 (emphasis in original)).

Indeed, in the Guaranty, Defendants agreed that "any legal suit, action or proceeding

against . . . any guarantor arising out of or relating to this Guaranty or the other Loan

Documents" was to be brought "in any federal or state court in the City of New York, County

and State of New York" as follows:

**5.3    GOVERNING LAW.**

**(a)    THIS GUARANTY WAS NEGOTIATED IN THE STATE OF NEW YORK, THE LOAN TO WHICH THIS GUARANTY RELATES WAS MADE BY LENDER AND ACCEPTED BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF SUCH LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, EACH GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY AND/OR THE OTHER LOAN DOCUMENTS, AND THIS GUARANTY AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

**ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR ANY GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY AND STATE OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND EACH GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON-CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND EACH GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.**

(See Gordon Aff, Ex. A, Compl., Ex. A thereto at sec. 5.3 (capitals and bold in original)).

Likewise, under the Loan Agreement, Defendants agreed that the "Mezzanine Loan Documents," which are defined to include the Loan Agreement and the Guaranty (Gordon Aff., Ex. A, Compl., Ex. B thereto at sec. 2.3), are governed by New York law and that "all actions or proceedings arising in connection with" the Mezzanine Loan Documents were to be brought in New York, as follows:

**Section 8.4    Governing Law; Service of Process; Waivers.**

8.4.1.   This Agreement shall be deemed to be a contract under the laws of the State of New York and for all purposes shall be governed by and construed and enforced in accordance with the laws of New York, without regard to its conflict of laws principles except those contained in Section 5-1401 of the New York General Obligations law.

8.4.2.   All actions or proceedings arising in connection with the Mezzanine Loan Documents (including, without limitation, this Agreement) ***shall be tried and litigated in state or Federal courts located in the State of New York*** pursuant to Section 5-1402 of the New York General Obligations Law, except as otherwise required pursuant to the Mezzanine Mortgage and the Mezzanine Assignment of Leases and unless such actions or proceedings are

required to be brought in another court to obtain subject matter jurisdiction over the matter in controversy. **MEZZANINE BORROWER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON-CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE HEREWITH.**

\* \* \*

8.4.4.  **MEZZANINE BORROWER HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY SUIT, ACTION, OR PROCEEDING BROUGHT BY MEZZANINE LENDER UNDER THE MEZZANINE LOAN DOCUMENTS (INCLUDING, WITHOUT LIMITATION, THIS AGREEMENT), ANY AND EVERY RIGHT MEZZANINE BORROWER MAY HAVE TO (a) INJUNCTIVE RELIEF, (b) INTERPOSE ANY COUNTERCLAIM THEREIN (EXCEPT FOR ANY COMPULSORY COUNTERCLAIM WHICH, IF NOT ASSERTED IN SUCH PROCEEDING WOULD BE WAIVED), AND (c) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING.**

(Gordon Aff., Ex. A, Compl., Ex. B thereto at sec. 8.4 (italicized bold lowercase emphasis in sec. 8.4.2 supplied; all other capitalization and bold emphases in secs. 8.4.2 and 8.4.4 in original)).

## C.    Procedural History

### 1.    The Improperly Commenced Florida Federal Action

Notwithstanding Defendants' contractual agreement to litigate all disputes concerning the Mezzanine Loan Documents in the state or federal courts of New York, and their irrevocable waiver of all objections based on venue or forum non conveniens, Defendants have sought to avoid their contractual obligations by commencing an action in an improper forum.  In the Florida Federal Action, Defendants seek, *inter alia*, the inverse of the relief sought here: a declaration against Plaintiffs that Defendants have no obligation or liability under the Mezzanine Loan Documents at issue here (See, e.g., Gordon Aff., Ex. A, Compl. ¶ 26; see also Defs.

Motion, Exs. A and B thereto). Although Defendants fail to annex the Complaint to the instant motion to dismiss, Defendants saw fit to annex (as Exhibits A and B, respectively) their initial and amended complaints in the Florida Federal Action.

