**GORDON AFFIDAVIT,**

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

HUDSON REALTY CAPITAL FUND III, LP, HRC
FUND III POOLING DOMESTIC LLC, and HRC FUND
III POOLING REIT, LLC,

                  Plaintiffs,

-against-

MILLENIA LUXURY CONDOMINIUMS (FLORIDA)
LLC, EDUARDO AVILA and JACK KAPLAN,

                  Defendants.

------------------------------------------------------------x

**SUMMONS**

Index No. 601392/07

Date Purchased: 4/26/07

FILED 4/26/07

**TO THE ABOVE-NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED and required to serve upon plaintiffs' attorneys an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue is, and this action is properly brought in, New York County, because plaintiffs' residence is at 250 Park Avenue South, 3rd Floor, New York, New York 10003. Additionally, all defendants contractually consented to the exclusive jurisdiction of the courts located in New York County, New York, and waived any claim based on *forum non conveniens*.

NEW YORK
COUNTY CLERK'S OFFICE

APR 2 6 2007

NOT COMPARED
WITH COPY FILE

Dated: New York, New York
April 26, 2007

KATTEN MUCHIN ROSENMAN LLP

By: _____
Howard E. Cotton
Michael S. Gordon
575 Madison Avenue
New York, New York 10022
(212) 940-6666

Attorneys for Plaintiffs
Hudson Realty Capital Fund III, LP,
HRC Fund III Pooling Domestic
LLC, and HRC Fund III Pooling
REIT, LLC

To:

Adorno & Yoss LLP
2525 Ponce de Leon Boulevard
Suite 400
Miami, Florida 33134
Attention: Neil Rollnick, Esq.
(305) 460-1422

Attorneys for Defendants
Millenia Luxury Condominiums (Florida) LLC,
Eduardo Avila and Jack Kaplan

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
HUDSON REALTY CAPITAL FUND III, LP, HRC  : Index No. _____
FUND III POOLING DOMESTIC LLC, and HRC FUND :
III POOLING REIT, LLC,                   : IAS Part
:
                Plaintiffs,  : **COMPLAINT**
:
  -against-                              :
:
MILLENIA LUXURY CONDOMINIUMS (FLORIDA)    :
LLC, EDUARDO AVILA and JACK KAPLAN,       :
:
                Defendants.  :
:
------------------------------------------------------------x

      Plaintiffs, Hudson Realty Capital Fund III, LP ("Hudson"), HRC Fund III Pooling Domestic, LLC. ("HRC Domestic"), and HRC Fund III Pooling REIT, LLC ("HRC REIT") (collectively, the "Plaintiffs"), by their attorneys Katten Muchin Rosenman LLP, as and for their Complaint against defendants, Millenia Luxury Condominiums (Florida), LLC ("Millenia"), Eduardo Avila ("Avila"), and Jack Kaplan ("Kaplan") (collectively, the "Defendants" or "Guarantors") allege as follows.

### Nature of the Action

    1.    This is an action for declaratory relief regarding the extent of recourse available to Plaintiff Hudson under a guaranty agreement, signed by Defendants, as guarantors of, *inter alia*, certain loan obligations under an agreement for a mezzanine loan in the amount of $13,400,000.

### The Parties

    2.    Plaintiff Hudson is a limited partnership organized and existing under the laws of Delaware with its principal place of business 250 Park Avenue South, 3rd Floor, New York, New York 10003.

84211865_1

3. Plaintiff HRC Domestic is a Delaware limited liability company with its principal place of business at 250 Park Avenue South, 3rd Floor, New York, New York 10003.

4. Plaintiff HRC REIT is a Delaware limited liability company with its principal place of business at 250 Park Avenue South, 3rd Floor, New York, New York 10003.

5. Upon information and belief, Defendant Millenia is a Delaware limited liability company with its principal place of business in Miami, Florida.

6. Upon information and belief, Defendant Avila is an individual who resides in Miami, Florida.

7. Upon information and belief, Defendant Kaplan is an individual resides in Miami, Florida.

### Jurisdiction and Venue

8. Defendants have consented to jurisdiction in any state court located in the State of New York in the "Governing Law" clauses contained in the attached Mezzanine Loan Agreement and Guaranty Agreement.

9. Venue is proper pursuant to CPLR § 503 because all plaintiffs do business in New York County.

10. Venue also is proper based upon the "Governing Law" clauses contained in the attached Mezzanine Loan Agreement and Guaranty Agreement, wherein all defendants contractually consented to the exclusive jurisdiction of the courts located in New York County, New York, and waived any claim based on *forum non conveniens*.

## Factual Background

11. On or about June 28, 2005, Plaintiffs executed a document entitled Guaranty Agreement in favor of Hudson as Lender. A true and correct copy of the Guaranty Agreement is attached hereto as Exhibit "A."

