EXHIBIT A

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "**Guaranty**") is executed as of June 24, 2005 by **MILLENIA LUXURY CONDOMINIUMS (FLORIDA), LLC**, a Delaware limited liability company ("**Florida LLC**"), **EDUARDO AVILA**, an individual ("**Avila**") and **JACK KAPLAN**, an individual ("**Kaplan**", together with Florida LLC and Avila, each a Guarantor, and collectively, the "**Guarantors**"), all Guarantors having an address at 2601 South Bayshore Drive, Suite 200, Miami, Florida 33133, for the benefit of **HUDSON REALTY CAPITAL FUND III LP**, a Delaware limited partnership, having an office at c/o Hudson Realty Capital LLC, 381 Park Avenue South, Suite 428, New York, New York 10016, (together with its successors and assigns, "**Lender**").

## WITNESSETH:

**WHEREAS**, pursuant to that certain Mezzanine Note, dated of even date herewith, executed by Millenia Luxury Condominiums Mezz, LLC, a Delaware limited liability company ("**Borrower**"), and payable to the order of Lender in the original principal amount of THIRTEEN MILLION FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($13,400,000.00) (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Note**"), Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a loan (the "**Loan**") made pursuant to that certain Mezzanine Loan Agreement, dated of even date herewith, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by that certain Pledge and Security Agreement, dated as of the date hereof, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan (together with the Note, the Loan Agreement and the Pledge Agreement, collectively, the "**Loan Documents**"); and

**WHEREAS**, Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless each Guarantor unconditionally guarantees payment and performance to Lender of the Guaranteed Obligations (as herein defined); and

**WHEREAS**, each Guarantor is the owner of a direct or indirect interest in Borrower and will receive substantial economic and other benefits from Lender making the Loan to Borrower.

**NOW, THEREFORE**, as an inducement to Lender to make the Loan to Borrower, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

NYC01_84033519_3_334016_00003

# ARTICLE I

## NATURE AND SCOPE OF GUARANTY

**1.1 Guaranty of Obligation.** Each Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Each Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

**1.2 Definition of Guaranteed Obligations.** As used herein, the term "Guaranteed Obligations" means:

(a) the obligations and liabilities of Borrower to Lender for any loss, damage, cost, expense, liability, claim and any other obligation incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following:

(i) fraud or intentional misrepresentation by Borrower or any owner of a direct or indirect equity interest in Borrower or any other Loan Party in connection with the Loan;

(ii) (A) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release or threatened release of any Hazardous Substance (including the presence of mold or asbestos) on, from or affecting the Property, (B) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Substance, (C) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Substance, or (D) any violation of any federal, state or local environmental laws, rules or regulations which are based upon or in any way related to such Hazardous Substance;

(iii) the removal or disposal of any portion of Borrower's assets and properties after the occurrence and during the continuance of an Event of Default other than as a result of the normal replacement of any equipment or as a result of the repair, replacement or rebuilding of any part of the Property that is destroyed by any casualty, or becomes damaged, worn or dilapidated, or is required in order to comply with any laws, orders and ordinances affecting the Property or the use thereof;

(iv) the failure by Borrower or any Guarantor to pay any charge that creates any lien or other encumbrance on the Pledged Collateral or any portion thereof;

(v) any placing of a voluntary lien or other encumbrance on the Pledged Collateral or any portion thereof, or on the Property (except for permitted exceptions under the Senior Mortgage not requiring the consent of Senior Lender), or any transfer of the Property or an interest therein in contravention of the terms of this Agreement;

(vi) any breach of the restrictions on the incurrence of additional indebtedness or breach of any covenant as to title set forth in any Loan Documents;

2

(vii) waste to the Property due to willful misconduct or gross negligence;

(viii) the termination, winding up or dissolution of any Loan Party to the extent such dissolution, winding up or termination arose from the action or omission of any equity owner of such Loan Party if such action or omission is in violation of the provisions of the Loan Agreement or the other Loan Documents;

(ix) Borrower or Mortgage Borrower fails to maintain its status as a Single Purpose Entity in accordance with the provisions of the Loan Agreement; and

(x) (A) a receiver, liquidator, or trustee of a Loan Party shall be appointed or if a Loan Party shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, a Loan Party, or if any proceeding for the dissolution or liquidation of a Loan Party shall be instituted, and (B) such appointment, adjudication, petition or proceeding was involuntary and not consented to by such Loan Party, and (C) the same is not discharged, stayed or dismissed within one hundred and twenty (120) days;

