date of this Agreement, executed and delivered by Mezzanine Borrower and payable to the order of Mezzanine Lender (the "Mezzanine Note") and will be further evidenced and/or secured by this Agreement and the other Mezzanine Loan Documents.

Section 2.2.   Use of Proceeds. Proceeds of the Mezzanine Loan shall be (a) invested in Mortgage Borrower, and (b) used to pay any costs in connection with the Mezzanine Loan.

Section 2.3.   Mezzanine Loan Documents; Security for Mezzanine Loan.  The Mezzanine Loan, as evidenced by the Mezzanine Note and this Agreement, is primarily secured by the Guaranty, the Pledge Agreement, the Hazardous Waste Indemnity, the Mezzanine Cash Management Agreement and such other documents, instruments and agreements delivered to Mezzanine Lender in connection with the Mezzanine Loan (collectively, the "Mezzanine Loan Documents").

Section 2.4.   Interest.

2.4.1. Basic Interest. Subject to the further provisions of this Agreement, including, without limitation, Section 2.4.2 hereof, the Outstanding Principal Amount of the Mezzanine Loan shall bear and accrue interest at the applicable Basic Interest Rate from the Effective Date through and until the Maturity Date thereof. In computing the number of days during which interest accrues, the day on which funds are initially advanced shall be included regardless of the time of day such advance is made, and the day on which funds are repaid shall, subject to Section 2.4.4 hereof, be excluded. Upon the payment in full (to the extent applicable) of all amounts due and payable under the Mezzanine Loan Documents, the Mezzanine Note shall be fully extinguished and Mezzanine Borrower shall have no further liability or obligations thereunder; provided, however, that nothing contained in this Section 2.4.1 or elsewhere in the Mezzanine Loan Documents shall extinguish any liability or obligation of Mezzanine Borrower under this Agreement or any of the other Mezzanine Loan Documents if such liabilities or obligations are intended to survive payment of the Outstanding Loan Obligations.

(b)   On the Effective Date, Mezzanine Borrower shall pay the Short Period Interest to Mezzanine Lender.

(c)   On the Due Date occurring on August 1, 2005 and on each Due Date thereafter, Mezzanine Borrower shall pay to Mezzanine Lender Basic Interest, in arrears, at the Basic Interest Rate, on the Outstanding Principal Amount. Notwithstanding the foregoing, neither the insufficiency of the undisbursed balance of, nor the unavailability of the proceeds of the Interest Reserve, is intended to, and shall therefore not, constitute a limitation on the obligation of Mezzanine Borrower to pay Basic Interest as and when required under this Agreement, it being understood and agreed that if, on any Due Date, there shall have occurred and be continuing any Event of Default or the undisbursed balance of the Interest Reserve shall be insufficient to make any portion of the payment required to be made, Mezzanine Borrower shall nevertheless be obligated to make such payment as and when due.

2.4.2. <u>Default Interest</u>. Interest shall accrue and be payable at the Default Rate (a) on all amounts not paid when due and payable under this Agreement, the Note or under any other Mezzanine Loan Document (without giving effect to any grace period which may be applicable with respect to such payment) and (b) from and after the Scheduled Maturity Date, on the Outstanding Loan Obligations.

2.4.3. <u>Interest Reserve</u>. On the Effective Date, Mezzanine Borrower shall deposit with Mezzanine Lender the amount of $2,401,112.50 (the "<u>Interest Reserve</u>") from the proceeds of the Mezzanine Loan disbursed on the Effective Date in a segregated interest bearing account (which interest, if any, earned thereon shall be paid to Mezzanine Borrower or credited against the Outstanding Loan Obligations on the Maturity Date, as then constituted) and made available for payment of Basic Interest and Servicing Fees to Mezzanine Lender from and after the Effective Date through and including the Maturity Date, in order to secure payment as and when due and payable of all Outstanding Loan Obligations. Mezzanine Lender shall, without the necessity of notifying Mezzanine Borrower, disburse a portion of the Interest Reserve on each Due Date thereafter through and including the Maturity Date, in an amount equal to Basic Interest and Servicing Fees due and payable under this Agreement, and the same shall be applied pursuant to the terms of this Agreement. Mezzanine Borrower agrees and acknowledges that neither the insufficiency of the amount of, nor the unavailability of, the Interest Reserve is intended to, and shall therefore not, constitute a limitation on the obligation of Mezzanine Borrower to pay Basic Interest or Servicing Fees under this Agreement. Mezzanine Borrower shall promptly upon the demand of Mezzanine Lender, make additional Interest Reserve deposits as Mezzanine Lender may from time to time require due to the underestimation of the amounts of Basic Interest and Servicing Fees.

2.4.4. <u>General</u>. All amounts payable to Mezzanine Lender hereunder (including, without limitation, amounts payable on the Maturity Date pursuant to <u>Section 2.4</u> hereof) shall be payable, without setoff, deduction or counterclaim, in immediately available funds, no later than 2:00 P.M. New York City time on the date when due by wire transfer to such account or address as Lender may from time to time designate in a written notice to Mezzanine Borrower. Payments received by Mezzanine Lender in immediately available funds on any day after 2:00 P.M. New York City time shall be treated for all purposes of the Mezzanine Loan as having been paid and received by Mezzanine Lender on the next Business Day. Notwithstanding anything to the contrary contained herein, when any payment is due hereunder or under any of the other Mezzanine Loan Documents on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day.

Section 2.5. <u>Prepayment</u>. Mezzanine Borrower may prepay the Mezzanine Loan without penalty or premium, in whole or in part, upon (a) the delivery of written notice to Mezzanine Lender of such prepayment not more than thirty (30) days and not less than ten (10) days prior to the date of such prepayment (the "<u>Prepayment Notice</u>"), which Prepayment Notice shall be irrevocable and (b) the payment of (i) all accrued and unpaid Basic Interest on the amount so prepaid through and including the date of such prepayment, (ii) the applicable Supplemental Payment, (iii) all Late Charges, interest at the Default Rate and other sums and

- 17 -

charges due under this Agreement and under the other Loan Documents. Notwithstanding anything to the contrary contained in this Agreement, except as set forth in Article 9 hereof, Mezzanine Lender shall not be obligated to discharge the liens created by the Mezzanine Loan Documents until Mezzanine Lender shall have been paid in full the Outstanding Loan Obligations under this Agreement, the Mezzanine Note and the other Mezzanine Loan Documents.

