and complete copy of the Organizational Documents of each Loan Party have been furnished to Lender.

4.1.2. <u>Authorization; No Conflicts</u>. The execution and delivery by the Loan Parties of the respective Loan Documents, the performance of each of their respective obligations thereunder and the creation of the security interests provided for in the respective Loan Documents: (i) have been duly authorized by all requisite action on the part of each of the Loan Parties, (ii) will not violate any Legal Requirement, any Organizational Document of any Loan Party or any indenture or agreement or other instrument to which any Loan Party is a party or by which any Loan Party is bound, (iii) will not be in conflict with, result in a breach of, or constitute a default under, or result in the creation or imposition of any lien of any nature whatsoever upon any of the property or assets of any Loan Party, and (iv) have been duly executed and delivered by each Loan Party. Except for those obtained or filed on or prior to the Effective Date, neither Mezzanine Borrower nor any Guarantor is required to obtain any consent, approval or authorization from, or to file any declaration or statement with, any Governmental Authority in connection with or as a condition to the execution, delivery or performance of the Mezzanine Loan Documents.

4.1.3. <u>Enforceability</u>. The Mezzanine Loan Documents are the legal, valid and binding obligations of Mezzanine Borrower, Mortgage Borrower and each Guarantor, respectively, and are enforceable against each in accordance with their respective terms, subject only to bankruptcy, insolvency and other limitations on creditors' rights generally and to equitable principles. The Mezzanine Loan Documents are, as of the Effective Date, not subject to any right of rescission, set-off, counterclaim or defense by Mezzanine Borrower, Mortgage Borrower or any Guarantor, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mezzanine Loan Documents, or the exercise of any right thereunder, render the Mezzanine Loan Documents unenforceable or subject to any right of rescission, set-off, counterclaim or defense by Mezzanine Borrower, Mortgage Borrower and/or any Guarantor, including, without limitation, the defense of usury, and Mezzanine Borrower has not asserted any right of rescission, set-off, counterclaim or defense with respect thereto.

4.1.4. <u>Litigation</u>. There are no actions, suits or proceedings at law or in equity by or before any Governmental Authority now pending and served or, to the best knowledge of Mezzanine Borrower, threatened against any Loan Party, the Collateral or the Property.

4.1.5. <u>Agreements</u>. No Loan Party is a party to any agreement or instrument or subject to any restriction which is likely to have a Material Adverse Effect. No Loan Party is in default (regardless of any applicable notice and cure periods) in any respect under any agreement to which it is a party or by which it or the Collateral or the Property is bound.

4.1.6. <u>No Bankruptcy Filing</u>. No Loan Party is contemplating either the filing of a petition under any state or federal bankruptcy or insolvency laws or the liquidation of all or any portion of its assets, no such action or filing is pending against any Loan Party by any person and, to the best knowledge of Mezzanine Borrower and Guarantor, no Person is contemplating the filing of any such petition or action against any Loan Party.

4.1.7. <u>Full and Accurate Disclosure</u>. No statement of fact made by or on behalf of any Loan Party in the Mezzanine Loan Documents or in any other document or certificate delivered by any Loan Party contains any untrue statement of a material fact or omits to state any material fact necessary to make statements contained herein or therein not misleading. There are no facts which have not been disclosed to Mezzanine Lender which will have a Material Adverse Effect, nor, to Mezzanine Borrower's best knowledge, as far as Mezzanine Borrower and Guarantor can foresee, might have a Material Adverse Effect upon the business, operations or condition (financial or otherwise) of any Loan Party.

4.1.8. <u>Location of Chief Executive Offices</u>. Each Loan Party that is an individual resides in the State of Florida and has no residence outside of the state in which the Property is located. The location of the principal place of business and the chief executive office of Mortgage Borrower and Mezzanine Borrower is the address for Mezzanine Borrower listed in the first paragraph of this Agreement, and neither Mortgage Borrower nor Mezzanine Borrower has any other places of business. The location of the principal place of business and the chief executive office of each Guarantor which is not an individual is the address listed in the first paragraph of the Guaranty, and such Guarantor has no other places of business.

4.1.9. <u>Compliance</u>. The Loan Parties, the Property and the use thereof and the Collateral comply in all material respects with all applicable Legal Requirements.

4.1.10. <u>Obligations</u>. None of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner has any (a) indebtedness or liability for borrowed money, (b) obligations evidenced by bonds, debentures, notes, or other similar instruments, (c) obligations for the deferred purchase price of property or services (including trade obligations), (d) obligations under letters of credit, or (e) obligations under any guaranties, endorsements (other than for collection or deposit in the ordinary course of business) or other contingent obligations (collectively, the "<u>Obligations</u>"), other than, in the case of Mezzanine Borrower, the Outstanding Loan Obligations or other amounts permitted under this Agreement, in the case of Mezzanine Owner, as provided under the Mezzanine Loan Documents, and, in the case of Mortgage Borrower, the obligations evidenced or permitted under the Senior Loan Documents.

4.1.11. <u>ERISA</u>. Neither Mezzanine Borrower nor any Guarantor has any employees or is a member of a control group of corporations or businesses treated as a single employer under the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>"), or is required by ERISA or any other applicable law to maintain any employee benefit pension plans.