As borne out by the docket sheet in the Florida Federal Action (Gordon Aff., Ex. B), the parties entered into joint stipulations on February 28, 2007 and April 4, 2007, extending the time for Plaintiffs herein to respond to Defendants' initial complaint in that Action. Then, Defendants filed their Amended Complaint in the Florida Federal Action on April 10, 2007. During the months of February, March and part of April, the parties participated in settlement discussions, and Plaintiffs made clear that were these discussions to fail (which they did), Plaintiffs intended to commence the instant action in New York and to seek dismissal of the Florida Federal Action based on the mandatory forum selection clauses in the Mezzanine Loan Documents.

Shortly after the parties' settlement discussions broke down, on April 26, 2007, Plaintiffs commenced the instant action, which initially was filed in New York Supreme Court, New York County, Hudson Realty Capital Fund III, LP., et al. v. Millenia Luxury Condominiums (Florida), LLC, et al., Index No. 601392/07, and then removed to this Court by Defendants, pursuant to a Notice of Removal filed on May 7, 2007. Shortly thereafter, on April 30, Plaintiffs moved to dismiss the Amended Complaint in the Florida Federal Action, pursuant to Rule 12(b)(3) based, *inter alia*, on the mandatory forum selection clauses that are before the Court on the instant motion- (Gordon Aff., Ex. B).

On May 11, 2007, Defendants filed the instant motion to dismiss and/or transfer venue, conspicuously omitting any reference to the pendency of Plaintiffs' dismissal motion in the Florida Federal Action and/or the basis for the same: the mandatory forum selection clauses in the Mezzanine Loan Documents.

On May 25, 2007, Defendants sought leave to file a Second Amended Complaint in the Florida Federal Action, which application was unopposed and granted on May 29, 2007 (see Gordon Aff., Ex. B). A copy of the Second Amended Complaint in which Plaintiffs Hudson, HRC Domestic and HRC REIT are defendants therein (and Defendants Millenia, Avila and Kaplan are plaintiffs therein) is annexed to the accompanying Gordon Affidavit as Exhibit C. Thereafter, on May 31, Plaintiffs herein moved to dismiss the Second Amended Complaint in the Florida Federal Action (see Gordon Aff., Ex. B), which motion, like their prior motion, was based on the mandatory forum selection clauses contained in the Mezzanine Loan Documents.

In the interim, the parties jointly submitted numerous requests to this Court to extend Plaintiffs' time to respond to the instant motion, which the parties believed would serve the dual interests of litigation efficiency and avoiding the possibility of inconsistent rulings in the instant and Florida Federal Actions. After requesting and obtaining three adjournments from the Court with respect to the instant motion, in early September, the parties informed the Court that a mediation had been scheduled in the Florida Federal Action for October 22, 2007, which, if successful, would obviate the need for motion practice here and possibly could result in the discontinuance of the instant action.

The parties' mediation commenced on October 22 before the Honorable Herbert Stettin, a retired Florida state court judge, and Judge Stettin continued to caucus with the parties through the second week in November. Believing that a settlement would be reached, on November 9, 2007, the parties jointly sought a final extension of Plaintiffs' time to respond to the instant motion due to, *inter alia*, the continuation of a mediation in the Florida Federal Action. The Court granted such final extension until November 30. Unfortunately and unexpectedly, the parties reached an impasse in the mediation, thus necessitating Plaintiffs to file their opposition

to the instant motion, which motion, for all the reasons set forth hereinabove and below, should be denied in its entirety.

## **ARGUMENT**

When considering a motion under Rule 12(b)(6), the court should dismiss the complaint only where, unlike here, "it appears beyond doubt that the [non-movant] can prove no set of facts in support of his claim which would entitle him to relief."  <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991) (internal quotations omitted).  Although a court usually is limited to the facts alleged in a complaint when evaluating a motion to dismiss, a court may consider "any written instrument attached to the [pleading] as an exhibit  . . ., as well as documents upon which the complaint relies and which are integral to the complaint" such as the Mezzanine Loan Documents at issue here, and the pleadings and docket sheet from the Florida Federal Action. <u>Subaru Distribs. Corp. v. Subaru of Am., Inc.</u>, 425 F.3d 119, 122 (2d Cir. 2005).   As demonstrated below, the allegations of the Complaint, as well as the documents annexed thereto and referenced therein, all demonstrate that Defendants' motion must be denied in its entirety.