12. The Guaranty Agreement related to the guaranty by the Guarantors of the obligations of Millenia Luxury Condominiums Mezz, LLC (hereafter "Mezzanine Borrower") to Plaintiff Hudson as Mezzanine Lender (as defined in the Guaranty Agreement). A true and correct copy of the Mezzanine Loan Agreement, dated as of June 28, 2005, is attached hereto as Exhibit "B."

13. In connection with the Mezzanine Loan Agreement, Plaintiff Hudson made a Mezzanine Loan in the amount of $13,400,000 to the Mezzanine Borrower.

14. At the time of the execution of the Mezzanine Loan Agreement and the effecting of the loan, the Mezzanine Borrower owned 100% of the equity interests of Defendant Millenia.

15. Avila and Kaplan are indirect principals of Defendant Millenia and the Mezzanine Borrower.

16. In connection with the aforesaid Mezzanine Loan, the Mezzanine Borrower entered into a Pledge and Security Agreement as of June 28, 2005 granting to Plaintiff Hudson a security interest in all of the membership interests in Defendant Millenia to secure the repayment of the Mezzanine Loan.

17. On June 29, 2005, a Financing Statement was recorded with the Delaware Department of State listing the Mezzanine Borrower as Debtor and Plaintiff Hudson as Secured Party, attaching thereto a description of collateral (the "Pledged Equity") which described as the collateral the 100% membership interests in Defendant Millenia.

18. On August 23, 2006, a UCC-3 Financing Statement Amendment was filed with the Delaware Department of State indicating that the security interest in the "Pledged Equity" was assigned by Plaintiff Hudson to Plaintiff HRC Domestic.

19. On June 28, 2005 (the same date as the Mezzanine Loan was made to the Mezzanine Borrower), Defendant Millenia entered into a Loan and Security Agreement, a Mortgage and Fixture Filing and other related documents (including an assignment of rents and leases) with Fremont Investment & Loan, a California industrial bank (hereafter referred to as "Fremont") in connection with a loan in the amount of $69,750,000.00 made by Fremont to Defendant Millenia. Said loan was for partial financing of the acquisition of certain real and personal property located in Orange County, Florida, more particularly described on Exhibit "A" to the Loan and Security Agreement (the "Condo Project.").

20. In connection with the loan made by Fremont to Defendant Millenia, on June 28, 2005, Defendants Avila and Kaplan entered into a "Guaranty" in favor of Fremont.

21. As a result of the transactions that took place on June 28, 2005, Plaintiff Hudson was granted a security interest in all of the membership interests of Defendant Millenia, the owner of the real and person property of the Condo Project that is subject to the mortgage in favor of Fremont. Defendant Millenia granted a first purchase money mortgage in the Condo Project to Fremont to secure repayment of Fremont's loan to Millenia. In sum, Fremont held a first mortgage on the Condo project, and Plaintiff Hudson held a security interest in the ownership rights to the entity which owned the Condo Project.

22. Pursuant to the terms of the Secured Promissory Note between Plaintiff Millenia and Fremont, the loan matured on January 1, 2007. Despite the maturity of the Security Promissory Note, the balance due under it has not been paid.

23. Further, pursuant to the terms of the Mezzanine Loan Agreement, the Mezzanine Loan matured on February 1, 2007. Despite the maturity of the Mezzanine Loan, the balance due under it has not been paid.

24. The Mezzanine Loan Agreement provides in pertinent part as follows.

> 8.21.1. <u>Compliance with Senior Loan Documents.</u> Mezzanine Borrower shall (a) cause Mortgage Borrower to pay all principal, interest and other sums required to be paid by Mezzanine Borrower under and pursuant to the provisions of the Senior Loan Documents; (b) cause Mortgage Borrower to diligently perform and observe all of the terms, covenants and conditions of the Senior Loan Documents on the part of Mortgage Borrower to performed and observed, unless such performance or observance shall be waived in writing by Senior Lender; (c) promptly notify, or cause Mortgage Borrower to promptly notify, Mezzanine Lender of the giving of any notice by Senior lender to Mortgage Borrower of any default by Mortgage Borrower in the performance or observance of any of the terms, covenants or conditions of the Senior Loan Documents on the part of Mortgage Borrower to be performed or observed and deliver to Mezzanine Lender a true copy of each such notice; (d) deliver, or cause Mortgage Borrower to deliver, a true, correct and complete copy of all notices, demands, requests or material correspondence (including electronically transmitted items) given or received by Mortgage Borrower, Mezzanine Borrower or any Guarantor to or from Senior Lender or its agent; and (e) require that Mortgage Borrower not enter into or be bound by any Senior Loan Documents or agree to any modifications of any existing Senior Loan Documents that are not approved by Mezzanine Lender. Without limiting the foregoing, Mezzanine Borrower or Mortgage Borrower shall fund all reserves required to be funded pursuant to the Senior Loan Documents.