(b) the entire amount of the Outstanding Loan Obligations: (1) in the event: (i) any Distributions, any Free Cash Flow or any amounts required to be paid to Senior Lender or Lender or deposited in the Senior Lockbox or the Mezzanine Cash Collateral Account are misapplied or misappropriated; (ii) any Loan Party files any voluntary petition under any chapter of the Bankruptcy Code, or files any petition for dissolution or liquidation or takes other action to dissolve or liquidate, or in any manner seeks any relief under any local, state, federal or other insolvency laws or laws providing for the relief of debtors; (iii) any involuntary petition under any chapter of the Bankruptcy Code shall be filed against a Loan Party or a Loan Party becomes the subject of any proceedings pursuant to any local, state, federal or other insolvency laws or laws providing for the relief of debtors, either at the present time or at any time hereafter and such Loan Party consents to and/or fails to object to such action; (iv) the Property, or any of the property or assets of any Loan Party, or any portion thereof or any interest of any Loan Party in the Property or any of the property or assets of any Loan Party, as a result of any event described in the preceding clauses (ii) or (iii), shall become the property of any bankruptcy estate or the subject of any local, state, federal or other bankruptcy, dissolution, liquidation or insolvency proceedings, either at the present time or any time hereafter; (v) any Transfer, sale, conveyance, encumbrance or pledge of the Property (except as permitted by the Loan Agreement) or the Collateral (or any interest therein) occurs, or any breach of Section 5.1.6, Section 6.4, Section 8.20 or Section 8.21 of the Loan Agreement occurs; or (vi) Borrower or any Affiliate contests or in any material way interferes with, directly or indirectly (collectively, a "Contest"), any foreclosure action, Uniform Commercial Code sale and/or deed in lieu of foreclosure transaction commenced by Lender or with any other enforcement of Lender's rights, powers or remedies under any of the Loan Documents or under any document evidencing, securing or otherwise relating to any of the Collateral (whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, seeking to consolidate any such foreclosure or other enforcement with any other action, or otherwise).

3

**1.3 Nature of Guaranty.** This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by any Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Guarantor and after (if such Guarantor is a natural person) such Guarantor's death (in which event this Guaranty shall be binding upon such Guarantor's estate and such Guarantor's legal representatives and heirs). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of any Guarantor to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.

**1.4 Guaranteed Obligations Not Reduced by Offset.** The Guaranteed Obligations and the liabilities and obligations of each Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

**1.5 Payment By Guarantors.** If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantors shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

**1.6 No Duty To Pursue Others.** It shall not be necessary for Lender (and each Guarantor hereby waives any rights which such Guarantor may have to require Lender), in order to enforce the obligations of any Guarantor hereunder, first to (a) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other person, (b) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan, (c) enforce Lender's rights against any other guarantors of the Guaranteed Obligations, (d) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (e) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (f) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

**1.7 Waivers.** Each Guarantor agrees to the provisions of the Loan Documents, and hereby waives notice of (a) any loans or advances made by Lender to Borrower, (b) acceptance of this Guaranty, (c) any amendment or extension of the Note, the Pledge Agreement, the Loan Agreement or of any other Loan Documents, (d) the execution and delivery by Borrower and Lender of any other loan or credit agreements or of Borrower's execution and

4

delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Collateral, (e) the occurrence of any breach by Borrower or an Event of Default, (f) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (g) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Obligations, (h) protest, proof of non-payment or default by Borrower, and (i) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and/or the obligations hereby guaranteed.

1.8 **Payment of Expenses**. In the event that any Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantors shall, immediately upon demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder. The covenant contained in this Section 1.8 shall survive the payment and performance of the Guaranteed Obligations.

1.9 **Effect of Bankruptcy**. In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to any Guarantor by Lender shall be without effect, and this Guaranty and the Guaranteed Obligations shall remain in full force and effect. It is the intention of Borrower and Guarantors that Guarantors' obligations hereunder shall not be discharged except by Guarantors' performance of such obligations and then only to the extent of such performance.

1.10 **Waiver of Subrogation, Reimbursement and Contribution**. Notwithstanding anything to the contrary contained in this Guaranty, each Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating any Guarantor to the rights of Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Obligations for any payment made by any Guarantor under or in connection with this Guaranty or otherwise.