Section 2.6.  Late Charges.  Mezzanine Lender may collect from Mezzanine Borrower a Late Charge on account of any payment required to be made hereunder or under any other Mezzanine Loan Document not made when due and payable, in order to defray the expense incurred by Mezzanine Lender in handling and processing such delinquent payment and to compensate Mezzanine Lender for the loss of the use of such delinquent payment.

Section 2.7.  Application of Payments.  Payments received by Mezzanine Lender, including any payment or recovery on the Collateral, shall be applied in such order and in such manner as Mezzanine Lender shall elect in Mezzanine Lender's discretion.

Section 2.8.  Maturity.  On the Maturity Date, the entire Outstanding Loan Obligations due hereunder and under the other Mezzanine Loan Documents shall be paid in full.

2.8.1.  Extension Option.  Mezzanine Borrower shall have the option (the "Extension Option") to extend the term of the Mezzanine Loan for an additional six (6) month period beginning on the first day following the Scheduled Maturity Date, and, if so extended, the Mezzanine Loan shall mature on the Extended Maturity Date, provided that if the Extended Maturity Date shall not be a Business Day, then such date shall be deemed to be the next succeeding Business Day.  The Extension Option shall be subject to the satisfaction of the following conditions (collectively, the "Extension Conditions"):

(i)  The maturity date under the Senior Loan Documents (the "Senior Loan Maturity Date") shall have been extended by Mortgage Borrower so that the Senior Loan Maturity Date shall be co-terminus with the Extended Maturity Date, with respect to the Extension Option;

(ii)  Not less than thirty (30) days, nor more than ninety (90) days, prior to the Scheduled Maturity Date, Mezzanine Borrower shall give Mezzanine Lender written notice of its election to extend the term of the Mezzanine Loan (such notice, an "Election Notice");

(iii)  At the time an Election Notice is given and, at the Scheduled Maturity Date: (x) no Default or Event of Default shall have occurred and be continuing, and no event which, with the passage of time or the giving of notice, or both, would constitute an Event of Default, shall have occurred and be continuing, (y) all of the material representations and warranties of Mezzanine Borrower and of each Guarantor contained in the Mezzanine Loan Documents shall remain true, accurate and complete in all material respects and not misleading, subject to changes in facts and circumstances

- 18 -

permitted under the Mezzanine Loan Documents, and (z) there shall be no existing law, rule, regulation, or guideline applicable to Mezzanine Lender, as reasonably interpreted by Mezzanine Lender, prohibiting or precluding Mezzanine Lender's extension of the Mezzanine Loan;

(iv) Mezzanine Borrower shall deliver to Mezzanine Lender (and, at Mezzanine Lender's request, cause to be recorded or filed, as applicable) any and all such other instruments as Mezzanine Lender may reasonably require to confirm or assure the liens and security interests of Mezzanine Lender in the collateral securing the Mezzanine Note, including without limitation UCC searches, consultant's reports, opinions, modification or extension agreements and other documentation, at no cost to Mezzanine Lender;

(v) Mezzanine Borrower shall pay any and all reasonable out-of-pocket fees and charges incurred in connection with Mezzanine Borrower's exercise of the Extension Option, including, without limitation, reasonable attorneys' fees and disbursements incurred by Mezzanine Lender and fees and expenses relating to the examination of title, title insurance premiums, surveys, and recording costs, documentary, transfer or other similar taxes and revenue stamps;

(vi) In the event that any of the foregoing Extension Conditions is not satisfied strictly in accordance with the terms hereof or waived by Mezzanine Lender in writing, the Extension Option being exercised shall be null and void, and the Mezzanine Loan shall mature on the Scheduled Maturity Date;

(vii) Mezzanine Borrower pays to Mezzanine Lender concurrently with the Election Notice an extension fee in the amount of one percent (1%) of the Mezzanine Loan Amount; and

(viii) Mezzanine Borrower shall deposit with Mezzanine Lender concurrently with the Election Notice (1) additional Interest Reserve deposits as Mezzanine Lender may require for payment of the Basic Interest and Servicing Fees during the Extension Term in accordance with Section 2.4.3 hereof, and (2) additional deposits into the Impound Account as Mezzanine Lender may require for payment of the Impositions in accordance with Section 2.10 hereof.

Section 2.9. Required Payments. In addition to all amounts required to be paid by Mezzanine Borrower hereunder, Mezzanine Borrower shall (or shall cause Mortgage Borrower to) pay to Mezzanine Lender all Free Cash Flow, which Free Cash Flow shall be applied by Mezzanine Lender (a) prior to the Conversion Date, to the Outstanding Loan Obligations other than the Outstanding Principal Amount, and (b) on or after the Conversion Date, to all of the Outstanding Loan Obligations. Prior to the payment in full of all Outstanding Loan Obligations, no fees, commissions, salaries or other like compensation shall be paid to any Loan Party or any Affiliate of any Loan Party from Receipts, except as provided in Section 6.3.1.(b) and Section 9.2.9. hereof.