4.1.12. <u>Solvency</u>. Mezzanine Borrower has not obtained the Mezzanine Loan with the actual intent to hinder, delay, or defraud any creditor, and has received reasonably equivalent value in exchange for its obligations under the Mezzanine Loan Documents. Giving effect to the transactions contemplated hereby, the fair saleable value of Mezzanine Borrower's assets exceeds and will, immediately following the execution and delivery of this Agreement, exceed Mezzanine Borrower's total liabilities (including its Obligations). Mezzanine Borrower's assets do not and, immediately following the execution and delivery of this Agreement, will not

- 34 -

constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted. Mezzanine Borrower does not intend to, and does not believe that it will, incur debts and liabilities beyond its ability to pay such debts as they mature.

4.1.13. <u>Not Foreign Person</u>. No Loan Party is a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as it may be further amended and all regulations promulgated thereunder (the "<u>Code</u>").

4.1.14. <u>Investment Company Act; Public Utility Holding Company Act</u>. No Loan Party is (i) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended, (ii) a "holding company" or a "subsidiary company" of a "holding company" or an "affiliate" of either a "holding company" or a "subsidiary company" within the meaning of the Public Utility Holding Company Act of 1935, as amended, or (iii) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

4.1.15. <u>No Defaults</u>. No Default or Event of Default exists under or with respect to any Mezzanine Loan Document.

4.1.16. <u>Senior Loan</u>.

(a) No default (regardless of any applicable notice and cure periods) or Senior Loan Event of Default exists under or with respect to the Senior Loan Documents.

(b) All of the representations and warranties of any borrower party under the Senior Loan Documents are true, complete and correct.

(c) There are no Senior Loan Documents other than those set forth on <u>Exhibit C</u> attached hereto. Mezzanine Borrower has delivered to Mezzanine Lender true, complete and correct copies of all Senior Loan Documents, and none of the Senior Loan Documents has been amended or modified.

(d) All of the Senior Loan proceeds advanced to Mortgage Borrower have been and will be used solely in accordance with the Initial Budget and the Annual Budget delivered pursuant to <u>Section 6.2</u> hereof.

(e) As of the Effective Date, all conditions precedent to the making of the Senior Loan and all funding conditions set forth in the Senior Loan Documents have been fully complied with and satisfied.

4.1.17. <u>Title to the Pledged Collateral</u>. One hundred percent (100%) of the membership interests in Mortgage Borrower are wholly owned by Mezzanine Borrower free and clear of all Liens. All of the Pledged Collateral is free and clear of all Liens.

4.1.18. <u>Use of Proceeds; Margin Regulations</u>. Mezzanine Borrower will use the proceeds of the Mezzanine Loan for the purposes described herein. No part of the proceeds of the Mezzanine Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose which would be inconsistent with such Regulation U or any other Regulations of such Board of Governors, or for any purposes prohibited by applicable Legal Requirements.

4.1.19. <u>Financial Information</u>. All historical financial data concerning each Loan Party and the Property that has been delivered by or on behalf of Mezzanine Borrower and/or the other Loan Parties is true, complete and correct in all material respects. Since the delivery of such data, except as otherwise expressly disclosed in writing to Mezzanine Lender, there has been no material adverse change in the financial position of any Loan Party or the Property, or in the results of operations of any of the foregoing. No Loan Party has incurred any obligation, contingent or otherwise, not reflected in such financial data which might materially adversely affect its business operations or the Property.

4.1.20. <u>Conduct of Business</u>. No Loan Party conducts its business "also known as", "doing business as" or under any other name.

4.1.21. <u>Broker</u>. Mezzanine Borrower dealt with no broker, finder or like agent in connection with the Mezzanine Loan or the execution and delivery hereof other than BayBridge Capital Advisors, LLC ("<u>Broker</u>"). Mezzanine Borrower indemnifies and holds harmless Mezzanine Lender from and against any expense, cost or liability arising from or incurred in connection with any claim by any broker, including the Broker, who shall claim to have dealt with Mezzanine Borrower. The rights of Mezzanine Lender granted in this Section are in addition to and not in lieu of any indemnity granted elsewhere in this Agreement or any of the other Mezzanine Loan Documents or otherwise at law.

4.1.22. <u>Additional Representations and Warranties Regarding the Property</u>.

(a) <u>Ownership</u>. Mortgage Borrower owns good, indefeasible, marketable and insurable fee simple title to the Property, subject only the exceptions to title expressly permitted under the Senior Loan Documents.

(b) <u>Residential Rent Control</u>. There are no current, pending or, to Mezzanine Borrower's best knowledge, threatened or proposed affordable housing or low income housing restrictions or rent control ordinances affecting the Property.

(c) <u>Other Representations.</u> Mezzanine Borrower hereby remakes all representations and warranties made under the Senior Loan Documents by Mortgage Borrower to and for the benefit of Mezzanine Lender.

4.1.23. <u>Purchase Agreement</u>.

       (a)    Mortgage Borrower, as successor-in-interest to The Grand Preserve at Naples, LLC, is a party to that certain Agreement of Sale dated as of April 27, 2005 by and between Mortgage Borrower, as purchaser, and Orlando Tradition Property Company LLC, as seller, (as the same may have been amended, collectively the "Purchase Agreement"), pursuant to which Purchase Agreement Mortgage Borrower has the right to purchase the Property.