I. **THE MANDATORY FORUM SELECTION CLAUSES IN THE MEZZANINE LOAN DOCUMENTS TRUMP THE COMPULSORY COUNTERCLAIM RULE AND PERMIT PLAINTIFFS TO PROCEED WITH THIS ACTION**

Defendants' motion to dismiss the instant action under the guise of the compulsory counterclaim rule is both misleading and mistaken.  Defendants contend that the instant action should be dismissed on the purported ground that it is duplicative of the Florida Federal Action and premised upon claims "that would be compulsory counterclaims" in that Action. (Def. Mem. at 4).  However, much as Plaintiffs expect to prevail on their dismissal motion in the Florida Federal Action, Defendants' "compulsory counterclaim" argument must fall under the weight of

the mandatory forum selection clauses contained in the Mezzanine Loan Documents at issue here.

**A.      The Forum Selection Clauses in the Mezzanine**
**          Loan Documents are Mandatory and Enforceable**

In the Mezzanine Loan Documents, Defendants contractually agreed, in clear and unambiguous terms, to litigate all disputes "arising out of or relating to" the Mezzanine Loan Documents "in any federal or state court in the City of New York, County and State of New York."  (See Gordon Aff., Ex. A, Compl., Ex. A thereto at sec. 5.3; see also id. Ex. B thereto at sec. 8.4.2, where Defendant Millenia agreed that "[a]ll actions or proceedings arising in connection with the Mezzanine Loan Documents . . . shall be tried and litigated in state or Federal courts located in the State of New York").

Forum selection clauses, like those contained in the Mezzanine Loan Documents, "are enforceable under both federal and New York law."[2] Koninklijke Philips Electronics v. Digital Works, Inc., 358 F.Supp.2d 328, 331 (S.D.N.Y 2005) (citations omitted).  For example, in AGR Financial, LLC v. Ready Staffing, Inc., 99 F.Supp.2d 399 (S.D.N.Y. 2000), the court deemed a forum selection clause containing language virtually identical to that contained in the Guaranty here to be "mandatory" and enforceable.[3]  Accordingly, the forum selection clauses in the

---

[2]    The Mezzanine Loan Documents provide for the application of New York law  (Gordon Aff., Ex. A, Compl., Ex. A thereto at sec. 5.3; Ex. B thereto at sec. 8.4.1) and New York courts have "applied a similar if not identical standard" to that applied under federal law in determining the validity of forum selection clauses.  Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990) (citing Nat'l Union Fire Ins. Co. v. Weir, 131 A.D.2d 380, 381, 517 N.Y.S.2d 141, 142 (1st Dep't 1987)).

[3]    Like the forum selection clause here providing that any action regarding the Mezzanine Loan Documents "may at Lender's option" be brought in New York state or federal court, the forum selection clause in AGR Financial provided that any action regarding the agreement at issue there "may" be brought, at one party's election, in New York state or federal courts.  99 F.Supp.2d at 402.  Defendants likely will argue—as they did in opposition to Plaintiffs' motion to dismiss in the Florida Federal Action—that the word "may" makes the forum selection clause in the Guaranty "permissive" rather than "mandatory."  The AGR Financial court flatly rejected this red herring argument, holding that "[t]he use of the word 'may' does not negate the mandatory nature of the forum selection clause." 99 F.Supp.2d at

Mezzanine Loan Documents must be enforced unless Defendants are able to meet their "'heavy burden' of showing that adjudication in the contractually-dictated forum 'will be so manifestly and gravely inconvenient that [they] will be effectively deprived of a meaningful day in court . . . or that the clause [is] invalid for such reasons as fraud or overreaching.'" Starad, Inc. v. Lawson Software, Inc., 2004 WL 2093512 at * 1 (S.D.N.Y. 2004) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 19 (1972)).  Defendants cannot even attempt to meet this "heavy burden" since they have irrevocably waived any objections based on venue and/or forum non conveniens, see infra, Point II.   Moreover, mere inconvenience to a party cannot prevent enforcement of an otherwise valid forum selection clause.  See, e.g., K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition, 36 F.Supp.2d 200, 202 (S.D.N.Y. 1999). Accordingly, Defendants' motion to dismiss the instant action in favor of a previously filed action commenced by them in an improper forum must be denied.