25. The Guaranty Agreement provides in pertinent part as follows.

> 1.1 <u>Guaranty of Obligation.</u> Each Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be

due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Each Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

1.2 <u>Definition of Guaranteed Obligations</u>. As used herein, the term "Guaranteed Obligations" means:

(a) the obligations and liabilities of Borrower to Lender for any loss, damage, cost, expense, liability, claim and any other obligation incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following:

\* \* \*

(iv) the failure by Borrower or any Guarantor to pay any charge that creates any lien or other encumbrance on the Pledged Collateral or any portion thereof.

\* \* \*

(b) the entire amount of the Outstanding Loan Obligations: (1) in the event:

(v) any Transfer, sale, conveyance, encumbrance or pledge of the Property (except as permitted by the Loan Agreement) or the Collateral (or any interest therein) occurs, or any breach of Section 5.1.6, Section 6.4, Section 8.20 or Section 8.21 of the Loan Agreement occurs; or

(vi) Borrower or any Affiliate contests or in any material way interferes with, directly or indirectly (collectively, a "<u>Contest</u>"), any foreclosure action, Uniform Commercial Code sale and/or deed in lieu of foreclosure transaction commenced by Lender or with any other enforcement of Lender's rights, powers or remedies under any of the Loan Documents or under any document evidencing, securing or otherwise relating to any of the Collateral (whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, seeking to consolidate any such foreclosure or other enforcement with any other action, or otherwise).

> 1.3 <u>Nature of Guaranty</u>. This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection.

26. Plaintiffs have been forced to engage the undersigned attorneys and incur costs and attorneys' fees in connection with the prosecution of this action, as well as actions commenced in Orange County, Florida and an action commenced by Defendants in the United States District Court for the Southern District of Florida.

27. All conditions precedent to this action have occurred or have been waived.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

28. Plaintiffs repeat and reallege paragraphs 1 through 27 as if fully set forth herein.

29. Plaintiffs have demanded that Defendants pay the Outstanding Loan Obligations, as that term is defined in the Mezzanine Loan Agreement. Defendants have responded claiming that the Guaranty Agreement creates no recourse for the Outstanding Loan Obligations against them.

30. There exists an actual bona fide and present dispute between the parties regarding the nature and extent of Defendants' obligations under the Guaranty Agreement which requires resolution by the Court. Specifically, Plaintiffs contend that the Guaranty Agreement obligates Defendants to pay the amount of the loss sustained by Plaintiffs by reason of "the failure by Borrower or any Guarantor to pay any charge that creates any lien or other encumbrance on the Pledged Collateral or any portion thereof" to the extent of any such failure to pay, including real estate taxes in the approximate amount of $1.5 million.

31. Additionally, Plaintiffs contend that due to the breaches of Sections 1.2(b)(v) and 8.21 of the Mezzanine Loan Agreement, the guaranty recourse extends to the "Outstanding Loan Obligations."

32. Finally, in the foreclosure action commenced by Plaintiff HRC REIT in Florida state court (Orange County), Defendants filed a motion to deny relief as moot with respect to the foreclosure and security interest claims. Accordingly, since the Guarantors have contested a foreclosure action as described in Section 1.2(b)(vi) of the Guaranty Agreement, the recourse under the Guaranty Agreement thus extends to all Outstanding Loan Obligations.

33. Defendants deny any such recourse under the Guaranty Agreement.

34. Therefore, pursuant to CPLR 3001, Plaintiffs are entitled to a judicial determination and declaration that the recourse under the Guaranty Agreement extends to all Outstanding Loan Obligations.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Guaranty Agreement)

35. Plaintiffs repeat and reallege paragraphs 1 through 34 as if fully set forth herein.

36. Defendants have breached their obligations under the Guaranty Agreement by failing to pay all amounts due under that Agreement.

37. As a direct and proximate result of the breach of the Guaranty Agreement by the Defendants, Plaintiffs have been damaged.

38. Based on the foregoing breach by Defendants, Plaintiffs are entitled to a judgment against Defendants, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

(a) On the First Cause of Action for Declaratory Judgment, a judicial determination and declaration that the recourse under the Guaranty Agreement extends to all Outstanding Loan Obligations;

(b) On the Second Cause of Action for Breach of Guaranty Agreement, the exact amount of monetary damages to be determined at trial;

(c) On all Causes of Action, the reasonable costs, expenses and attorneys' fees incurred by Plaintiffs in enforcing their rights, in an amount to be determined at trial;

(d) Interest as permitted by law; and

(e) Such other relief as this Court deems just and proper.

Dated: New York, New York
April 26, 2007

KATTEN MUCHIN ROSENMAN LLP

By: _____
Howard E. Cotton
Michael S. Gordon

575 Madison Avenue
New York, New York 10022
(212) 940-8855

Attorneys for Plaintiffs

84211865_1

9