1.11 **Borrower**. The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

## ARTICLE II

## EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTORS' OBLIGATIONS

Each Guarantor hereby consents and agrees to each of the following, and agrees that such Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including, without limitation, rights to notice) which such Guarantor might otherwise have as a result of or in connection with any of the following:

2.1 **Modifications.** Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Pledge Agreement, the Loan Agreement, the other Loan Documents, or any other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Obligations or any failure of Lender to notify any Guarantor of any such action.

2.2 **Adjustment.** Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any Guarantor.

2.3 **Condition of Borrower or Guarantor.** The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, any Guarantor or any other party at any time liable for the payment of all or part of the Guaranteed Obligations; or any dissolution of Borrower or any Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or any Guarantor, or any changes in the shareholders, partners or members of Borrower or any Guarantor; or any reorganization of Borrower or any Guarantor.

2.4 **Invalidity of Guaranteed Obligations.** The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including, without limitation, the fact that (a) the Guaranteed Obligations, or any part thereof, exceed the amount permitted by law, (b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Note, the Pledge Agreement, the Loan Agreement, or the other Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) the Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Note, the Pledge Agreement, the Loan Agreement or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that each Guarantor shall remain liable hereon regardless of whether Borrower or any other Person be found not liable on the Guaranteed Obligations or any part thereof for any reason.

6

**2.5 Release of Obligors.** Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by each Guarantor that such Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other Persons will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to other Persons to pay or perform the Guaranteed Obligations.

**2.6 Other Collateral.** The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

**2.7 Release of Collateral.** Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

**2.8 Care and Diligence.** The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

**2.9 Unenforceability.** The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by each Guarantor that such Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectibility or value of any of the collateral for the Guaranteed Obligations.

**2.10 Offset.** The Note, the Loan Agreement, the Guaranteed Obligations and the liabilities and obligations of each Guarantor to Lender hereunder shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower against Lender, or any other Person, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

**2.11 Merger.** The reorganization, merger or consolidation of Borrower into or with any Person.

7

  **2.12** **Preference.** Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

  **2.13** **Other Actions Taken or Omitted.** Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices any Guarantor or increases the likelihood that any Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof, it is the unambiguous and unequivocal intention of each Guarantor that such Guarantor shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

**ARTICLE III**

**REPRESENTATIONS AND WARRANTIES**

  To induce Lender to enter into the Loan Documents and extend credit to Borrower, each Guarantor represents and warrants to Lender, and covenants and agrees, as follows as to such Guarantor only:

  **3.1** **Benefit.** Such Guarantor is an affiliate of Borrower, is the owner of a direct or indirect interest in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

  **3.2** **Familiarity and Reliance.** Such Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Obligations; however, such Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

  **3.3** **No Representation By Lender.** Neither Lender nor any other party has made any representation, warranty or statement to such Guarantor in order to induce such Guarantor to execute this Guaranty.

  **3.4** **Guarantors' Financial Condition.** As of the date hereof and throughout the term of the Loan, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, such Guarantor is, and will be, solvent, and has and will have (a) assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and (b) property and assets sufficient to satisfy and repay its obligations and liabilities. Each Guarantor hereby covenants and agrees that it shall not sell, pledge, mortgage or otherwise transfer any of its assets, or any interest therein, on terms materially less favorable than would be obtained in an arms-length transaction for fair consideration.

**3.5 Legality.** The execution, delivery and performance by such Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any law, statute or regulation whatsoever to which such Guarantor is subject or constitute a default (or an event which with notice or lapse of time or both would constitute a default) under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which such Guarantor is a party or which may be applicable to such Guarantor. This Guaranty is a legal and binding obligation of such Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

**3.6 Survival.** All representations and warranties made by each Guarantor herein shall survive the execution hereof.

## ARTICLE IV

## SUBORDINATION OF CERTAIN INDEBTEDNESS

**4.1 Subordination of All Guarantor Claims.** As used herein, the term "Guarantor Claims" shall mean all debts and liabilities of Borrower to any Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by any Guarantor. The Guarantor Claims shall include without limitation all rights and claims of any Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of any Guarantor's payment of all or a portion of the Guaranteed Obligations. Upon the occurrence and during the continuance of an Event of Default or Default, no Guarantor shall receive or collect, directly or indirectly, from Borrower or any other party any amount upon the Guarantor Claims.