Section 2.10. <u>Tax and Insurance Impound Account</u>. To the extent not required or established pursuant to the Senior Loan, Mezzanine Borrower will establish an impound account (the "<u>Impound Account</u>"), into which Mezzanine Borrower shall deposit on each Due Date an amount determined by Mezzanine Lender to be necessary to ensure that there will be on deposit with Mezzanine Lender in the Impound Account an amount sufficient to pay the next due installment of Impositions at least one (1) month prior to the due date thereof and the next due annual insurance premiums with respect to the Property at least one (1) month prior to the due date thereof. So long as no Event of Default hereunder or under any of the other Mezzanine Loan Documents has occurred and is continuing, all sums in the Impound Account shall be held by Mezzanine Lender in the Impound Account to pay for said Impositions and insurance premiums before the same become delinquent. Mezzanine Borrower shall be responsible for ensuring the receipt by Mezzanine Lender, at least thirty (30) days prior to the respective due date for payment thereof, of all bills, invoices and statements for all taxes, assessments and insurance premiums to be paid from the Impound Account, and so long as no Event of Default or Default hereunder or under any of the other Mezzanine Loan Documents has occurred and is continuing, Mezzanine Lender shall pay the governmental authority or other party entitled thereto directly to the extent funds are available for such purpose in the Impound Account. In making any payment from the Impound Account, Mezzanine Lender shall be entitled to rely on any bill, statement or estimate procured from the appropriate public office or insurance company or agent without any inquiry into the accuracy of such bill, statement or estimate and without any inquiry into the accuracy, validity, enforceability or contestability of any tax, assessment, valuation, sale, forfeiture, tax lien or title or claim thereof. The Impound Account shall not, unless otherwise explicitly required by applicable law, be or be deemed to be escrow or trust funds, but, at Mezzanine Lender's option and in Mezzanine Lender's discretion, may either be held in a separate account or be commingled by Mezzanine Lender with the general funds of Mezzanine Lender. No interest on the funds contained in the Impound Account shall be paid by Mezzanine Lender to Mezzanine Borrower. The Impound Account is solely for the protection of Mezzanine Lender and entails no responsibility on Mezzanine Lender's part beyond the payment of Impositions and insurance premiums following receipt of bills, invoices or statements therefor in accordance with the terms hereof and beyond the allowing of due credit for the sums actually received. Upon sale of the Mezzanine Loan by Mezzanine Lender, any funds in the Impound Account shall be turned over to the assignee and any responsibility of Mezzanine Lender, as assignor, with respect thereto shall terminate. If the total funds in the Impound Account shall exceed the amount of payments actually applied by Mezzanine Lender for the purposes of the Impound Account, such excess may be credited by Mezzanine Lender on subsequent payments to be made hereunder or, at the option of Mezzanine Lender, refunded to Mezzanine Borrower. If, however, the Impound Account shall not contain sufficient funds to pay the sums required when the same shall become due and payable, Mezzanine Borrower shall, within ten (10) days after receipt of written notice thereof, deposit with Mezzanine Lender the full amount of any such deficiency. If Mezzanine Borrower shall fail to deposit with Mezzanine Lender the full amount of such deficiency as provided above, Mezzanine Lender shall have the option, but not the obligation, to make such deposit and all amounts so deposited by Mezzanine Lender, together with interest thereon at the Default Rate from the date incurred by Mezzanine Lender until actually paid by Mezzanine Borrower, shall be immediately paid by Mezzanine Borrower on

demand and shall be secured by all of the Mezzanine Loan Documents securing all or any part of the Outstanding Loan Obligations. If there is an Event of Default under this Agreement, Mezzanine Lender may, but shall not be obligated to, apply at any time the balance then remaining in the Impound Account against the indebtedness secured hereby in whatever order Mezzanine Lender shall subjectively determine. No such application of the Impound Account shall be deemed to cure any Default or Event of Default hereunder. Upon full payment of the Outstanding Loan Obligations in accordance with the Mezzanine Loan Documents or at such earlier time as Mezzanine Lender may elect, the balance of the Impound Account then in Mezzanine Lender's possession shall be paid over to Mezzanine Borrower and no other party shall have any right or claim thereto.

Section 2.11. <u>Payment of Supplemental Payment</u>. Mezzanine Borrower shall pay to Mezzanine Lender (i) a pro-rata portion of the Supplemental Payment simultaneously with a partial prepayment of the Outstanding Principal Amount, and (ii) the Supplemental Payment simultaneously with repayment in full of the entire Outstanding Principal Amount and all other amounts owed hereunder or under the other Mezzanine Loan Documents. The Supplemental Payment shall be due, to the extent permitted by law, under any and all circumstances where the entire Outstanding Principal Amount is paid or obligated to be paid, whether such payment or obligation is voluntary or involuntary, or results from prepayment, Mezzanine Lender's exercise of its rights upon the occurrence of an Event of Default and acceleration of the Scheduled Maturity Date or the Extended Maturity Date, as the case may be (irrespective of whether proceedings to realize upon the Collateral have been commenced) and shall be in addition to any other fees or sums due hereunder or under any of the other Loan Documents. At such time or times as the Supplemental Payment is due hereunder, Mezzanine Lender shall deliver to Mezzanine Borrower a statement setting forth the amount and manner of determination of the Supplemental Payment, which statement shall be conclusive and binding upon Mezzanine Borrower, absent manifest error.

Section 2.12. <u>Security Interest</u>. The Interest Reserve, the Impound Account, the Mortgage Tax Reserve and any other reserves deposited hereunder shall be in the sole dominion and control of Mezzanine Lender. Mezzanine Borrower hereby pledges to Mezzanine Lender and grants to Mezzanine Lender a first lien priority perfected security interest in and to the Interest Reserve, the Impound Account, the Mortgage Tax Reserve and all other reserves, the proceeds thereof, and all sums now or hereafter deposited therein or constituting a part thereof, as security and cash collateral for the Outstanding Loan Obligations, it being understood and agreed that, upon the happening of any Event of Default, Mezzanine Lender shall be entitled to withdraw all proceeds in the Interest Reserve, the Impound Account, the Mortgage Tax Reserve and other reserves, and apply the same in accordance with the terms and provisions of <u>Section 2.7</u> of this Agreement. Mezzanine Borrower shall execute and deliver to Mezzanine Lender such UCC financing statements and other documents as Mezzanine Lender may from time to time require in respect of Mezzanine Lender's security interest in and to such cash collateral.