       (b)    Mezzanine Borrower has delivered to Mezzanine Lender a true, correct and complete copy of the Purchase Agreement.

Section 4.2.   <u>Survival of Representations and Warranties</u>. Mezzanine Borrower agrees that (a) all of the representations and warranties of Mezzanine Borrower set forth in this Agreement and in the other Mezzanine Loan Documents delivered on the Effective Date are made as of the Effective Date (except as expressly otherwise provided) and (b) all representations and warranties made by Mezzanine Borrower shall survive the delivery of Mezzanine Note and the other Mezzanine Loan Documents and continue for so long as any amount remains owing to Mezzanine Lender under the Mezzanine Loan Documents. All representations, warranties, covenants and agreements made in this Agreement or in the other Mezzanine Loan Documents shall be deemed to have been relied upon by Mezzanine Lender notwithstanding any investigation heretofore or hereafter made by Mezzanine Lender or on its behalf.

ARTICLE V

COVENANTS

Section 5.1.   <u>Mezzanine Borrower Covenants</u>. From the date hereof and until payment in full of all principal and accrued and unpaid interest and all other Outstanding Loan Obligations, Mezzanine Borrower covenants and agrees that:

      5.1.1.   <u>Maintenance of Representations</u>. Each Loan Party shall conduct its respective business in such a way so as to insure that all representations and warranties set forth herein shall remain true and correct at all times.

      5.1.2.   <u>The Senior Loan Documents</u>. Mezzanine Borrower shall cause Mortgage Borrower to observe, perform and satisfy all of the terms, provisions, covenants and conditions required to be observed, performed or satisfied by Mortgage Borrower under the Senior Loan Documents and shall cause Mortgage Borrower to pay when due all costs, fees and expenses required to be paid by it under the Senior Loan Documents.

      5.1.3.   <u>Perform Mezzanine Loan Documents</u>. Each Loan Party shall observe, perform and satisfy all the terms, provisions, covenants and conditions required to be observed, performed or satisfied by it, and shall pay when due all costs, fees and expenses required to be paid by it, under the Mezzanine Loan Documents executed and delivered by such Loan Party.

5.1.4. <u>Modification of Senior Loan Documents and Organizational Documents</u>. Mezzanine Borrower will not consent to, or permit Mortgage Borrower to consent to, any amendment, modification, waiver, or restatement of any of the Senior Loan Documents or permit Mortgage Borrower to amend, modify, waive or repeal any of the Organizational Documents of Mortgage Borrower or any of the terms thereof.

5.1.5. <u>Mezzanine Borrower's Organizational Documents</u>. Mezzanine Borrower will not amend, modify, waive or repeal any of its Organizational Documents or any of the terms thereof.

5.1.6. <u>Single Purpose Entity</u>.

(a) None of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner shall enter into any transaction of acquisition, merger, consolidation or amalgamation, or liquidate, wind up or dissolve itself (or suffer any liquidation or dissolution), create any subsidiaries, or acquire by purchase or otherwise all or substantially all the business or assets of, or stock or other evidences of beneficial ownership of, or make any investment in, any Person, or make any material change in its present method of conducting business or amend the terms of its Organizational Documents;

(b) none of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner is contemplating either the filing of a petition under any state or federal bankruptcy or insolvency laws or the liquidation of all or a major portion of its assets or property, and Mezzanine Borrower has no knowledge of any Person contemplating the filing of any such petition against it or Mortgage Borrower or Mezzanine Owner;

(c) except with respect to a Person which is a managing member or general partner, in the ordinary course of such Person acting as such managing member or general partner, none of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner has, and no such Person will, guarantee or otherwise hold out its credit as being available to satisfy obligations of any other Person except, in the case of Mezzanine Owner, to the extent so expressly provided in the Mezzanine Loan Documents;

(d) Mortgage Borrower was organized for the sole purpose of owning, managing and operating the Property and activities ancillary thereto, Mezzanine Borrower was organized for the sole purpose of acting as the sole member of Mortgage Borrower, and Mezzanine Owner was organized for the sole purpose of acting as the sole member of Mezzanine Borrower;

(e) Mortgage Borrower has not, and will not, engage in any business unrelated to the ownership, management and operation of the Property and activities ancillary thereto and will conduct and operate its business as presently conducted and operated; Mezzanine Borrower has not, and will not, engage in any business unrelated to acting as the member of Mortgage Borrower, and Mezzanine Owner has not, and will not, engage in any business unrelated to acting as the member of Mezzanine Borrower;

(f) none of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner will enter into any contract or agreement with any member, partner, principal, shareholder or Affiliate of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with unrelated third parties;

(g) in addition to any limitations with respect thereto contained in Section 4.1.10 hereof, Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner have not incurred, and will not incur, any Obligations or material liabilities, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the Obligations permitted under Section 4.1.10 hereof; provided, however, that no such Obligations or liabilities (other than the Senior Loan) may be secured (senior, subordinate or pari passu) by the Property or any portion thereof, and no such Obligations or liabilities (other than the Mezzanine Loan) may be secured (senior, subordinate or pari passu) by the Collateral or any portion thereof, except as expressly permitted in said Section 4.1.10 hereof;