**B.      Defendants' Misapplication of the Compulsory Counterclaim Rule in an Attempt to Nullify the Mandatory Forum Selection Clauses in the Mezzanine Loan Documents Must Be Rejected**

Even though the claims asserted in this action "arise out of the transaction or occurrence that is the subject matter" of the Florida Federal Action, see Fed. R. Civ. P. 13(a), Defendants should not be permitted to contort the compulsory counterclaim rule to further their avoidance of a contractually-mandated forum (i.e., the state and federal courts of New York).  Indeed, courts

---

402.  Further, the AGR Financial court held that language conferring discretionary authority upon one party to enforce the clause ("as AGR may elect," which is similar to the unilateral enforcement authority conferred by the phrase "at Lender's option" in the Guaranty here) "[did] not detract from its mandatory nature and hence, its enforceability."  Id. at 403 (emphasis added).   See also Argonaut Partnership, L.P. v. Bankers Trustee Co., Ltd., Nos. 96 Civ. 1970 (MBM), 96 Civ. 2222 (MBM), 1997 WL 45521 at * 13 (S.D.N.Y. Feb. 4, 1997) (holding that forum selection clause providing for commencement of litigation "at the choice of plaintiff" in the courts of Guadalajara or New York was mandatory rather than permissive)

have determined that the need to uphold contractual forum selection clauses like those at issue here takes precedence over the compulsory counterclaim rule under Fed. R. Civ. P. 13(a).

For example, in Karl Koch Erecting Co., Inc. v. New York Convention Center Development Corp., 838 F.2d 656 (2d Cir. 1988), the Second Circuit held that a party "would not be permitted to assert counterclaims," even if they were compulsory, in an action barred by a forum selection clause. Id. at 659. The Second Circuit reasoned that to hold otherwise would lead to "bifurcation of litigation [that] seems plainly at odds with the obvious purpose of the forum selection clause, as well as with the purpose of Fed. R. Civ. P. 13(a)."[4] Id.; see also Lombardozzi v. Debroux, No. 91-CV-1001, 1992 WL 246872 at *3, (N.D.N.Y. Sept. 23, 1992) (declining to exercise supplemental jurisdiction over a "compulsory counterclaim" which implicated an agreement containing a forum selection clause that conferred exclusive jurisdiction on another forum); Publicis Communications v. True North Communications, Inc., 132 F.3d 363, 366 (7th Cir. 1997) (holding that, where, like here, "the parties promise to litigate a dispute only in a particular forum, a party to the contract cannot seek to bar the litigation in that forum because the claim was not presented in some other forum"); and Sokkia Credit Corp. v. Bush, 147 F.Supp.2d 1101, 1105-06 (D. Kansas 2001) (holding that a party to a forum selection clause does not have to "file a compulsory counterclaim in an improper forum to avoid having that claim barred in a proper forum").

---

[4]    Defendants themselves readily acknowledge the litigation efficiency underpinnings of Rule 13(a) in the compulsory counterclaim section of their brief, noting that Rule 13(a) was "designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." (Def. Br. at 3, quoting Southern Constr. Co. v. Pickard, 371 U.S. 57, 60 (1962)).  Consistent with the foregoing principles of litigation economy, Defendants unambiguously agreed in the Guaranty that New York had a "substantial relationship" with the loan documents at issue here and that they would litigate any dispute "arising out of or relating to" these documents "in any federal or state court in the City of New York"  and "waive" any objections thereto based on inconvenience or otherwise.  (Gordon Aff., Ex A., Compl., Ex. A thereto at sec. 5.3).

Unlike the above-cited cases and the case at bar, all of Defendants' cases cited on pages 3 to 4 of their moving brief, involve the direct application of the compulsory counterclaim rule *in the absence of any forum selection clause*. As such, Defendants' cases are irrelevant and inapposite to the case at bar.

For all these reasons, it is respectfully submitted that the compulsory counterclaim rule must be subordinated to the parties' contractual agreement here to litigate in the state and federal courts of New York, and thus, Defendants' motion to dismiss the Complaint on this basis must be denied.