**4.2 Claims in Bankruptcy.** In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving any Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments, which would otherwise be payable upon Guarantor Claims. Each Guarantor hereby assigns such dividends and payments to Lender. Should Lender receive, for application upon the Guaranteed Obligations, any such dividend or payment which is otherwise payable to any Guarantor, and which, as between Borrower and such Guarantor, shall constitute a credit upon the Guarantor Claims, then upon payment to Lender in full of the Guaranteed Obligations, such Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if Lender had not received dividends or payments upon the Guarantor Claims.

4.3 **Payments Held in Trust.** In the event that, notwithstanding anything to the contrary in this Guaranty, any Guarantor should receive any funds, payments, claims or distributions which are prohibited by this Guaranty, such Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Lender, and such Guarantor covenants promptly to pay the same to Lender.

4.4 **Liens Subordinate.** Each Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of such Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, no Guarantor shall (i) exercise or enforce any creditor's right it may have against Borrower or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by any Guarantor.

## ARTICLE V

### MISCELLANEOUS

5.1 **Waiver.** No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. No modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

5.2 **Notices.** Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed to be received by the addressee on the third day following the day such notice is deposited with the United States Postal Service first class certified mail, return receipt requested, addressed to the address, as set forth below, of the party to whom such notice is to be given, or to such other address as either party shall in like manner designate in writing. The addresses of the parties hereto are as follows:

|                      |                                                                                                                                                                    |
|----------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| <u>Guarantors</u>:   | Millenia Luxury Condominiums (Florida), LLC<br>2601 South Bayshore Drive, Suite 200<br>Miami, Florida 33133<br>Attention: Eduardo Avila<br>Facsimile No.: (305) 857-0441 |
|                      | Eduardo Avila<br>2601 South Bayshore Drive, Suite 200<br>Miami, Florida 33133<br>Facsimile No.: (305) 857-0441                                                      |
|                      | Jack Kaplan<br>2601 South Bayshore Drive, Suite 200<br>Miami, Florida 33133<br>Facsimile No.: (305) 857-0441                                                        |
| and with a copy to   | Adorno & Yoss, LLP<br>2525 Ponce de Leon Boulevard<br>Suite 400<br>Miami, Florida 33134<br>Attention: Neil Rollnick, Esq.<br>Telecopier: 305-460-1422                |
| <u>Lender</u>:       | Hudson Realty Capital Fund III LP<br>c/o Hudson Realty Capital LLC<br>381 Park Avenue South, Suite 428<br>New York, New York 10016<br>Attention: Robert Perelman<br>Re: the Tradition Mezzanine Loan<br>Telecopier: (212) 532-7901 |
| with a copy to:      | 27th and University LLC<br>Two University Plaza<br>Hackensack, New Jersey 07601<br>Attention: Sanford Herrick<br>Re: the Tradition Mezzanine Loan<br>Telecopier: (201) 343-1523 |
| and with a copy to:  | Katten Muchin Rosenman LLP<br>575 Madison Avenue<br>New York, New York 10022<br>Attention: Marc S. Shapiro, Esq.<br>Fax: (212) 940-8776                             |

11

5.3 Governing Law.

(a) THIS GUARANTY WAS NEGOTIATED IN THE STATE OF NEW YORK, THE LOAN TO WHICH THIS GUARANTY RELATES WAS MADE BY LENDER AND ACCEPTED BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF SUCH LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY AND/OR THE OTHER LOAN DOCUMENTS, AND THIS GUARANTY AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(b) ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR ANY GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY AND STATE OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND EACH GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON-CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND EACH GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. EACH GUARANTOR DOES HEREBY DESIGNATE AND APPOINT:

> Adorno & Yoss, LLP
> 2525 Ponce de Leon Boulevard
> Suite 400
> Miami, Florida 33134

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND NOTICE OF SAID SERVICE MAILED OR

DELIVERED TO SUCH GUARANTOR IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON SUCH GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK. EACH GUARANTOR (i) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (ii) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (iii) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

**5.4 Invalid Provisions.** If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

**5.5 Amendments.** This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

**5.6 Parties Bound; Assignment; Joint and Several.** This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that no Guarantor may, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder. If Guarantor consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

**5.7 Headings.** Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

**5.8 Recitals.** The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered *prima facie* evidence of the facts and documents referred to therein.

**5.9 Counterparts.** To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all Persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto. Any signature page to any counterpart may be detached from such counterpart without

13

impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

      5.10   **Rights and Remedies.** If any Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against any such Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

      5.11   **Other Defined Terms.** Any capitalized term utilized herein shall have the meaning specified in the Loan Agreement, unless such term is otherwise specifically defined herein.