Section 2.13. <u>Increased Costs; Taxes; Capital Adequacy.</u>

2.13.1. Subject to the provisions of <u>Section 2.13.2</u>, in the event that Mezzanine Lender shall determine (which determination shall, absent manifest error, be final and conclusive and binding upon all parties hereto) that the applicability or adoption of any law, rule, regulation or guideline of any Governmental Authority, or the enforcement or interpretation or administration thereof:

(a) subjects Mezzanine Lender to any tax (other than a tax on the overall net income of Mezzanine Lender) with respect to this Agreement or any of its obligations hereunder or any payments to Mezzanine Lender of principal, Basic Interest, interest at the Default Rate, fees or any other amount payable hereunder;

(b) imposes, modifies or holds applicable any reserve (including any marginal, emergency, supplemental, special or other reserve or reserve percentage for Eurocurrency fundings), special deposit, compulsory loan, FDIC insurance or similar requirement against assets held by, or deposits or other liabilities in or for the account of, or advances or loans by, or other credit extended by, or any other acquisition of funds by, any office of Mezzanine Lender; or

(c) imposes any other condition (other than with respect to a tax matter) on or affecting Mezzanine Lender or its obligations hereunder;

and the result of any of the foregoing is to increase the cost to Mezzanine Lender of agreeing to make, making or maintaining the Mezzanine Loan or enforcing its rights hereunder or to reduce any amount received or receivable by Mezzanine Lender with respect thereto, then, in any such case, Mezzanine Borrower agrees to pay to Mezzanine Lender, promptly upon receipt of the statement referred to in the next sentence, such additional amount or amounts (in the form of an increased rate of, or a different method of calculating, interest or otherwise as Mezzanine Lender in its reasonable discretion shall determine) as may be necessary to compensate Mezzanine Lender for any such increased cost or reduction in amounts received or receivable hereunder (including any taxes imposed or asserted attributable to amounts payable under this <u>Section 2.13</u>). Mezzanine Lender shall deliver to Mezzanine Borrower a written statement setting forth in reasonable detail the reason for, and the basis for the calculation of, the additional amounts owed to Mezzanine Lender under this <u>Section 2.13.1</u>, which statement shall be conclusive and binding upon Mezzanine Borrower and Mezzanine Lender absent manifest error. The provisions of this <u>Section 2.13.1</u> and <u>Section 2.13.4</u> shall apply for the benefit of Mezzanine Lender and any assignee of Mezzanine Lender; <u>provided, however</u>, that Mezzanine Lender acknowledges that it is not subject to any of the conditions described in <u>subdivisions (a)</u> through <u>(c)</u>, inclusive, as of the Effective Date.

2.13.2. All sums payable by Mezzanine Borrower under this Agreement and the other Mezzanine Loan Documents shall be paid free and clear of and (except to the extent required by law) without any deduction or withholding on account of any tax (other than a tax on the overall net income of Mezzanine Lender) imposed, levied, collected, withheld or assessed by

- 22 -

any Government Authority. If Mezzanine Borrower or any other Person is required by law to make any deduction or withholding on account of any tax from any sum paid or payable by Mezzanine Borrower to Mezzanine Lender under any of the Mezzanine Loan Documents:

    (a)    Mezzanine Borrower shall notify Mezzanine Lender of any such requirement or any change in any such requirement as soon as Mezzanine Borrower becomes aware thereof;

    (b)    Mezzanine Borrower shall pay such tax before the date on which penalties attach thereto, such payment to be made (if the liability to pay is imposed on Mezzanine Borrower) for its own account or (if that liability is imposed on Mezzanine Lender) on behalf of and in the name of Mezzanine Lender;

    (c)    the sum payable by Mezzanine Borrower in respect of which the relevant deduction, withholding or payment is required shall be increased to the extent necessary to ensure that after the making of that deduction, withholding or payment (and any other deductions, withholding or payments attributable to amounts payable under this Section), Mezzanine Lender receives on the due date a net sum equal to what it would have received had no deduction, withholding or payment been required or made; and

    (d)    within twenty (20) Business Days after paying any sum for which it is required by law to make any deduction or withholding, and within twenty (20) Business Days after the due date of payment of any tax which it is required by subdivision (b) above to pay, Mezzanine Borrower shall deliver to Mezzanine Lender evidence satisfactory to Mezzanine Lender of such deduction, withholding or payment and of the remittance thereof to the relevant taxing or other authority;

provided, however, that (i) no such additional amount shall be required to be paid to Mezzanine Lender under subdivision (c) above except to the extent that any such applicability, enforcement, interpretation or administration giving rise to a requirement for a deduction, withholding or payment shall result in an increase in the rate of such deduction, withholding or payment from that in effect on the Effective Date in respect of payments to Mezzanine Lender and (ii) there shall be credited to the Outstanding Loan Obligations or refunded to Mezzanine Borrower the amount of any reimbursement received by Mezzanine Lender from any Governmental Authority of any tax so imposed by such Governmental Authority on Mezzanine Lender for which Mezzanine Borrower was required to make a payment under this Section 2.13.2.

    2.13.3. Any Person that becomes the Mezzanine Lender under the Mezzanine Loan and that is organized under the laws of any jurisdiction other than the United States of America or any state or other political subdivision thereof shall (to the extent permitted by applicable law) deliver to Mezzanine Borrower on the date it becomes the Mezzanine Lender and thereafter from time to time as reasonably required in the reasonable discretion of Mezzanine Borrower, such certificates, documents or other evidence, properly completed and duly executed by such Person becoming the Mezzanine Lender (including Internal Revenue Service Form 1001 or Form 4224 or any other certificate or statement of exemption required by Treasury

- 23 -

Regulations Section 1.1441-4(a) or Section 1.144-6(c) or any successor thereto) to establish that such Person is not subject to deduction or withholding of United States federal income tax under Section 1441 or Section 1442 of the Internal Revenue Code or otherwise (or under any comparable provisions of any successor statute) with respect to any payments to such Person, as Mezzanine Lender, of principal, interest, fees or other amounts payable under any of the Mezzanine Loan Documents.