(h) none of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner has made or will make any loans or advances to any third party (including any Affiliate of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner) or pledge its assets for the benefit of any third party (including any Affiliate of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner), except as required by the Mezzanine Loan Documents and the Senior Loan Documents;

(i) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner is and will be solvent and will pay its debts and liabilities (including employment and overhead expenses) from its own assets as the same shall become due;

(j) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner will maintain its own separate books and records and bank accounts, in each case which are and will be separate and apart from those of any other Person;

(k) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any Affiliate thereof), shall maintain and utilize separate stationery, invoices and checks, shall otherwise conduct its business and own its assets in its own name, and shall correct any known misunderstanding regarding its separate identity;

(l) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner has and will maintain separate financial statements and will file its own tax returns;

(m) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

- 39 -

NYC01_84033442_7_334016_00003 6/28/2005 3:59 PM

(n) none of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner will seek the dissolution or winding up, in whole or in part, of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner;

(o) none of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner will commingle its funds or other assets with those of any Affiliate or other Person;

(p) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner has and will maintain its assets in such a manner that it is not costly or difficult to segregate, ascertain or identify its individual assets from those of any Affiliate or any other Person;

(q) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner has and will maintain a reasonable number of employees in light of its contemplated business operations and shall pay the salaries of its employees, and will not do any act which would make it impossible to carry on the ordinary business of Mortgage Borrower or Mezzanine Borrower;

(r) none of Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner will file or consent to the filing of a petition for bankruptcy, reorganization, assignment for the benefit of creditors or similar proceeding under any federal or state bankruptcy, insolvency, reorganization or other similar law with respect to Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner, without (i) if Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner shall be a limited liability company, the unanimous consent of its members and managers, (ii) if Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner shall be a partnership, the unanimous consent of its limited partners and general partners, or (iii) if Mortgage Borrower, Mezzanine Borrower or Mezzanine Owner shall be a corporation, the unanimous consent of its directors;

(s) the sole assets of Mortgage Borrower are, and until indefeasible payment in full of the Mezzanine Loan and the Senior Loan shall be, (i) the fee interest in the Property, (ii) such assets as are otherwise acquired in connection with the use, operation, maintenance, repair or management of the Property, and (iii) cash and accounts receivable;

(t) each of Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner has and will observe all partnership formalities, limited liability company formalities or corporate formalities, as applicable;

(u) Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner have not and will not acquire the obligations or securities of any of their partners, members or shareholders, as applicable;

(v) Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner shall each allocate fairly and reasonably any overhead for any office space which such entity shares with any other entity;

(w) Mortgage Borrower, Mezzanine Borrower and Mezzanine Owner will at all times comply with each of the representations, warranties, and covenants contained in this Section 5.1.6; and

(x) Mezzanine Borrower shall, at all times while any of the Outstanding Loan Obligations remain outstanding and for a period of three hundred sixty-six (366) days thereafter, have an Independent Director, whose vote shall be required in connection with any Major Decision.

5.1.7. Taxes and Liens on the Pledged Collateral. The Loan Parties will not incur, create, assume, become or be liable in any manner with respect to, or permit to exist, any Lien with respect to any Pledged Collateral except Liens in favor of Mezzanine Lender. Mezzanine Borrower and Guarantor shall pay before delinquency any tax or other governmental charge which is or can become through assessment, distraint or otherwise a lien on the Pledged Collateral and shall pay any tax or other governmental charge which may be levied on the transactions hereunder, provided that nothing herein shall require Mezzanine Borrower or any Guarantor to pay any such tax or other governmental charge with respect to which Mezzanine Borrower or such Guarantor, as applicable, is prosecuting in good faith an appeal or other proceeding for review and as to which any foreclosure or other enforcement proceeding shall have been fully bonded or otherwise effectively stayed.

5.1.8. Liens on the Property. Mezzanine Borrower will not, or permit Mortgage Borrower to, incur, create, assume, become liable in any manner with respect to, or permit to exist any Liens with respect to the Property except for Permitted Encumbrances, Liens created pursuant to the Senior Loan Documents in favor of the Senior Lender, and Liens created pursuant to the Mezzanine Loan Documents in favor of Mezzanine Lender.

5.1.9. Merger, Consolidation, Dissolution, etc. Mezzanine Borrower will not, and will not cause or permit Mortgage Borrower to (i) merge, convert or consolidate with or into any other Person, (ii) dissolve, wind-up, liquidate or take any action as a result of which any such entity would be dissolved, wound-up or liquidated in whole or in part, or (iii) engage in any business activity not described in the applicable Organizational Documents of such entity.

5.1.10. Affiliate Transactions. Mezzanine Borrower and Mortgage Borrower will not enter into, or be a party to, any transaction with an Affiliate or pay any expenses or other amounts to any Affiliate, unless approved by Mezzanine Lender in writing.

5.1.11. Certain Restrictions. Mezzanine Borrower will not: (i) enter into any agreement which expressly restricts the ability of Mezzanine Borrower to enter into amendments, modifications or waivers of any of the Mezzanine Loan Documents; (ii) enter into any contractual obligations not in the ordinary course of its business; and (iii) loan money to or otherwise extend financing to any Person.