## II.    DEFENDANT'S ALTERNATIVE MOTION TO TRANSFER VENUE ALSO IS DEFEATED BY THE PARTIES' MANDATORY FORUM SELECTION CLAUSE

For the same reasons that their compulsory counterclaim argument must fail, Defendants' motion to transfer venue of this action pursuant to 28 U.S.C. § 1404 also must fail in the face of the mandatory forum selection clauses in the Mezzanine Loan Documents. Notably, in the Guaranty, Defendants expressly "*waive[d]* any objections which [they] may now or hereafter have based on venue and/or forum non-conveniens" and "*irrevocably submit[ted]* to the jurisdiction" of "any federal or state court in the City of New York." (Gordon Aff., Ex. A, Compl., Ex. A thereto at sec. 5.3(b) (emphasis added)). Similarly, in the Loan Agreement, Defendant Millenia expressly "*waive[d]* any right it may have to assert the doctrine of forum non-conveniens, to assert that it is not subject to the jurisdiction of such courts or to object to venue to the extent any proceeding is brought in accordance herewith." (<u>Id.</u>, Ex. B thereto at sec. 8.4.2 (emphasis added)). Further, with respect to any action brought by Plaintiff Hudson under the Mezzanine Loan Documents, Defendant Millenia "*expressly and unconditionally waive[d]* . . . any and every right" that it might have to have such action "consolidated with any other or separate suit, action or proceeding." (<u>Id.</u> at sec. 8.4.4 (emphasis added)).

In the face of these unequivocal contractual waivers, Defendants' motion to transfer venue to the Southern District of Florida on the grounds of convenience  (Def. Mem. at 7) and their invitation to the Court to consider the various factors attendant to a Section 1404(a) analysis must be rejected outright.  See, e.g., Citibank N.A. v. Collins, No. 90 Civ. 3330 (KMW), 1991 WL 64174 at * 3 (S.D.N.Y. Apr. 15, 1991), (denying a motion to transfer venue under 28 U.S.C. §1404(a) where, like here, the defendant expressly had waived her right to contest the convenience of the forum in a forum selection clause); and Leasing Service Corp. v. Graham, 646 F. Supp. 1410, 1415 (S.D.N.Y. 1986) (holding that "[a] party who signs an agreement containing venue and jurisdiction selection clauses may be deemed to have waived his right to assert his own convenience as a factor favoring a transfer to another forum under Section 1404(a)").

Notably, even if the Court were to conduct the traditional analysis attendant to a venue transfer application under Section 1404(a), Defendants have acknowledged in the Guaranty that this instrument was "negotiated in the State of New York, the loan to which this Guaranty relates was made by Lender and accepted by Borrower in the State of New York, and the proceeds of such loan were disbursed from the State of New York, which State the parties agree has a *substantial relationship* to the parties and to the underlying transaction embodied hereby." (Gordon Aff., Ex. A, Compl., Ex. A thereto at sec. 5.3 (emphasis supplied)).  As such, many of the factors identified by Defendants in their moving brief—the convenience of witnesses, the location of relevant documents and the relative ease of access to sources of proof, the locus of the operative facts, the forum's familiarity with the governing law, the existence of a mandatory forum selection clause, and trial efficiency and the interests of justice, based on the totality of the circumstances—all tip the balance in favor of New York as the proper venue. (See Def. Mem. at

6-7 n.2, *citing* <u>American Steamship Owners Mutual Protection and Indemnity Association, Inc.</u> <u>v. LaFarge North America, Inc.</u>, 474 F.Supp.2d 474 (S.D.N.Y. 2007) ("<u>American Steamship</u>")).

In a last ditch effort to circumvent the forum selection clauses in the Mezzanine Loan Documents, Defendants invoke the "first-filed" rule as a basis for transferring this action to the Southern District of Florida. In essence, Defendants are asking the Court to reward forum shopping over contract enforcement. Although both cases cited by Defendants in support of their "first-filed" argument, <u>American Steamship</u> and <u>800-Flowers, Inc. v. Intercontinental</u> <u>Florist, Inc.</u>, 860 F. Supp. 128 (S.D.N.Y. 1994), do not involve a mandatory forum selection clauses and, thus, are inapposite to the case at bar, both those courts noted that an analysis of whether or not to apply the "first-filed" rule and whether or not to transfer venue under Section 1404(a) are essentially the same. 474 F.Supp.2d at 481; 860 F.Supp.2d at 1. Accordingly, as with their venue transfer application, Defendants' irrevocable submission to the jurisdiction of New York federal and state courts, their waiver of objections based on venue and forum non conveniens, and their acknowledgment of the "substantial relationship" between the Mezzanine Loan Documents and the State of New York similarly require Defendants' "first-filed" argument to fail. Indeed, in <u>Internet Law Library, Inc. v. Southridge Capital Management LLC</u>, 208 F.R.D. 59, 64 (S.D.N.Y. 2002), the court recognized that where, like here, a party forum shops to avoid a mandatory forum selection clause, such forum shopping "vitiate[s] a party's priority in filing."