      5.12   **Entirety.** THIS GUARANTY EMBODIES THE FINAL, ENTIRE AGREEMENT OF GUARANTORS AND LENDER WITH RESPECT TO GUARANTORS' GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF. THIS GUARANTY IS INTENDED BY GUARANTORS AND LENDER AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THIS GUARANTY, AND NO COURSE OF DEALING BETWEEN GUARANTORS AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY AGREEMENT. THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTORS AND LENDER.

      5.13   **Waiver of Right To Trial By Jury.** EACH GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE LOAN AGREEMENT, THE PLEDGE AGREEMENT, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY EACH OF THE GUARANTORS.

      5.14   **Cooperation.** Each Guarantor acknowledges that Lender and its successors and assigns may (a) sell this Guaranty, the Note and other Loan Documents to one or

more investors as a whole loan, (b) participate the Loan secured by this Guaranty to one or more investors, (c) deposit this Guaranty, the Note and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets, or (d) otherwise sell the Loan or one or more interests therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter each referred to as "**Secondary Market Transactions**"). Each Guarantor shall cooperate with Lender in effecting any such Secondary Market Transaction and shall cooperate to implement all requirements imposed by any Rating Agency involved in any Secondary Market Transaction. Each Guarantor shall provide such information and documents relating to such Guarantor, Borrower, Mortgage Borrower, the Property and any tenants of the Improvements as Lender may reasonably request in connection with such Secondary Market Transaction. In addition, each Guarantor shall make available to Lender all information concerning its business and operations that Lender may reasonably request. Lender shall be permitted to share all such information with the investment banking firms, Rating Agencies, accounting firms, law firms and other third party advisory firms involved with the Loan and the Loan Documents or the applicable Secondary Market Transaction. It is understood that the information provided by Guarantors to Lender may ultimately be incorporated into the offering documents for the Secondary Market Transaction and that various investors may also see some or all of the information. Lender and all of the aforesaid third party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of any Guarantor in the form as provided by such Guarantor. Lender may publicize the existence of the Loan in connection with its marketing for a Secondary Market Transaction, or otherwise as part of its business development.

      5.15    **Reinstatement in Certain Circumstances**. If at any time any payment of the principal of or interest under the Note or any other amount payable by Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of Borrower or otherwise, Guarantors' obligations hereunder with respect to such payment shall be reinstated as though such payment has been due but not made at such time.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, Guarantors have executed this Guaranty as of the day and year first above written.

GUARANTORS:

MILLENIA LUXURY CONDOMINIUMS (FLORIDA), LLC, a Florida limited liability company

By:   OKA Traditions, LLC, a Florida limited liability company, its Manager

By: _____
       Eduardo Avila
       Manager

_____
EDUARDO AVILA

_____
JACK KAPLAN

**IN WITNESS WHEREOF**, Guarantors have executed this Guaranty as of the day and year first above written.

> **GUARANTORS:**
>
> MILLENIA LUXURY CONDOMINIUMS (FLORIDA), LLC, a Florida limited liability company
>
> By:  QKA Traditions, LLC, a Florida limited liability company, its Manager
>
> By: _____
>   Eduardo Avila
>   Manager
>
> _____
> EDUARDO AVILA
>
> *[signature: Jack Kaplan]*
> JACK KAPLAN

NYC01_84033519_2_334016_00003

ACKNOWLEDGMENTS

STATE OF Florida        )
                        ) :ss.
COUNTY OF Dade          )

On the 23 day of June in the year 2005, before me, the undersigned, personally appeared Eduardo Avila, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Michelle Murga_
Notary Public

(NOTARIAL SEAL)



My Commission Expires: 3/9/09

STATE OF Florida        )
                        ) :ss.
COUNTY OF Dade          )

On the 23 day of June in the year 2005, before me, the undersigned, personally appeared Eduardo Avila, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Michelle Murga_
Notary Public

(NOTARIAL SEAL)

My Commission Expires: 3/9/09



STATE OF  North Carolina  )
                          ) :ss.
COUNTY OF Transylvania    )

   On the 24th day of June in the year 2005, before me, the undersigned, personally appeared Jack Kaplan, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

   IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                   _____Susan Breedlove_____
                                   Notary Public
                                   Susan Breedlove

(NOTARIAL SEAL)

                                   My Commission Expires: May 19, 2010


NYC01_84033519_2_334016_00003