2.13.4. If Mezzanine Lender shall have determined that the adoption, effectiveness, phase-in or applicability of any law, rule, regulation or guideline (or any provision thereof) regarding capital adequacy, or any change therein or in the interpretation or administration thereof by any Governmental Authority, central bank or comparable agency charged with the interpretation of administration thereof, or compliance by Mezzanine Lender with any guideline, request or directive regarding capital adequacy (whether or not having the force of law) of any such Governmental Authority, central bank or comparable agency, has or would have the effect of reducing the rate of return on the capital of Mezzanine Lender or any Affiliate controlling Mezzanine Lender as a consequence of, or with reference to, Mezzanine Lender's Mezzanine Loan or other obligations hereunder to a level below that which Mezzanine Lender or such controlling Affiliate could have achieved but for such adoption, effectiveness, phase-in applicability, change or compliance (taking into consideration the policies of Lender or such controlling Affiliate with regard to capital adequacy), then after receipt by Mezzanine Borrower from Mezzanine Lender of the statement referred to in the next sentence, Mezzanine Borrower shall pay to Mezzanine Lender such additional amount or amounts as will compensate Mezzanine Lender or such controlling Affiliate on an after-tax basis for such reduction. Mezzanine Lender shall deliver to Mezzanine Borrower a written statement, setting forth in reasonable detail the basis of the calculation of such additional amounts, which statement shall be conclusive and binding upon Mezzanine Borrower absent manifest error.

2.13.5. Any amount payable by Mezzanine Borrower under Section 2.13.1, Section 2.13.2, or Section 2.13.4 hereof shall be paid to Mezzanine Lender or the Person required to receive the same within five (5) Business Days after receipt by Mezzanine Borrower of a certificate signed by an officer of Mezzanine Lender setting forth the amount due and the basis for the determination of such amount, which statement shall be conclusive and binding upon Mezzanine Borrower, absent manifest error. Failure on the part of Mezzanine Lender to demand payment from Mezzanine Borrower for any such amount attributable to any particular period shall not constitute a waiver of Mezzanine Lender's right to demand payment of such amount for any subsequent or prior period. Mezzanine Lender shall use reasonable efforts to deliver to Mezzanine Borrower prompt notice of any event described in Sections 2.13.1 or 2.13.4 hereof and of the amount to be paid as a result thereof; provided, however, that any failure by Mezzanine Lender to so notify Mezzanine Borrower shall not affect Mezzanine Borrower's obligation to make the payments to be made under this Section 2.13 as a result thereof. All amounts that may become due and payable by Mezzanine Borrower in accordance with the provisions of this Section 2.13 shall constitute additional interest hereunder and shall be secured by the Mezzanine Loan Documents.

Section 2.14. <u>Cash Management</u>.

2.14.1. Mezzanine Borrower shall cause Mortgage Borrower and Senior Lender to enter into a cash management or lockbox agreement (the "<u>Senior Cash Management Agreement</u>") for the Property acceptable to Mezzanine Lender. Such Senior Cash Management Agreement shall provide that Senior Lender will hold all revenues and proceeds of loss or sale of the Property and other Receipts of Mortgage Borrower, subject to making such funds available to Mortgage Borrower to pay debt service on the Senior Loan and other operating expenses and costs approved by Senior Lender and Mezzanine Lender. All Distributions shall be and become Collateral as security for the Outstanding Loan Obligations.

2.14.2. Mezzanine Borrower and Mezzanine Lender have entered into a cash management agreement dated of even date herewith (as amended, modified and in effect from time to time, the "<u>Mezzanine Cash Management Agreement</u>"). Mezzanine Borrower shall (and shall cause Mortgage Borrower to) cause all Distributions and other Free Cash Flow, which may, under the Senior Cash Management Agreement, be released to Mortgage Borrower, to be paid directly into the Mezzanine Cash Collateral Account. If the Senior Loan is satisfied prior to the payment in full of the Mezzanine Loan and all other Outstanding Loan Obligations, upon the satisfaction of the Senior Loan, Mortgage Borrower and Mezzanine Borrower shall enter into an amended and restated cash management agreement in favor of Mezzanine Lender, in form satisfactory to Mezzanine Lender, pursuant to which Mortgage Borrower and Mezzanine Borrower will deposit in the Mezzanine Cash Collateral Account (or a substitute account satisfactory to Mezzanine Lender) as cash collateral all Distributions and Receipts of the Property, Mortgage Borrower and Mezzanine Borrower, which funds, subject to making such funds available to Mortgage Borrower to pay operating expenses and costs approved by Mezzanine Lender in a fashion substantially similar to that set forth in the Senior Cash Management Agreement, will be disbursed by Mezzanine Lender as provided in such amended and restated cash management agreement.

2.14.3. While there are any Outstanding Loan Obligations, Mezzanine Borrower shall not permit the purchase or redemption of any interests in Mortgage Borrower or Mezzanine Borrower or, except as expressly permitted in this <u>Section 2.14</u>, the declaration or payment of any Distributions or the setting aside of any funds for any such purpose. If, prior to the Conversion Date, any Distributions shall be received by any Loan Party or any other Person (other than Senior Lender), such Loan Party or other Person shall hold the same in trust for the benefit of Senior Lender and immediately deliver the same for deposit into the cash management account established under the Senior Cash Management Agreement (the "<u>Senior Lockbox</u>"). If, from and after the Conversion Date, any Distributions shall be received by any Loan Party or any other Person (other than Mezzanine Lender), such Loan Party or other Person shall hold the same in trust for the benefit of Mezzanine Lender and immediately deliver the same for deposit into the Mezzanine Cash Collateral Account.