5.1.12. Issuance of Equity Interests. Mezzanine Borrower will not issue or allow to be created any stocks or shares or partnership or membership interests, as applicable, or other

ownership interests in Mezzanine Borrower or Mortgage Borrower other than the stocks, shares, partnership or membership interests and other ownership interests which are outstanding or exist on the Effective Date, or any security or other instrument which by its terms is convertible into or exercisable or exchangeable for stock, shares, partnership or membership interests or other ownership interests in Mezzanine Borrower or Mortgage Borrower.

5.1.13. <u>Intentionally Omitted.</u>

5.1.14. <u>Approved Budget</u>. Mezzanine Borrower shall operate the Property, and shall cause Mortgage Borrower to operate the Property, in accordance with the Approved Budget.

Section 5.2.  <u>Further Assurances</u>.

5.2.1. Mezzanine Borrower shall and shall cause each Loan Party to forthwith upon the execution and delivery of this Agreement and thereafter, from time to time, at Mezzanine Lender's request, cause any of the Mezzanine Loan Documents (including, without limitation, any additional financing statements or continuation statements) to be filed, registered or recorded in such manner and in such places as may be required by any applicable law in order to publish notice of and fully to protect, perfect or continue the perfection of any lien or security interest in favor of Mezzanine Lender, and the interest of Mezzanine Lender in the Collateral. Mezzanine Borrower will pay, or will cause Mortgage Borrower to pay, all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Mezzanine Loan Documents, any note or other agreements supplemental thereto, any security instrument with respect to the Collateral and any instrument of further assurance, and any amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Agreement, any security instrument with respect to the Collateral or any instrument of further assurance, and amendment of the foregoing documents, except where prohibited by law so to do.

5.2.2. Mezzanine Borrower will, at the sole cost of Mezzanine Borrower, and without expense to Mezzanine Lender, (i) do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered all and every such further acts, deeds, conveyances, mortgages, assignments, financing statements, continuation statements, notices of assignments, transfers and assurances as Mezzanine Lender shall, from time to time, reasonably require, for the better assuring, carrying out, conveying, assigning, transferring, pledging, hypothecating, perfecting, preserving and confirming unto Mezzanine Lender the security interests, liens, property and rights granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be under the Mezzanine Loan Documents, or which Mezzanine Borrower may be or may hereafter become bound to convey, assign, transfer, pledge, or hypothecate to Mezzanine Lender, or for carrying out the intention or facilitating the performance of the terms of the Mezzanine Loan Documents and (ii) furnish or cause to be furnished to Mezzanine Lender all instruments, documents, surveys, certificates, plans and specifications, appraisals, title and other insurance reports and agreements, and each and every

other document, certificate, agreement and instrument required to be furnished by (A) Mezzanine Borrower or any Loan Party pursuant to the terms of the Mezzanine Loan Documents or reasonably requested by Mezzanine Lender in connection therewith, or (B) Mortgage Borrower pursuant to the terms of the Senior Loan Documents. Mezzanine Borrower and each other Loan Party, on demand, will execute and deliver and hereby authorizes Mezzanine Lender to execute in the name of Mezzanine Borrower or such Loan Party or without the signature of Mezzanine Borrower or such Loan Party to the extent Mezzanine Lender may lawfully do so, one or more financing statements, or other instruments, to evidence more effectively the security interest of Mezzanine Lender in the Collateral. Mezzanine Borrower and each other Loan Party grants to Mezzanine Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mezzanine Lender at law and in equity or under the Mezzanine Loan Documents.

5.2.3. If any law is enacted or adopted or amended after the date of this Agreement which deducts all or part of the Outstanding Loan Obligations from the value of the Collateral for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Outstanding Loan Obligations or Mezzanine Lender's interest in the Collateral, Mezzanine Borrower will pay the tax, with interest and penalties thereon, if any. If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Mezzanine Note or any other of the Mezzanine Loan Documents or impose any other tax or charge on the same, except for any tax or imposition imposed on the income of Mezzanine Lender, Mezzanine Borrower will pay for the same, with interest and penalties thereon, if any.

Section 5.3.  Insurance.

5.3.1. The insurance described in Section 7.6 of the Senior Loan Agreement and that certain Insurance Agreement dated as of the date hereof between Mortgage Borrower and Senior Lender and Section 5.3.3 hereof (collectively, the "Required Insurance") (except policies for worker's compensation) shall be in the form and amount and with deductibles as, from time to time, shall be reasonably acceptable to Mezzanine Lender, it being acknowledged that, prior to the Conversion Date, in the event Mezzanine Borrower satisfies the requirements of Senior Lender relating to amounts of insurance, types of insurance and deductibles, provided that no Event of Default has occurred and is continuing and Mezzanine Borrower has satisfied all of the other requirements of this Agreement relating to insurance, Mezzanine Lender shall deem such insurance to be acceptable. The Required Insurance shall be evidenced by valid and enforceable policies issued by financially responsible insurers authorized to do business in the State where the Property is located, with a general policyholder's service rating of not less than "A" and a financial rating of not less than XIII as rated in the most currently available Best's Insurance Reports (or the equivalent, if such rating system shall hereafter be altered or replaced) and shall have a claims paying ability rating and/or financial strength rating, as applicable, of not less than "A" (or its equivalent), or such lower claims paying ability rating and/or financial strength rating, as applicable, as Mezzanine Lender shall, in its sole and absolute discretion, consent to, from a rating agency (one of which shall be Standard & Poor's). Originals or certified copies of all