For all these reasons, it is respectfully submitted that Defendants' alternative application to transfer venue of this action to the Southern District of Florida under Section 1404(a) or the "first-filed" rule, must be denied.

**III.    DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN OF
DEMONSTRATING THAT DISMISSAL OF PLAINTIFFS HRC DOMESTIC
AND HRC REIT IS WARRANTED UNDER FED R. CIV. P. 8(a)**

Presumably realizing that the forum selection clauses at issue here defeat their
compulsory counterclaim, venue transfer and "first-filed" arguments, Defendants attempt to
distract the Court with the argument that Plaintiffs HRC Domestic and HRC REIT should be
dismissed from the instant action on the purported ground that Plaintiffs have failed to comply
with Fed. R. Civ. P. 8(a)'s notice pleading requirements (*i.e.*, that a complaint provide "a short
and plain statement of a claim showing that the pleader is entitled to relief") (Def. Mem. at 5,
*quoting* Fed. R. Civ. P. 8(a)(2)).

Defendants' moving brief is bereft of authority on this point, and for good reason—the
weight of authority militates against dismissal of these parties. Indeed, Rule 8(a) sets a lower bar
than Rule 12(b)(6) and "does not require a plaintiff to plead the legal theory, facts or elements
underlying his claim." Koch v. Hicks (In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.), 457
F.Supp.2d 298, 303-04 (S.D.N.Y. 2006) (citations omitted). Rather, Rule 8(a) is satisfied where,
like here, the complaint provides "fair notice of what the plaintiff's claim is and the grounds
upon which it rests." National Ass'n of College Bookstores v. Cambridge University Press, 990
F. Supp. 245, 252 (S.D.N.Y. 1997) (citations omitted).

The Complaint clearly affords Defendants fair notice of the claims of HRC Domestic and
HRC REIT and the grounds upon which they rest. Indeed, the Complaint alleges that in June
2005, Defendant Millenia entered into various loan agreements with non-party Fremont in
connection with a $69,750,000 loan made by Fremont to Defendant Millenia (the "Fremont
Loan"), which Fremont Loan was used to partially finance the acquisition of the Condo Project
at issue here. (Gordon Aff., Ex. A, Compl. ¶ 19). Further, it is alleged that, to secure repayment
of the loans at issue (*i.e.*, the Mezzanine and Fremont Loans), Defendant Millenia granted

Fremont a first purchase money mortgage in the Condo Project (id. ¶ 21) and granted Plaintiff Hudson a security interest in all of the membership interests of Defendant Millenia so as to secure repayment of the Mezzanine Loan (id. ¶¶ 16 and 18).  With respect to HRC Domestic, the Complaint alleges that, in August 2006, a UCC-3 Financing Statement was filed with the Delaware Department of State, reflecting that Plaintiff Hudson had assigned the membership interests in Defendant Millenia to Plaintiff HRC Domestic.  (Id. ¶ 18).  Both the Secured Promissory Note between Defendant Millenia and Fremont, and the Mezzanine Loan between Defendant Millenia and Plaintiff Hudson matured in early 2007, with the balance due under both Loans unpaid (Id. ¶¶ 22-23).  It is alleged that Plaintiff HRC REIT commenced a foreclosure action in Florida state court (Orange County) (id. ¶¶ 26 and 32), in connection with Defendants' default on the Fremont Loan, that Defendants have contested the same (id. ¶ 32), and that said contest has triggered Defendants' obligations under the Guaranty for "the entire amount of the Outstanding Loan Obligations" (id. ¶¶ 25 and 32).