2.14.4. Mezzanine Borrower expressly agrees that Mortgage Borrower shall be permitted to make Distributions to Mezzanine Borrower only upon the express condition that

- 25 -

Mezzanine Borrower cause Mortgage Borrower to deliver such Distributions directly to Mezzanine Lender (and to no other Person without the prior express written consent of Mezzanine Lender) by wire transfer (pursuant to wiring instructions to be furnished by Mezzanine Lender) for deposit in the Mezzanine Cash Collateral Account, to be held and applied in accordance with the terms and provisions hereof. Mezzanine Borrower expressly agrees that Senior Lender shall be permitted to pay Free Cash Flow to Mezzanine Borrower only upon the express condition that Mezzanine Borrower cause Senior Lender to deliver such Distributions directly to Mezzanine Lender (and to no other Person without the prior express written consent of Mezzanine Lender) by wire transfer (pursuant to wiring instructions to be furnished by Mezzanine Lender) for deposit in the Mezzanine Cash Collateral Account, to be held and applied in accordance with the terms and provisions hereof.

2.14.5. Mortgage Borrower and Mezzanine Borrower shall not pay, or permit the payment of, development fees, management fees, sales commissions or other brokerage fees or commissions to any Loan Party or any direct or indirect partners, members, shareholders or Affiliates thereof, or request disbursement of funds from Senior Lender for such purpose, without the consent of Mezzanine Lender. The payment of any such fees or request therefore without the consent of Mezzanine Lender shall constitute an Event of Default. Any contracts between or among any Loan Party and any other Loan Party or their respective direct or indirect partners, members, shareholders or Affiliates ("Affiliate Agreements") shall be made on an arm's-length basis and shall be subject to the prior approval of Mezzanine Lender; and the parties to each Affiliate Agreement shall acknowledge and agree that such agreement is terminable upon notice, without penalty, premium or liability for future or accrued liabilities or obligation, if an Event of Default shall have occurred under the Mezzanine Loan Documents. Following the occurrence of an Event of Default under the Mezzanine Loan Documents, if requested by Mezzanine Lender in writing, Mezzanine Borrower shall, or shall cause Mortgage Borrower to, terminate any Affiliate Agreements specified by Mezzanine Lender within five (5) days after delivery of Mezzanine Lender's request without payment of any penalty or termination fee.

2.14.6.

(a) The following subaccount of the Mezzanine Cash Collateral Account shall be maintained by Servicer on a ledger-entry basis: the "Remainder Subaccount".

(b) All amounts deposited into the Mezzanine Cash Collateral Account pursuant to the terms of the Senior Cash Management Agreement or, after the Conversion Date, this Agreement, as appropriate, shall be deemed to be Distributions by Mortgage Borrower to Mezzanine Borrower pursuant to the Mortgage Borrower Organizational Documents and shall constitute Free Cash Flow pursuant to this Agreement. Mezzanine Borrower intends to make payments on the Outstanding Loan Obligations from the Distributions. Mezzanine Borrower may from time to time deposit amounts into the Mezzanine Cash Collateral Account from sources of Mezzanine Borrower other than Distributions. All amounts deposited in the

- 26 -

Mezzanine Cash Collateral Account shall be disbursed in accordance with the terms of this Agreement.

(c) Provided no Event of Default then exists, commencing on the first Business Day of each Accrual Period, Servicer shall allocate amounts deposited in the Mezzanine Cash Collateral Account from time to time during such Accrual Period, on a daily basis in the following order and priority, in each case to the extent that sufficient funds remain therefor:

(i) First, to the Impound Account as provided in Section 2.10 hereof;

(ii) Second, to the Interest Reserve established under this Agreement, amounts required for the payment of all accrued and unpaid Basic Interest and Servicing Fees that will be due and payable pursuant to the Mezzanine Note and this Agreement on the next Due Date, but only to the extent that there will be insufficient funds in the Interest Reserve to make such payment;

(iii) Third, to Mezzanine Borrower for the payment of operating expenses for the current month as set forth in the Approved Budget;

(iv) Fourth, to the Mezzanine Lender to be applied to pay all other amounts then due and payable under the Mezzanine Loan Documents, other than the Outstanding Principal Amount, the Supplemental Payment and the Additional Appreciation Interest;

(v) Fifth, to the Mezzanine Lender to be applied to pay the Outstanding Principal Amount, until the Outstanding Principal Amount is paid in full;

(vi) Sixth, to the Mezzanine Lender to be applied to the Supplemental Payment, until the Supplemental Payment is paid in full;

(vii) Seventh, from and after the date that the Senior Loan and the Mezzanine Loan have been repaid in full, to the Remainder Subaccount until there shall have been distributed to the Remainder Subaccount pursuant to this Section 2.14.6(c)(vii), an amount equal to the Working Capital Amount pursuant to Section 2.14.7 hereof;

(viii) Eighth, to the Remainder Subaccount until there shall have been distributed to the Remainder Subaccount pursuant to this Section 2.14.6(c)(viii), an amount equal to the Sales Agent Differential for payment to the Sales Agent pursuant to Section 9.2.9 hereof.

(ix) Ninth, to the Remainder Subaccount until there shall have been distributed to the Remainder Subaccount pursuant to this Section 2.14.6(c)(ix), an amount equal to the Borrower's Equity Investment;

(x) Tenth, to the Remainder Subaccount until there shall have been distributed to the Remainder Subaccount pursuant to this Section 2.14.6(c)(x), an amount equal to an aggregate rate of return equal to sixteen percent (16%) on Borrower's Equity Investment; and

(xi) Lastly, the balance of all amounts then on deposit in the Mezzanine Cash Collateral Account, (1) twenty percent (20%) to Mezzanine Lender, and (2) eighty percent (80%) to the Remainder Subaccount.

(d) On each Due Date, provided no Event of Default shall have occurred and be continuing: (i) Mezzanine Lender shall withdraw amounts from the Interest Reserve for the purposes provided in Section 2.4.3 of this Agreement and (ii) amounts allocated to the Remainder Account, if any, shall be promptly disbursed to an account designated by Mezzanine Borrower in writing.