- 43 -

insurance policies shall be delivered to and held by Mezzanine Lender. All such policies (except policies for worker's compensation) shall name Mezzanine Lender, its successors and/or assigns as an additional named insured (subject to the rights of Senior Lender), shall provide for loss payable to Mezzanine Lender, its successors and assigns (subject to the rights of Senior Lender) and shall contain (or have attached): (i) standard "non-contributory mortgagee" endorsement or its equivalent relating, inter alia, to recovery by Mezzanine Lender notwithstanding the negligent or willful acts or omissions of Mezzanine Borrower or Mortgage Borrower; (ii) a waiver of subrogation endorsement as to Mezzanine Lender; (iii) an endorsement indicating that none of Mezzanine Lender, Mezzanine Borrower or Mortgage Borrower shall be or be deemed to be a co-insurer with respect to any casualty risk insured by such policies, and (iv) a provision that such policies shall not be canceled, terminated, denied renewal or amended, including, without limitation, any amendment reducing the scope or limits of coverage, without at least thirty (30) days' prior written notice to Mezzanine Lender in each instance. Such policies shall provide for property insurance in an amount not less than the greatest of (A) the then full replacement cost of the improvements and equipment on the Property, without deduction for physical depreciation, (B) the aggregate outstanding principal balance of the Senior Loan and the Mezzanine Loan, and (C) such amount that the insurer would not deem Mortgagor Borrower or Mezzanine Borrower a co-insurer under said policies. Such policies shall also provide for a deductible per loss of an amount not more than the lesser of $25,000, 5% of full replacement cost of the Property and 5% of annual net operating income, and provide for business interruption insurance covering a period of at least eighteen (18) months, with an extended period of indemnity of not less than thirty (30) days. Not less than thirty (30) days prior to the expiration dates of the insurance policies obtained pursuant to this Agreement, originals or certified copies of renewals of such policies (or certificates evidencing such renewals) bearing notations evidencing the payment of premiums or accompanied by other reasonable evidence of such payment (which premiums shall not be paid by Mezzanine Borrower or Mortgage Borrower through or by any financing arrangement which would entitle an insurer to terminate a policy) shall be delivered by Mezzanine Borrower to Mezzanine Lender. Mezzanine Borrower shall not carry separate insurance, concurrent in kind or form or contributing in the event of loss, with any insurance required under Section 7.6 of the Senior Loan Agreement or Section 5.3.3 hereof. From and after the Conversion Date, Mezzanine Borrower shall maintain or cause Mortgage Borrower to maintain such insurance as Mezzanine Lender shall require to meet Mezzanine Lender's then current insurance requirements for loans originated by Mezzanine Lender.

     5.3.2. If (i) Mezzanine Borrower fails to maintain the insurance required by this Agreement or (ii) Mezzanine Borrower fails to deliver to Mezzanine Lender the original policies or certificates of insurance required by this Agreement (provided, however, that if the insurance policies required by this Agreement are maintained in full force and effect and Mezzanine Lender receives either a certificate or original policies required by this Agreement for each such insurance policy, then Mezzanine Borrower shall have fifteen (15) days after notice from Mezzanine Lender of Mezzanine Borrower's failure to deliver original policies or certificates (whichever has not been delivered as required) to deliver same to Mezzanine Lender before Mezzanine Lender may procure insurance as provided below), Mezzanine Lender may, at its option, procure such insurance, and Mezzanine Borrower shall pay, or as the case may be,

reimburse Mezzanine Lender for, all premiums thereon promptly, upon demand by Mezzanine Lender, with interest thereon at the Default Rate from the date paid by Mezzanine Lender to the date of repayment and such sum shall constitute a part of the Outstanding Loan Obligations.

5.3.3. Mezzanine Borrower shall deliver to Mezzanine Lender such other insurance as may from time to time be required by Mezzanine Lender and which is then customarily required by institutional lenders for similar properties similarly situated, against other insurable hazards, including, but not limited to, malicious mischief, vandalism, windstorm and/or earthquake, due regard to be given to the size and type of the Property and its location, construction and use.

5.3.4. Without limiting the foregoing, from and after the Conversion Date, Mezzanine Borrower shall be required to obtain and maintain (and Mezzanine Borrower shall deliver to Mezzanine Lender on or prior to the Conversion Date evidence thereof), casualty insurance against loss or damage by fire, lightning and such other perils as are included in a standard "special form" policy (formerly known as an "all-risk" endorsement policy), and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy, including riot and civil commotion, vandalism, terrorist actions, malicious mischief, burglary and theft, in each case (A) in an amount equal to one hundred percent (100%) of the "Full Replacement Cost", which for purposes of this Agreement shall mean, with respect to the Units, the actual replacement value of the improvements, betterments and personal property located in the Units; (B) containing an agreed amount endorsement with respect to the improvements, betterments and personal property at the Units waiving all co-insurance provisions; (C) providing for no deductible in excess of Ten Thousand and No/100 Dollars ($10,000.00) for all such insurance coverage; and (D) otherwise complying with all of the requirements of this Section 5.3.