As such, contrary to Defendants' contention that Plaintiffs' HRC Domestic and HRC REIT "fail to allege a cause of action upon which relief may be granted," the Complaint clearly places Defendants on notice that: (i) Plaintiff HRC Domestic has a vested interest in the outcome of this dispute, as assignee and holder of a security interest in the Pledged Equity on the Mezzanine Loan, (ii) that Plaintiff HRC REIT has a vested interest in the outcome of this dispute as plaintiff mortgagee on the Fremont Loan; and (iii) that because the Guaranty extends to "all Outstanding Loan Obligations" (Gordon Aff., Ex. A, Compl. ¶ 32), including the Fremont and Mezzanine Loans, Plaintiffs HRC Domestic and HRC REIT are united in interest with Plaintiff Hudson in seeking—and, in fact, all three Plaintiffs seek—a declaration with respect to the

extent of recourse available under the Guaranty (id. ¶¶ 32-34) and judgment for breach of Defendants' payment obligations under the Guaranty (id. ¶¶ 36-38).[5]

In addition to Plaintiffs having complied with Rule 8(a)'s pleading requirements, the Court may take judicial notice of the fact that HRC Domestic and HRC REIT are proper parties to the instant action insofar Defendants themselves have named these parties (along with Plaintiff Hudson) as defendants in the Florida Federal Action, based on many of the same allegations contained in the Complaint here, including: (i) Plaintiff Hudson's assignment of all membership interests in Defendant Millenia (i.e., the Pledged Equity) to Plaintiff HRC Domestic (Gordon Aff., Ex. C, Defs. Second Amended Compl. (Florida Federal Action) ¶ 26); and (ii) Plaintiff HRC REIT's purchase of all right, title and interest of Fremont's interest in the Fremont Loan (id. ¶¶ 29-31).[6]  In the Florida Federal Action, Defendants seek a declaration against each of HRC Domestic and HRC REIT that Defendants have "no obligation or liability" to HRC Domestic and HRC REIT under the very same loan agreements at issue here (id. ¶¶ 42-56) and further seek damages against all Plaintiffs under these agreements (id., ¶¶ 57-71).  See, e.g., Marshall v. Grant, 2007 WL 3307006 at * 3 (Nov. 6, 2007) (holding, that "[i]n deciding a 12(b)(6) motion, a court may consider documents referenced in the complaint . . .and matters of which judicial notice may be taken").[7]

---

[5]    Defendants' reliance on Prezzi v. Schelter, 469 F.2d 691 (2d Cir. 1972), is entirely misplaced insofar as the complaint in Prezzi, unlike the Complaint here, was an "88-page, legal size, single spaced" document, which the court described as containing "a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension." Id. at 692.

[6]    The Complaint here does not expressly allege that after the default on the Fremont Loan, Plaintiff HRC REIT acquired the Fremont Loan (so as to protect the Mezzanine Loan from foreclosure), but Plaintiff HRC REIT's interest in the Fremont Loan certainly can be inferred from Plaintiffs' allegation that HRC REIT is the plaintiff mortgagee in the Florida Foreclosure Action (Compl. ¶ 32).

[7]    The Florida Federal Action is referenced at paragraph 26 of Plaintiffs' Complaint, Defendants have annexed as Exhibits A and B to their Motion the initial and amended Complaints filed in that Action, and Plaintiffs have annexed as Exhibit C to the Gordon Affidavit the Second Amended Complaint in the Florida Federal Action.

For all these reasons, the Complaint more than adequately places Defendants on notice of Plaintiffs HRC Domestic's and HRC REIT's claims and the grounds upon which they rest.[8]  As such, Defendants' motion to dismiss Plaintiffs HRC Domestic and HRC REIT must be denied.

## <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully requested that Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) be denied in its entirety.

Dated: November 30, 2007

KATTEN MUCHIN ROSENMAN LLP


By:  ___/s/ Howard E. Cotton_____
    Howard E. Cotton (HC-1081)
    Michael S. Gordon (MG-2181)
    575 Madison Avenue
    New York, New York 10022
    Tel:  (212) 940-8800
    Fax:  (212) 894-5966

    *Attorneys for Plaintiffs Hudson Realty*
    *Capital Fund III, LP, HRC Fund III*
    *Pooling Domestic LLC, and HRC Fund III*
    *Pooling REIT LLC*

---

[8]   In the event that the Court determines that the Complaint does not comply with Rule 8(a)'s notice pleading requirements, Plaintiffs would respectfully request that any dismissal of HRC Domestic and/or HRC REIT be without prejudice and with leave to re-plead.