(e) Upon the occurrence and during the continuance of an Event of Default, Mezzanine Lender shall promptly provide Servicer with notice of such Event of Default (each, a "Notice of Default"), and without notice from Servicer or Mezzanine Lender to Mezzanine Borrower: (i) Mezzanine Borrower shall have no further right to disbursements from the Remainder Subaccount, and (ii) all amounts that are disbursed to the Mezzanine Cash Collateral Account in accordance with the Senior Loan Agreement or the Senior Cash Management Agreement or deposited in the Mezzanine Cash Collateral Account from any other source shall be held by Servicer in the Mezzanine Cash Collateral Account and may be applied by Servicer in such order and priority as the Mezzanine Lender shall direct, subject to Section 2.9. hereof. Mezzanine Lender may, at its sole discretion, direct Servicer to invest amounts deposited in the Mezzanie Cash Collateral Account in such investments as Mezzanine Lender may reasonably determine is necessary to perfect or protect any security interest granted or purported to be granted hereby or under the Mezzanine Cash Management Agreement or to enable Servicer, as agent for Mezzanine Lender, or Mezzanine Lender to exercise and enforce Mezzanine Lender's rights and remedies hereunder with respect to any Collateral.

Section 2.14.7. Working Capital Amount. From and after the date that the Senior Loan and the Mezzanine Loan has been repaid in full, Mezzanine Borrower and Mezzanine Lender hereby agree that prior to any Distributions being made to the Mezzanine Borrower, Mezzanine Borrower shall first cause to be established a reserve pursuant to Section 2.14.6(c)(vii) in the amount of $500,000 for purposes of working capital and payment of operating expenses incurred by Mortgage Borrower and/or Mezzanine Borrower in connection with the Property (the "Working Capital Amount"). Any amounts disbursed from the Working Capital Amount for payment of such working capital and operating expenses shall be made in accordance with an Approved Budget or otherwise pursuant to Mezzanine Lender's prior written approval. Within ninety (90) days following the sale of the last Unit to be sold pursuant to Article IX hereof, the Working Capital Amount shall be distributed to Mezzanine Borrower.

Section 2.15. <u>Taxes</u>. All payments made by Mezzanine Borrower under this Agreement, the Mezzanine Note or the other Mezzanine Loan Documents shall be made free and clear of, and without any offset, deduction or withholding for or on account of, any present or future income, stamp or other similar taxes, levies, imports, duties, charges, fees, deductions or withholdings, now or hereafter imposed, levied, collected, withheld or assessed by any Governmental Authority (other than taxes imposed on the income of Mezzanine Lender).

Section 2.16. <u>Reserve for Documentary Stamp Tax and Intangibles Tax</u>. On the Effective Date, Mezzanine Borrower shall deposit with Mezzanine Lender the amount of $73,700.00 (the "<u>Mortgage Tax Reserve</u>") from the proceeds of the Mezzanine Loan disbursed on the Effective Date in a segregated interest bearing account (which interest, if any, earned thereon shall be paid to Mezzanine Borrower or credited against the Outstanding Loan Obligations on the Maturity Date), which funds shall be and made available for payment of any documentary tax, intangibles tax, mortgage recording tax and other charges payable in connection with recording and filing of the Mezzanine Mortgage, the Mezzanine Assignment of Leases and other Mezzanine Loan Documents which are required to be recorded and filed (the "<u>Mortgage Recording Expenses</u>"), in order to secure payment as and when due and payable of all Mortgage Recording Expenses. Mezzanine Lender shall, without the necessity of notifying Mezzanine Borrower, be entitled to disburse a portion of the Mortgage Tax Reserve for the payment of any Mortgage Recording Expenses when due and payable in connection with the Mezzanine Loan Documents. Mezzanine Borrower agrees and acknowledges that neither the insufficiency of the amount of, nor the unavailability of, the Mortgage Tax Reserve is intended to, and shall therefore not, constitute a limitation on the obligation of Mezzanine Borrower to pay Mortgage Recording Expenses under this Agreement. Mezzanine Borrower shall promptly upon the demand of Mezzanine Lender, make additional Mortgage Tax Reserve deposits as Mezzanine Lender may from time to time require due to the underestimation of the amounts of Mortgage Recording Expenses. Upon full payment of the Outstanding Loan Obligations in accordance with the Mezzanine Loan Documents, the balance of the Mortgage Tax Reserve then in Mezzanine Lender's possession, if any, shall be paid over to Mezzanine Borrower and no other party shall have any right or claim thereto.

Section 2.17. <u>Servicing</u>. The Mezzanine Loan shall be serviced by a financial servicer selected by Mezzanine Lender in its sole discretion (the "<u>Servicer</u>"). Mezzanine Lender may change the Servicer from time to time without the consent of Mezzanine Borrower, on notice to Mezzanine Borrower. The initial Servicer shall be 27th and University LLC. Borrower expressly acknowledges and agrees that the Servicer's fees (the "<u>Servicing Fee</u>"), which shall in no event exceed one-quarter of one percent (0.25%) per annum on the Outstanding Principal Amount, payable in monthly installments, shall be payable by Mezzanine Borrower and shall constitute a portion of the Outstanding Loan Obligations.

ARTICLE III

CONDITIONS PRECEDENT

Mezzanine Lender's agreement to make the Mezzanine Loan is subject to the execution, delivery and performance by Mezzanine Borrower, Guarantor and the other Loan Parties, as applicable, to Mezzanine Lender's satisfaction, of all of the following, unless and to the limited extent expressly waived by Mezzanine Lender:

Section 3.1. <u>Mezzanine Loan Documents</u>. Mezzanine Lender shall have received the following Mezzanine Loan Documents and related matters, in addition to all other Mezzanine Loan Documents and other items as Mezzanine Lender shall require as a condition to the making of the Mezzanine Loan, all executed and in form and substance satisfactory to Mezzanine Lender:

  (a) this Agreement;

  (b) the Mezzanine Note;

  (c) the Mezzanine Cash Management Agreement;

  (d) the Guaranty;

  (e) the Hazardous Waste Indemnity;

  (f) Mezzanine Borrower's Counsel Opinions;

  (g) Pledge Agreement (and related membership certificates, certificate powers, resignations, UCC financing statements, control agreements and independent director certificates);

  (h) the Intercreditor Agreement;

  (i) the Manager Assignment and Subordination;

  (j) the Sales Agent Assignment and Subordination;

  (k) such UCC Financing Statements as Mezzanine Lender may require, duly executed, in order to establish, preserve and perfect Mezzanine Lender's liens on the Collateral; and

  (l) such other documents determined in Mezzanine Lender's sole discretion to be necessary in connection with this Agreement and/or the other Mezzanine Loan Documents.