Section 5.4. Casualty. Mezzanine Borrower shall give Mezzanine Lender prompt notice of any loss or damage to the Property and, subject to the rights of the Senior Lender under the Senior Loan Documents (which shall supercede the rights of Mezzanine Lender under this Section 5.4):

5.4.1. After the Senior Loan has been paid in full, in the event of any loss or damage covered by any insurance, Mezzanine Lender is hereby authorized (i) if an Event of Default shall have occurred or, if no Event of Default shall have occurred but Mezzanine Borrower or Mortgage Borrower fails to settle and adjust any claim within sixty (60) days after such casualty has occurred, to settle and adjust any claim under such insurance without the consent of Mezzanine Borrower or Mortgage Borrower, or (ii) if no Event of Default has occurred, to allow Mezzanine Borrower or Mortgage Borrower within sixty (60) days after such casualty to settle and adjust such claim with, if any settlement may reasonably be anticipated to result in proceeds in excess of $250,000.00, the consent of Mezzanine Lender, not to be unreasonably withheld; provided, however, that in either case Mezzanine Lender shall, and is hereby authorized to, collect and receive any such insurance proceeds, subject, however, to the rights of Senior Lender under the Senior Loan Documents relating to the application of insurance

proceeds. The expenses incurred by Mezzanine Lender in the adjustment and collection of such proceeds of insurance shall be additional Outstanding Loan Obligations of Mezzanine Borrower, and shall be reimbursed to Mezzanine Lender upon demand or, at Mezzanine Lender's option, in the event and to the extent sufficient proceeds are available, deducted by Mezzanine Lender from such proceeds of insurance prior to any other application thereof. If the Senior Loan has been paid in full, each insurance company which has issued insurance is hereby authorized and directed to make payment for all losses covered by such insurance to Mezzanine Lender alone, and not to Mezzanine Lender and Mezzanine Borrower or Mortgage Borrower jointly. Mezzanine Borrower agrees to execute and cause Mortgage Borrower to execute all documents and make all deliveries required in order to permit adjustment and payment of insurance proceeds as provided above.

   5.4.2. Mezzanine Borrower hereby assigns to Mezzanine Lender the proceeds of all insurance (other than worker's compensation and liability insurance) obtained pursuant to this Agreement, all of which proceeds shall be payable to Mezzanine Lender as collateral and further security for the payment of the Outstanding Loan Obligations and the performance of Mezzanine Borrower's obligations hereunder and under the other Mezzanine Loan Documents, and Mezzanine Borrower hereby authorizes and directs the issuer of any such insurance to, subject to the rights of Senior Lender under the Senior Loan Documents, make payment of such proceeds directly to Mezzanine Lender. Subject to the requirements set forth in the Condominium Documents from and after the Condominium Conversion, Mezzanine Lender may, in its sole discretion, apply the proceeds of insurance received upon any casualty either (i) to reduce the Outstanding Loan Obligations, in such order or manner as Mezzanine Lender may elect; or (ii) at Mezzanine Lender's election, to reimburse Mezzanine Borrower or Mortgage Borrower for or to pay the costs of restoring, repairing, replacing or rebuilding the loss or damage caused by such casualty, in accordance with and subject to such conditions as Mezzanine Lender may determine in its sole discretion.

   5.4.3. After the Senior Loan has been paid in full, notwithstanding the foregoing provisions of this Section 5.4, upon the occurrence of any damage to or destruction of the Property, provided that such damage or destruction is not a Major Casualty (as defined in the Senior Mortgage), if in Mezzanine Lender's reasonable judgment the cost of repair of or restoration to the Property required as a result of any damage or destruction is less than $250,000 in the aggregate and the repair and restoration can be completed in less than one hundred twenty (120) days (but in no event beyond the date which is six (6) months prior to the Maturity Date), then Mezzanine Lender, upon request by Mezzanine Borrower, shall permit Mezzanine Borrower to apply for and receive the insurance proceeds directly from the insurer (and Mezzanine Lender shall advise the insurer to pay over such insurance proceeds directly to Mezzanine Borrower), to the extent required to pay for any such repair and restoration, with any excess thereof to be promptly paid by Mezzanine Borrower to Mezzanine Lender to be applied against the Outstanding Loan Obligations.

Section 5.5. <u>Environmental</u>.

5.5.1. <u>Covenants, Representations and Warranties</u>.