Section 3.2. <u>Closing Costs</u>. Mezzanine Borrower shall have paid or cause to be paid, in immediately available federal funds:

    (a)    to Mezzanine Lender, the Origination Fee;

    (b)    to Mezzanine Lender, the Short Period Interest;

    (c)    to Mezzanine Lender, the amount required to be deposited into the Interest Reserve, the Mortgage Tax Reserve and, if applicable, the Impound Account and any other reserves required under this Agreement;

    (d)    to the Title Company or its representative, all title charges, filing and recording fees, mortgage recording taxes, intangible taxes, search fees and attendance charges;

    (e)    to Mezzanine Lender's Counsel, Mezzanine Lender's counsel's fees and disbursements incurred in connection with the due diligence of the Mezzanine Loan and the preparation, negotiation and delivery of the Mezzanine Loan Documents; and

    (f)    to Mezzanine Lender, all amounts required to pay or to reimburse Mezzanine Lender for the payment of, all appraisal, engineering, environmental assessments and/or testing fees and expenses, and other costs and expenses paid or incurred by Mezzanine Lender in connection with the Mezzanine Loan.

Section 3.3. <u>Senior Loan Closing; LTV Condition; Minimum Borrower Equity</u>. The closing of the Senior Loan shall have been consummated and the maximum principal amount of the Senior Loan when combined with the principal amount of the Mezzanine Loan shall not exceed seventy-five percent (75%) of the appraised net "sellout" value of the Units and shall not exceed ninety-five percent (95%) of total capitalization, each as determined by Mezzanine Lender in its sole and absolute discretion. Mortgage Borrower shall have a minimum cash equity investment in the Property equal to $4,500,000.00 (the "<u>Borrower's Equity Investment</u>")

Section 3.4. <u>Title</u>. Mezzanine Lender shall have received, at Mezzanine Borrower's sole cost and expense, an UCCPlus Lender's Policy from the Title Company in respect of the Property (collectively, the "<u>Title Policy</u>"), dated as of the Effective Date, and acceptable to Mezzanine Lender. The Title Policy shall also contain any reinsurance and other endorsements required by Mezzanine Lender; <u>provided, however</u>, that to the extent that the Title Company shall be precluded by law or regulation from issuing any required endorsement or if such endorsement is not generally available as determined by Mezzanine Lender, such endorsement shall not be required if Mezzanine Borrower shall provide alternative assurances satisfactory to Mezzanine Lender as to the matters that would otherwise have been addressed thereby.

Section 3.5. <u>Survey</u>. Mezzanine Borrower shall have provided to Mezzanine Lender a current (i.e., dated not more than twenty (20) days prior to the Effective Date) survey of the

Property which shall be certified to Mortgage Borrower, Mezzanine Borrower, Mezzanine Lender and the Title Company by a licensed land surveyor acceptable to Mezzanine Lender.

Section 3.6.  Required Insurance.  Mezzanine Borrower shall have provided to Mezzanine Lender fully paid for certificates evidencing the Required Insurance, each in form and substance acceptable to Mezzanine Lender, together with the original insurance policies with respect thereto.

Section 3.7.  Authorizations.  Mezzanine Borrower shall have provided to Mezzanine Lender, each in form and substance acceptable to Mezzanine Lender and certified as true, correct and complete, (a) all Organizational Documents, and all amendments thereto, of the Loan Parties, (b) resolutions of the Loan Parties authorizing the transactions contemplated hereby, and (c) certificates of good standing and active status from the Secretary of State of Florida and the state of formation for each Loan Party, dated not more than thirty (30) days prior to the Effective Date.

Section 3.8.  Material Adverse Effect.  There shall not have occurred any Material Adverse Effect.

Section 3.9.  Project Verification.  Mezzanine Borrower and/or Mezzanine Lender's Project Consultant shall have provided to Mezzanine Lender evidence, satisfactory to Mezzanine Lender in its sole discretion, that the Property is zoned for the Intended Use and that the Project can be developed "as of right".

ARTICLE IV

REPRESENTATIONS AND WARRANTIES

Section 4.1.  Representations and Warranties of Mezzanine Borrower.  Mezzanine Borrower hereby makes the following representations and warranties for the benefit of Mezzanine Lender:

4.1.1.  Organization.  Each of Mezzanine Borrower, Mortgage Borrower and Mezzanine Owner (each a "Loan Party" and collectively, the "Loan Parties") (i) is duly organized and validly existing, in good standing under the laws of the state of its formation; (ii) is duly qualified as a foreign entity in each jurisdiction in which the nature of its business, or the ownership of its assets makes such qualification necessary or desirable; and (iii) has the requisite power and authority to carry on its business as now being conducted.  Each of Mezzanine Borrower, Mortgage Borrower and Mezzanine Owner is a Single Purpose Entity. Mezzanine Borrower is the sole member of Mortgage Borrower and Mezzanine Owner is the sole member of Mezzanine Borrower.  The structural chart of Mortgage Borrower and Mezzanine Borrower set forth on Exhibit B attached hereto and made a part hereof sets forth all direct and indirect Ownership Interests in the Loan Parties and is true, complete and correct in all respects.  No Person other than those Persons shown on Exhibit B have any Ownership Interest in, or right to control, directly or indirectly, Mortgage Borrower or Mezzanine Borrower.  A true