(a) Mezzanine Borrower hereby represents and warrants that neither Mezzanine Borrower nor Mortgage Borrower has, at any time, and, to Mezzanine Borrower's best knowledge, except as set forth in the environmental report delivered to Mezzanine Lender in connection with the Mezzanine Loan (the "<u>Environmental Report</u>"), no other Person has at any time, handled, buried, stored, retained, refined, transported, processed, manufactured, generated, produced, spilled, allowed to seep, leak, escape or leach, or pumped, poured, emitted, emptied, discharged, injected, dumped, transferred or otherwise disposed of or dealt with Hazardous Substances on, to or from the Property or any other real property owned and/or occupied by Mezzanine Borrower or Mortgage Borrower, and Mezzanine Borrower and Mortgage Borrower do not intend to and shall not use the Property or any part thereof or any such other real property for the purpose of handling, burying, storing, retaining, refining, transporting, processing, manufacturing, generating, producing, spilling, seeping, leaking, escaping, leaching, pumping, pouring, emitting, emptying, discharging, injecting, dumping, transferring or otherwise disposing of or dealing with Hazardous Substances, except for use and storage for use of heating oil, cleaning fluids, pesticides and other substances customarily used in the operation of properties that are being used for similar purposes as the Property is presently being used, provided such use and/or storage for use is in compliance with the requirements hereof and the other Mezzanine Loan Documents and does not give rise to liability under applicable Legal Requirements or Environmental Laws or be the basis for a lien against the Property or any part thereof. In addition, without limitation to the foregoing provisions, Mezzanine Borrower represents and warrants that, to the best of its knowledge, after due inquiry and investigation, except as previously disclosed in the Environmental Report, there is no asbestos in, on, over, or under all or any portion of the fire-proofing or any other portion of the Property.

5.5.2. Mezzanine Borrower represents and warrants that, after due inquiry and investigation, except as previously disclosed in the Environmental Report, Mezzanine Borrower knows of no seepage, leak, escape, leach, discharge, injection, release, emission, spill, pumping, pouring, emptying or dumping of Hazardous Substances into waters on, under or adjacent to the Property or any part thereof or any other real property owned and/or occupied by Mezzanine Borrower or Mortgage Borrower, or onto lands from which such Hazardous Substances might seep, flow or drain into such waters.

5.5.3. Neither Mezzanine Borrower nor Mortgage Borrower shall permit any Hazardous Substances to be handled, buried, stored, retained, refined, transported, processed, manufactured, generated, produced, spilled, allowed to seep, leak, escape or leach, or to be pumped, poured, emitted, emptied, discharged, injected, dumped, transferred or otherwise disposed of or dealt with on, under, to or from the Property or any portion thereof at any time, except for use and storage for use of heating oil, ordinary cleaning fluids, pesticides and other substances customarily used in the operation of properties that are being used for similar purposes as the Property is presently being used, provided such use and/or storage for use is in

compliance with the requirements hereof and the other Mezzanine Loan Documents and does not give rise to liability under applicable Legal Requirements or be the basis for a lien against the Property or any part thereof.

5.5.4. Mezzanine Borrower represents and warrants that no actions, suits, or proceedings have been commenced, or are pending, or to the best knowledge of Mezzanine Borrower, are threatened with respect to any Legal Requirement governing the use, manufacture, storage, treatment, transportation, or processing of Hazardous Substances with respect to the Property or any part thereof. Mezzanine Borrower further represents and warrants that neither Mezzanine Borrower nor Mortgage Borrower has received any notice of, and, except as disclosed in the Environmental Report, after due inquiry and investigation, has no knowledge of any fact, condition, occurrence or circumstance which with notice or passage of time or both would give rise to a claim under or pursuant to any Environmental Law pertaining to Hazardous Substances on, in, under or originating from the Property or any part thereof or any other real property owned or occupied by Mezzanine Borrower or Mortgage Borrower or arising out of the conduct of Mezzanine Borrower or Mortgage Borrower, including, without limitation, pursuant to any Environmental Law.

5.5.5. Mezzanine Borrower represents and warrants that neither Mezzanine Borrower nor Mortgage Borrower has waived any Person's liability with regard to Hazardous Substances in, on, under or around the Property, nor have Mezzanine Borrower or Mortgage Borrower retained or assumed, contractually or by operation of law, any other Person's liability relative to Hazardous Substances or any claim, action or proceeding relating thereto.

5.5.6. In the event that there shall be filed a lien against the Property or any part thereof pursuant to any Environmental Law pertaining to Hazardous Substances, Mezzanine Borrower shall, within sixty (60) days or, in the event that the applicable Governmental Authority has commenced steps to cause the Property or any part thereof to be sold pursuant to the lien, within fifteen (15) days from the date that Mezzanine Borrower or Mortgage Borrower receives notice of such lien, either (a) pay the claim and remove the lien from the Property, or (b) furnish at Mezzanine Borrower's election (i) a bond reasonably satisfactory to Mezzanine Lender in the amount of the claim out of which the lien arises, (ii) a cash deposit in the amount of the claim out of which the lien arises, or (ii) other security reasonably satisfactory to Mezzanine Lender in an amount sufficient to discharge the claim out of which the lien arises.

5.5.7. Mezzanine Borrower represents and warrants that (a) except as disclosed in the Environmental Report, Mezzanine Borrower has no knowledge of any violation of any Environmental Law or any Hazardous Substances Release in connection with the Property, nor have Mezzanine Borrower or Mortgage Borrower been requested or required by any Governmental Authority to perform any remedial activity or other responsive action in connection with any Hazardous Substances Release and (b) neither the Property nor any other real property owned by Mezzanine Borrower or Mortgage Borrower is included or, to Mezzanine Borrower's best knowledge, after due inquiry and investigation, proposed for inclusion on the National Priorities List issued pursuant to CERCLA by the United States Environmental