CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR
PROCEEDING.

Section 8.5.    Modification, Waiver in Writing.  No modification, amendment, waiver,
extension, discharge or termination of any kind under any of the Mezzanine Loan Documents
shall be valid unless in writing and signed by the parties to such document(s).  This Agreement,
the Mezzanine Note and the other Mezzanine Loan Documents may not be modified, amended,
waived, extended, changed, discharged or terminated orally or by any act or failure to act on the
part of Mezzanine Borrower, Guarantor and/or Mezzanine Lender, and Mezzanine Lender shall
not by any act, delay, omission or otherwise be deemed to have modified, amended, waived,
extended, discharged or terminated any of its rights or remedies.

Section 8.6.    Delay Not a Waiver.  Neither any failure nor any delay on the part of
Mezzanine Lender in insisting upon strict performance of any term, condition, covenant or
agreement, or exercising any right, power, remedy or privilege hereunder, or under any other
Mezzanine Loan Document, shall operate as or constitute a waiver thereof.

Section 8.7.    Notices.  Any notice, report, demand or other instrument authorized or
required to be given or furnished ("Notices") shall be in writing and shall be given as follows:
(i) by hand delivery; (ii) by deposit in the United States mail as first class certified mail, return
receipt requested, postage paid; (iii) by overnight nationwide commercial courier service; or
(iv) by telecopy transmission with a confirmation copy to be delivered by duplicate notice in
accordance with any of clauses (i) through (iii) above, in each case, to the party intended to
receive the same at the following addresses:

Lender:    Hudson Realty Capital Fund III LP
    c/o Hudson Realty Capital LLC
    381 Park Avenue South, Suite 428
    New York, New York  10016
    Attention:  Robert Perelman
    Re: The Tradition Mezzanine Loan
    Telecopier:  (212) 532-7901

with a copy to:    27th and University LLC
    Two University Plaza
    Hackensack, New Jersey 07601
    Attention:  Sanford Herrick
    Re: The Tradition Mezzanine Loan
    Telecopier: (201) 343-1523

and with a copy to:    Katten Muchin Rosenman LLP
    575 Madison Avenue
    New York, New York 10022
    Attention:  Marc S. Shapiro, Esq.
    Telecopier: (212) 940-8776

- 64 -

Mezzanine Borrower: Millenia Luxury Condominiums Mezz, LLC
                    2601 South Bayshore Drive, Suite 200
                    Miami, Florida 33133
                    Attention: Eduardo Avila
                    Telecopier: (305) 857-0441

with a copy to:     Adorno & Yoss, LLP
                    2525 Ponce de Leon Boulevard
                    Suite 400
                    Miami, Florida 33134
                    Telecopier: (305) 460-1422

Any party may change the address to which any such Notice is to be delivered, by furnishing ten (10) days written notice of such change to the other parties in accordance with the provisions of this Section 8.7. Notices shall be deemed to have been given on the date they are actually received; provided, however, that the inability to deliver Notices because of a changed address of which no Notice was given or rejection or refusal to accept any Notice offered for delivery shall be deemed to be receipt of the Notice as of the date of such inability to deliver or rejection or refusal to accept delivery. Notice for either party may be given by its respective counsel. Additionally, notice from Lender may also be given by Servicer.

Section 8.8.    Waiver of Jury Trial.    MEZZANINE BORROWER AND MEZZANINE LENDER EACH WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT OR ANY OF THE OTHER MEZZANINE LOAN DOCUMENTS OR ANY OF THE TRANSACTIONS RELATED TO ANY OF MEZZANINE LOAN DOCUMENTS.    MEZZANINE BORROWER AGREES THAT THE OBLIGATIONS EVIDENCED BY THIS AGREEMENT ARE EXEMPTED TRANSACTIONS UNDER THE TRUTH-IN-LENDING ACT, 15 U.S.C. SECTION 1601, ET SEQ. MEZZANINE BORROWER ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS THE MEANING OF THIS WAIVER PROVISION.

Section 8.9.    Assignment.    Mezzanine Lender shall have the right to assign in whole or in part this Agreement and/or any of the other Mezzanine Loan Documents and the obligations hereunder or thereunder to any Person and to participate all or any portion of the Mezzanine Loan. Mezzanine Borrower and its Affiliates, and all other Persons associated or connected with the Mezzanine Loan or the Property, shall cooperate in all respects with Mezzanine Lender in connection with the sale of participation interests in, or the pledge, hypothecation or encumbrance or sale of all or any portion of, the Mezzanine Loan, and shall, in connection therewith, execute and deliver such estoppels, certificates, instruments and documents as may be reasonably requested by Mezzanine Lender, provided the same do not materially increase Mezzanine Borrower's obligations under the Mezzanine Loan Documents or materially impair any material rights granted to Mezzanine Borrower under the Mezzanine Loan Documents. Mezzanine Borrower grants to Mezzanine Lender the right to distribute on a confidential basis

- 65 -

financial and other information concerning Mezzanine Borrower, the Collateral, and other pertinent information with respect to the Mezzanine Loan to any party who has purchased a participation interest in the Mezzanine Loan or who has made a loan to Mezzanine Lender secured by the Mezzanine Loan or who has expressed an interest in purchasing the Mezzanine Loan or a participation interest in the Mezzanine Loan or the making of a loan to Mezzanine Lender secured by the Mezzanine Loan.

Section 8.10. <u>Severability</u>. Wherever possible, each provision of this Agreement and the other Mezzanine Loan Documents shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement or the other Mezzanine Loan Documents shall be prohibited by, invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such prohibition, invalidity or unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Agreement and the other Mezzanine Loan Documents; <u>provided, however</u>, that in such event, Mezzanine Lender may elect to treat such determination of invalidity, illegality or unenforceability as an Event of Default under the Mezzanine Loan Documents.

Section 8.11. <u>Joint and Several</u>. If more than one Mezzanine Borrower has executed this Agreement, Mezzanine Note and/or any other Mezzanine Loan Document, the obligations of each such Mezzanine Borrower hereunder and thereunder shall be joint and several.

Section 8.12. <u>Headings; Counterparts</u>. The Article and Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

Section 8.13. <u>No Joint Venture or Partnership</u>. Mezzanine Borrower and Mezzanine Lender intend that the relationship created hereunder and under the other Mezzanine Loan Documents be solely that of borrower and lender. Nothing herein or under any of the other Mezzanine Loan Documents is intended to create a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between Mezzanine Borrower and Mezzanine Lender.

Section 8.14. <u>Waiver of Counterclaim</u>. Mezzanine Borrower hereby waives the right to assert a counterclaim, other than compulsory counterclaim, in any action or proceeding brought against Mezzanine Borrower by Mezzanine Lender or Mezzanine Lender's agents.

Section 8.15. <u>Conflict; Construction of Documents</u>. In the event of any conflict between the provisions of this Agreement and the provisions of any of the other Mezzanine Loan Documents, the provisions of this Agreement shall prevail. The parties hereto acknowledge that they were represented by counsel in connection with the negotiation and drafting of the Mezzanine Loan Documents and that Mezzanine Loan Documents shall not be subject to the principle of construing their meaning against the party which drafted same.

NYC01_84033442_7_334016_00003 6/28/2005 3:59 PM

Section 8.16.  Dissemination of Information; Cooperation; Estoppel.

8.16.1. If Mezzanine Lender determines at any time to sell, transfer or assign Mezzanine Note and the other Mezzanine Loan Documents and/or any or all servicing rights with respect thereto, or to grant participations therein or issue securities or interests evidencing a beneficial interest in a secondary market transaction (each, a "Loan Transfer"), Mezzanine Lender may forward to each purchaser, transferee, assignee, servicer, participant or investor in such transaction (an "Investor") or any rating agency and each prospective Investor, all documents and information which Mezzanine Lender now has or may hereafter acquire relating to the Mezzanine Loan, the Loan Parties, the Pledged Collateral and the Property, which shall have been furnished by or on behalf of Mezzanine Borrower, as Mezzanine Lender in its discretion determines is desirable.  Mezzanine Borrower shall cooperate with Mezzanine Lender in effecting any such Loan Transfer, including providing such information and documents as Mezzanine Lender may reasonably request in connection with any such transfer.

8.16.2. After request by Mezzanine Lender, Mezzanine Borrower, within ten (10) days, shall furnish Mezzanine Lender or any proposed assignee with a statement, duly acknowledged and certified, setting forth: (i) the amount of the original principal amount of the Mezzanine Note, (ii) the unpaid principal amount of the Mezzanine Note, (iii) the rate of interest of the Mezzanine Note, (iv) the terms of payment and maturity date of the Mezzanine Note, (v) the date installments of interest and/or principal were last paid, (vi) that, except as provided in such statement, there are no defaults or events which with the passage of time or the giving of notice or both, would constitute an event of default under the Mezzanine Loan Documents, (vii) that the Mezzanine Loan Documents are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification, (viii) whether any offsets or defenses exist against the obligations secured by the Mezzanine Loan Documents and, if any are alleged to exist, a detailed description thereof, and (xiii) as to any other matters reasonably requested by Mezzanine Lender and reasonably related to the obligations secured by the Mezzanine Loan Documents, the Pledged Collateral, the Senior Loan or the Property.

Section 8.17.  Indemnification.     Mezzanine Borrower shall indemnify and hold Mezzanine Lender and each of its affiliates and their respective successors and assigns (including their respective officers, directors, partners, employees, attorneys, accountants, professionals and agents and each other person, if any, controlling Mezzanine Lender or any of its affiliates within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended) (each, including Mezzanine Lender, an "Indemnified Party") harmless against any and all losses, claims, damages, costs, expenses (including, without limitation, the fees and disbursements of outside counsel retained by any such Person) or liabilities in connection with, arising out of or as a result of the transactions and matters referred to or contemplated by this Agreement (including, but not limited to, a Loan Transfer), except to the extent that it is finally judicially determined that any such loss, claim, damage, cost, expense or liability resulted directly and solely from the gross negligence, fraud or willful misconduct of such Indemnified Party.  If any Indemnified Party becomes involved in any action, proceeding or investigation in connection with any transaction

or matter referred to or contemplated in this Agreement, Mezzanine Borrower shall periodically reimburse any Indemnified Party upon demand therefor in an amount equal to its reasonable legal and other expenses (including, without limitation, the costs of any investigation and preparation) incurred in connection therewith to the extent such legal or other expenses are the subject of indemnification hereunder.

Section 8.18.  Recourse.

8.18.1. Except to the extent otherwise provided below: (a) all obligations of Mezzanine Borrower to Mezzanine Lender and monetary damages in favor of Mezzanine Lender against Mezzanine Borrower under the Mezzanine Loan Documents shall be limited to the properties and assets of Mezzanine Borrower from time to time; and (b) neither Mezzanine Lender nor any Person acting on behalf of Mezzanine Lender shall be entitled to take any action to procure any money judgment in personam or any deficiency decree against any member of Mezzanine Borrower, any officer of Mezzanine Borrower, or any officer or director of any member of Mezzanine Borrower, except in each case to the extent that such Person has received amounts distributable to Mezzanine Lender hereunder or as provided below, provided that nothing herein shall be deemed to limit or impair the enforcement against or recourse to Mezzanine Borrower (pursuant to the following provisions of this Section) or pursuant to any collateral which may from time to time be given to Mezzanine Lender as security for the performance of Mezzanine Borrower's obligations under the Mezzanine Note, this Agreement, the Pledge Agreement or the other Mezzanine Loan Documents or to limit or impair the rights and remedies of Mezzanine Lender hereunder or thereunder or the validity hereof or thereof. Nothing contained herein is intended to limit the obligations and personal liability of the guarantors under any guaranty and the indemnitors under any indemnity agreement, including, without limitation, the Hazardous Waste Indemnity and the Guaranty, executed by Mezzanine Borrower or any other Person for the benefit of Mezzanine Lender.

8.18.2. Notwithstanding the foregoing, the provisions of Section 8.18.1 shall not: (i) constitute a waiver, release or impairment of any obligation evidenced or secured by any of the Mezzanine Loan Documents; (ii) impair the right of Mezzanine Lender to name Mezzanine Borrower as a party defendant in any action or suit for enforcement of this Agreement, the Mezzanine Note or the other Mezzanine Loan Documents; (iii) affect the validity or enforceability of any guaranty made in connection with the Mezzanine Loan or any of the rights and remedies of Mezzanine Lender thereunder; (iv) impair the right of Mezzanine Lender to obtain the appointment of a receiver; (v) impair the enforcement of this Agreement, the Mezzanine Note, the Pledge Agreement or the other Mezzanine Loan Documents; (vi) constitute a prohibition against Mezzanine Lender seeking a deficiency judgment against Mezzanine Borrower solely in order to fully realize the security granted by the Mezzanine Loan Documents or to commence any other appropriate action or proceeding in order for Mezzanine Lender to exercise its remedies against all of Mezzanine Borrower's assets and properties; (vii) constitute a waiver of the right of Mezzanine Lender to hold Mezzanine Borrower personally liable for, and to enforce the liability and obligation of Mezzanine Borrower, by money judgment or otherwise, for the cost of enforcement of any of Mezzanine Lender's rights or remedies hereunder or under

- 68 -

any of the other Mezzanine Loan Documents, or costs incurred in any bankruptcy or similar proceeding which may be brought by or against Mezzanine Borrower or any other Loan Party; or (viii) constitute a waiver of the right of Mezzanine Lender to hold Mezzanine Borrower personally liable for, and to enforce the liability and obligation of Mezzanine Borrower, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or other obligation incurred by Mezzanine Lender (including, without limitation, attorneys' fees and costs reasonably incurred) arising out of or in connection with the following: (A) fraud or intentional misrepresentation by Mezzanine Borrower or any owner of a direct or indirect equity interest in Mezzanine Borrower or any other Loan Party in connection with the Mezzanine Loan; (B) (1) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release or threatened release of any Hazardous Substance (including the presence of mold or asbestos) on, from or affecting the Property, (2) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Substance, (3) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Substance, or (4) any violation of any federal, state or local environmental laws, rules or regulations which are based upon or in any way related to such Hazardous Substance; (C) the removal or disposal of any portion of Mezzanine Borrower's assets and properties after the occurrence and during the continuance of an Event of Default other than as a result of the normal replacement of any equipment or as a result of the repair, replacement or rebuilding of any part of the Property that is destroyed by any casualty, or becomes damaged, worn or dilapidated, or is required in order to comply with any laws, orders and ordinances affecting the Property or the use thereof; (D) intentionally omitted; (E) the failure by Mezzanine Borrower or any Guarantor to pay any charge that creates any lien or other encumbrance on the Pledged Collateral or any portion thereof; (F) any placing of a voluntary lien or other encumbrance on the Pledged Collateral or on the Property (except for permitted exceptions under the Senior Mortgage not requiring the consent of the Senior Lender), or any transfer of the Property or an interest therein in contravention of the terms of this Agreement; (G) the termination, winding up or dissolution of any Loan Party to the extent such dissolution, winding up or termination arose from the action or omission of any equity owner of such Loan Party if such action or omission is in violation of the provisions of this Agreement or the other Mezzanine Loan Documents; (H) Mezzanine Borrower or Mortgage Borrower fails to maintain its status as a Single Purpose Entity in accordance with the provisions of this Agreement; (I)(1) a receiver, liquidator, or trustee of a Loan Party shall be appointed or if a Loan Party shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, a Loan Party, or if any proceeding for the dissolution or liquidation of a Loan Party shall be instituted, and (2) such appointment, adjudication, petition or proceeding was involuntary and not consented to by such Loan Party, and (3) the same is not discharged, stayed or dismissed within one hundred and twenty (120) days; and (J) waste of the Property arising from willful misconduct or gross negligence.

8.18.3. Notwithstanding anything to the contrary in this Agreement and the other Mezzanine Loan Documents: (i) Mezzanine Lender shall not be deemed to have waived any right which Mezzanine Lender may have under Section 506(a), 506(b), 1111(b) or any other

- 69 -

provisions of the Bankruptcy Code to file a claim for the full amount of the obligations under the Mezzanine Note and the other Mezzanine Loan Documents or to require that all Pledged Collateral shall continue to secure all amounts owing to Mezzanine Lender in accordance with the Mezzanine Loan Documents; and (ii) the agreement of Mezzanine Lender not to pursue recourse liability against Mezzanine Borrower as set forth in this Section 8.18 **SHALL BECOME NULL AND VOID** and shall be of no further force or effect, and Mezzanine Borrower and any guarantor shall be personally liable to Mezzanine Lender for all principal, interest and other amounts payable under the Mezzanine Loan in the event:

(a)     any Distributions, any Free Cash Flow or any amounts required to be paid to Senior Lender or Mezzanine Lender or deposited in the Senior Lockbox or the Mezzanine Cash Collateral Account are misapplied or misappropriated; or

(b)     a Bankruptcy Event (as hereinafter defined) occurs; or

(c)     any Transfer, sale, conveyance, encumbrance or pledge of the Property (except as permitted by this Agreement) or the Collateral (or any interest therein) occurs, or any breach of Section 5.1.6, Section 6.4, Section 8.20 or Section 8.21 of this Agreement occurs; or

(d)     Mezzanine Borrower or any Affiliate contests or in any material way interferes with, directly or indirectly (collectively, a "Contest"), any foreclosure action, Uniform Commercial Code sale and/or deed in lieu of foreclosure transaction commenced by Mezzanine Lender or with any other enforcement of Mezzanine Lender's rights, powers or remedies under any of the Mezzanine Loan Documents or under any document evidencing, securing or otherwise relating to any of the Collateral (whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, seeking to consolidate any such foreclosure or other enforcement with any other action, or otherwise).

8.18.4. As used in this Section 8.18, a "Bankruptcy Event" means one or more of the following events: (i) any Loan Party files any voluntary petition under any chapter of the Bankruptcy Code, or files any petition for dissolution or liquidation or takes other action to dissolve or liquidate, or in any manner seeks any relief under any local, state, federal or other insolvency laws or laws providing for the relief of debtors; or (ii) any involuntary petition under any chapter of the Bankruptcy Code shall be filed against a Loan Party or a Loan Party becomes the subject of any proceedings pursuant to any local, state, federal or other insolvency laws or laws providing for the relief of debtors, either at the present time or at any time hereafter and such Loan Party consents to and/or fails to object to such action; or (iii) as a result of any event described in the preceding clauses (i) or (ii), the Property, or any of the property or assets of such Loan Party, or any portion thereof or any interest of such Loan Party in the Property or any of the property or assets of any Loan Party, shall become the property of any bankruptcy estate or the subject of any local, state, federal or other bankruptcy, dissolution, liquidation or insolvency proceedings, either at the present time or any time hereafter.

- 70 -

Section 8.19.  <u>Compliance with Anti-Terrorism, Embargo and Anti-Money Laundering Laws</u>.  Mezzanine Borrower hereby represents and warrants that (a) none of Mezzanine Borrower, Mortgage Borrower, any Guarantor, or any Person who owns any equity interest in or Controls Mezzanine Borrower, Mortgage Borrower or any Guarantor currently is identified on the OFAC List or otherwise qualifies as a Prohibited Person, and Mortgage Borrower has implemented procedures, approved by Mezzanine Borrower, to ensure that no Person who now or hereafter owns an equity interest in Mortgage Borrower or Mezzanine Borrower is a Prohibited Person or Controlled by a Prohibited Person, and (b) none of Mezzanine Borrower, Mortgage Borrower or any Guarantor are in violation of any Legal Requirements relating to anti-money laundering or anti-terrorism, including, without limitation, Legal Requirements related to transacting business with Prohibited Persons or the requirements of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, U.S. Public Law 107-56, and the related regulations issued thereunder, including temporary regulations, all as amended from time to time.  Mezzanine Borrower further represents and warrants that no tenant at the Property currently is identified on the OFAC List or otherwise qualifies as a Prohibited Person, and, to the best knowledge of Mezzanine Borrower, no tenant at the Property is owned or Controlled by a Prohibited Person.  Mezzanine Borrower or Mortgage Borrower shall direct the Manager of the Property to implement procedures, approved by Mezzanine Borrower, to ensure that no tenant at the Property is a Prohibited Person or owned or Controlled by a Prohibited Person.

Section 8.20.  <u>Conversion Event</u>.  At any time after the occurrence of the Conversion Event, Mezzanine Lender may extend a new mortgage loan to Mortgage Borrower in a principal amount equal to the Outstanding Principal Amount on the date on which the same is funded (the "New Mortgage Loan"), which New Mortgage Loan shall bear interest and be payable on the same terms, and otherwise have identical terms, as the Mezzanine Loan except that (a) the collateral securing the New Mortgage Loan shall be a first priority mortgage on the Property, an assignment of all Leases and Receipts, a collateral assignment of all contracts of sale executed by Mortgage Borrower in connection with the sale of Units and Mortgage Borrower's rights to any deposits and down payments received pursuant thereto, and such other collateral as Mortgage Borrower mortgaged, assigned or pledged as collateral for the Senior Loan; (b) Mezzanine Lender shall be obligated after the Condominium Conversion (if the same has not theretofore occurred) to release Units from the lien of the Mezzanine Mortgage upon payment to Mezzanine Lender of the Release Consideration applicable to such Units, delivery of partial release endorsements to the mortgagee title insurance policy insuring the lien of the Mezzanine Mortgage and other requirements similar to those currently set forth in the Senior Loan Documents; and (c) the Supplemental Payment payable by Mortgage Borrower under the New Mortgage Loan shall be calculated for the period commencing on the Effective Date of the Mezzanine Loan through and including the maturity date of the New Mortgage Loan .  Upon written notice given by Mezzanine Lender to Mezzanine Borrower at any time after the Conversion Date that Mezzanine Lender has elected to close the New Mortgage Loan, Mezzanine Borrower shall cause Mortgage Borrower to enter into and accept the New Mortgage Loan, the proceeds of which shall be used by Mortgage Borrower to repay in full the Outstanding Loan Obligations (other than the Supplemental Payment which shall not be due

NYC01_84033442_7_334016_00003 6/28/2005 3:59 PM

until the maturity of the New Mortgage Loan), and within thirty (30) days after receipt of said notice from Mezzanine Lender, Mezzanine Borrower shall cause Mortgage Borrower and each Guarantor, as applicable, to:  (a) execute and deliver to Mezzanine Lender, each in form and substance satisfactory to Mezzanine Lender, the Mezzanine Mortgage, the Mezzanine Assignment of Leases, the Mezzanine Assignment of Contracts, a new loan agreement, a new cash management agreement, a new guaranty containing substantially the same terms as the Guaranty, a new environmental indemnity agreement containing substantially the same terms as the Hazardous Waste Indemnity, and such other documents as Mezzanine Lender shall determined to be necessary and appropriate to evidence and secure the New Mortgage Loan; (b) deliver to Mezzanine Lender the same information and reports as were delivered to Senior Lender in connection with the origination of the Senior Loan, including, without limitation, an appraisal of the Property, financial statements of Mortgage Borrower, net worth and liquidity letters as to the Individual Guarantors and authorizing resolutions, all updated to a current date and permitting reliance thereon by Mezzanine Lender; (c) deliver to Mezzanine Lender a mortgagee title insurance policy, dated as of the date of recording of the Mezzanine Mortgage, from a title insurance company satisfactory to Mezzanine Lender, insuring the validity and priority of the lien of the Mezzanine Mortgage as a first mortgage on the Property subject to no Liens other than the Permitted Encumbrances and otherwise in all respects satisfactory to Mezzanine Lender, together with an endorsement to the title insurance policy in form and substance acceptable to Mezzanine Lender in Mezzanine Lender's reasonable discretion, providing affirmative insurance against losses arising as a result of the invalidity of the formation of the Condominium and such other matters as Mezzanine Lender shall require, with payment by Mortgage Borrower of all premiums, title charges and costs related to the title examination and issuance of such policy and endorsements; (d) deliver to Mezzanine Lender an opinion of counsel of Mortgage Borrower and each Guarantor in respect of (among other things) the enforceability of the documents evidencing, securing and/or guarantying the New Mortgage Loan, in all respects satisfactory to Mezzanine Lender; and (f) pay all the fees and expenses of Mezzanine Lender, including, without limitation, reasonable attorneys fees, in connection with the foregoing.  Mezzanine Borrower shall cause Mortgage Borrower to record the Mezzanine Mortgage, the Mezzanine Assignment of Leases and such other of the documents securing the New Mortgage Loan as Mezzanine Lender may require in the real property records of Lee County, Florida, and the funds contained in the Mortgage Tax Reserve shall be applied by Mezzanine Lender to pay the Mortgage Recording Expenses, including, without limitation, any documentary tax, intangibles tax or mortgage recording tax, due and owing upon any such recordation, with any balance remaining unpaid being paid by Mortgage Borrower.  Upon request of Mezzanine Lender, Mezzanine Borrower shall cause Mortgage Borrower to post a cash deposit with Mezzanine Lender in an amount equal to Mezzanine Lender's anticipated costs and expenses in originating the New Mortgage Loan.

   Section 8.21.  Senior Loan.

      8.21.1. Compliance with Senior Loan Documents.  Mezzanine Borrower shall: (a) cause Mortgage Borrower to pay all principal, interest and other sums required to be paid by Mezzanine Borrower under and pursuant to the provisions of the Senior Loan Documents;

- 72 -

(b) cause Mortgage Borrower to diligently perform and observe all of the terms, covenants and conditions of the Senior Loan Documents on the part of Mortgage Borrower to be performed and observed, unless such performance or observance shall be waived in writing by Senior Lender; (c) promptly notify, or cause Mortgage Borrower to promptly notify, Mezzanine Lender of the giving of any notice by Senior Lender to Mortgage Borrower of any default by Mortgage Borrower in the performance or observance of any of the terms, covenants or conditions of the Senior Loan Documents on the part of Mortgage Borrower to be performed or observed and deliver to Mezzanine Lender a true copy of each such notice; (d) deliver, or cause Mortgage Borrower to deliver, a true, correct and complete copy of all notices, demands, requests or material correspondence (including electronically transmitted items) given or received by Mortgage Borrower, Mezzanine Borrower or any Guarantor to or from Senior Lender or its agent; and (e) require that Mortgage Borrower not enter into or be bound by any Senior Loan Documents or agree to any modifications of any existing Senior Loan Documents that are not approved by Mezzanine Lender.    Without limiting the foregoing, Mezzanine Borrower or Mortgage Borrower shall fund all reserves required to be funded pursuant to the Senior Loan Documents.

8.21.2. <u>Senior Loan Defaults</u>.

(a)    Without limiting the generality of the other provisions of this Agreement, and without waiving or releasing Mezzanine Borrower from any of its obligations hereunder, if there shall occur any Senior Loan Event of Default, Mezzanine Borrower hereby expressly agrees that Mezzanine Lender shall have the immediate right, without prior notice to Mezzanine Borrower, but shall be under no obligation: (i) to pay all or any part of the Senior Loan and any other sums that are then due and payable, and to perform any act or take any action on behalf of Mortgage Borrower as may be appropriate, to cause all of the terms, covenants and conditions of the Senior Loan Documents on the part of Mortgage Borrower to be performed or observed thereunder to be promptly performed or observed; and (ii) to pay any other amounts and take any other action as Mezzanine Lender, in its sole and absolute discretion, shall deem advisable to protect or preserve the rights and interests of Mezzanine Lender in the Mezzanine Loan and/or the Collateral.    All sums so paid and the costs and expenses incurred by Mezzanine Lender in exercising rights under this <u>Section 8.21</u> (including, without limitation, attorneys' fees and expenses) (A) shall constitute additional advances of the Mezzanine Loan to Mezzanine Borrower, (B) shall increase the then unpaid principal amount of the Mezzanine Loan, (C) shall bear interest at the Default Rate for the period from the date that such costs or expenses were incurred to the date of payment to Mezzanine Lender, (D) shall constitute a portion of the Outstanding Loan Obligations, and (E) shall be secured by the Pledge Agreement and the other Mezzanine Loan Documents.

(b)    Mezzanine Borrower hereby indemnifies Mezzanine Lender from and against all liabilities, obligations, losses, damages, penalties, assessments, actions, or causes of action, judgments, suits, claims, demands, costs, expenses (including, without limitation, attorneys' and other professional fees, whether or not suit is brought, and settlement costs) and disbursements of any kind or nature whatsoever which may be imposed on, incurred by or

- 73 -

asserted against Mezzanine Lender as a result of the foregoing actions. Mezzanine Lender shall have no obligation to Mezzanine Borrower or any other party to make any such payment or performance. Mezzanine Borrower shall not impede, interfere with, hinder or delay any effort or action on the part of Mezzanine Lender to cure any Senior Loan Event of Default or asserted Senior Loan Event of Default, or to otherwise protect or preserve Mezzanine Lender's interests in the Mezzanine Loan and the Collateral following the occurrence of a Senior Loan Event of Default or asserted Senior Loan Event of Default.

(c)    Any default or breach by Mortgage Borrower or Mezzanine Borrower under the Senior Loan Documents which is not cured prior to the expiration of any applicable grace, notice or cure period afforded to Mortgage Borrower under the Senior Loan Documents shall constitute an Event of Default, without regard to any subsequent payment or performance of any such obligations by Mezzanine Lender. Mezzanine Borrower hereby grants Mezzanine Lender and any person designated by Mezzanine Lender the right to enter upon the Property at any time following the occurrence and during the continuance of any Senior Loan Event of Default, or the assertion by Senior Lender that a Senior Loan Event of Default has occurred, for the purpose of taking any such action or to appear in, defend or bring any action or proceeding to protect Mezzanine Borrower's and/or Mezzanine Lender's interest. Mezzanine Lender may take such action as Mezzanine Lender deems necessary or desirable to carry out the intents and purposes of this subsection (including communicating with Senior Lender with respect to any Senior Loan defaults), without prior notice to, or consent from, Mezzanine Borrower. Mezzanine Lender shall have no obligation to complete any cure or attempted cure undertaken or commenced by Mezzanine Lender.

(d)    If Mezzanine Lender shall receive a copy of any notice of default under the Senior Loan Documents sent by Senior Lender to Mortgage Borrower, such notice shall constitute full protection to Mezzanine Lender for any action taken or omitted to be taken by Mezzanine Lender, in good faith, in reliance thereon. As a material inducement to Mezzanine Lender making the Mezzanine Loan, Mezzanine Borrower hereby absolutely and unconditionally releases and waives all claims against Mezzanine Lender arising out of Mezzanine Lender's exercise of its rights and remedies provided in this Section 8.21, except for Mezzanine Lender's gross negligence or willful misconduct. In the event that Mezzanine Lender makes any payment in respect of the Senior Loan, Mezzanine Lender shall be subrogated to all of the rights of Senior Lender under the Senior Loan Documents against the Property, in addition to all other rights it may have under the Mezzanine Loan Documents.

8.21.3. Senior Loan Estoppels. Mezzanine Borrower shall, from time to time, obtain from Senior Lender such certificates of estoppel with respect to compliance by Mortgage Borrower with the terms of the Senior Loan Documents as may be reasonably requested by Mezzanine Lender. In the event or to the extent that Senior Lender is not legally obligated to deliver such certificates of estoppel and is unwilling to deliver the same, then Mezzanine Borrower shall not be in breach of this provision so long as Mezzanine Borrower furnishes to Mezzanine Lender an estoppel executed by Mezzanine Borrower and Mortgage Borrower expressly representing to Mezzanine Lender the information requested by Mezzanine Lender

- 74 -

regarding compliance by Mortgage Borrower with the terms of the Senior Loan Documents. Mezzanine Borrower hereby indemnifies Mezzanine Lender from and against all liabilities, obligations, losses, damages, penalties, assessments, actions, causes of action, judgments, suits, claims, demands, costs, expenses (including, without limitation, attorneys' and other professional fees, whether or not suit is brought, and settlement costs) and disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against Mezzanine Lender based in whole or in part upon any fact, event, condition, or circumstances relating to the Senior Loan which was misrepresented in, or which warrants disclosure and was omitted from, such estoppel executed by Mezzanine Borrower and Mortgage Borrower.

8.21.4. <u>No Amendments to Senior Loan Documents</u>.  Without obtaining the prior written consent of Mezzanine Lender, Mezzanine Borrower shall not, and shall not cause, permit or suffer Mortgage Borrower or any other Loan Party or any other Person to, enter into or become bound by any agreements with Senior Lender (written or otherwise) with respect to the Senior Loan or the Mezzanine Loan that are not set forth on <u>Exhibit C</u> attached hereto.  Without obtaining the prior written consent of Mezzanine Lender, Mezzanine Borrower shall not, and shall not cause, permit or suffer Mortgage Borrower or any other Person executing the Senior Loan Documents to, amend, modify, cancel, terminate, supplement or waive any rights or benefits of Mortgage Borrower or any other Loan Party under any of the Senior Loan Documents or exercise any remedy available to Mortgage Borrower under the Senior Loan Documents or any right or election under the Senior Loan Documents.  Mezzanine Borrower shall provide, or shall cause Mortgage Borrower to provide, Mezzanine Lender with a copy of any amendment or modification to the Senior Loan Documents within five days after the execution thereof.

8.21.5. <u>Acquisition of the Senior Loan</u>.  Neither Mezzanine Borrower, Mortgage Borrower, any Guarantor or any Affiliate of any of them shall acquire or agree to acquire the Senior Loan, or any portion thereof or any interest therein, or any direct or indirect ownership interest in the holder of the Senior Loan, via purchase, transfer, exchange or otherwise, and any breach or attempted breach of this provision shall constitute an Event of Default hereunder.  If, solely by operation of applicable subrogation law, Mezzanine Borrower, Mortgage Borrower, any Guarantor or any Affiliate of any of them shall have failed to comply with the foregoing, then Mezzanine Borrower: (a) shall immediately notify Mezzanine Lender of such failure; and (b) shall cause any and all such prohibited parties acquiring any interest in the Senior Loan Documents: (i) not to enforce the Senior Loan Documents; and (ii) upon the request of Mezzanine Lender, to the extent any of such prohibited parties has or have the power or authority to do so, to promptly: (A) cancel the promissory note evidencing the Senior Loan, (B) reconvey and release the lien securing the Senior Loan and any other collateral under the Senior Loan Documents, and (C) discontinue and terminate any enforcement proceeding(s) under the Senior Loan Documents.

8.21.6. <u>Deed in Lieu of Foreclosure</u>.  Without the express prior written consent of Mezzanine Lender, Mezzanine Borrower shall not (and shall cause Mortgage Borrower to not) enter into any deed-in-lieu or consensual foreclosure with or for the benefit of Senior Lender or any of its Affiliates.  Without the express prior written consent of Mezzanine Lender, Mezzanine

- 75 -

Borrower shall not (and shall cause Mortgage Borrower to not) enter into any consensual sale or other transaction in connection with the Senior Loan which could diminish, modify, terminate, impair or otherwise affect the interests of Mezzanine Lender or Mezzanine Borrower, the Collateral or any portion thereof or any interest therein.

8.21.7. Refinancing of the Senior Loan. None of Mezzanine Borrower, Mortgage Borrower or any Affiliate of Mezzanine Borrower shall refinance the Senior Loan without the prior written consent of Mezzanine Lender.

Section 8.22. Rescission of Payments. If at any time all or any part of any payment made by Mezzanine Borrower or any other Loan Party in connection with this Agreement or any other Mezzanine Loan Document is rescinded or returned for any reason whatsoever (including, but not limited to, the insolvency, bankruptcy or reorganization of Mezzanine Borrower or any Loan Party) or is required to be paid over by Mezzanine Lender to the Senior Lender by reason of the terms of the Intercreditor Agreement, then the Outstanding Loan Obligations of Mezzanine Borrower or such Loan Party shall, to the extent of the payment rescinded or returned or paid over, be deemed to have continued in existence notwithstanding such previous payment, and the Outstanding Loan Obligations of Mezzanine Borrower or such Loan Party under the Mezzanine Loan Documents shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment had never been made.

Section 8.23. Bankruptcy. Mezzanine Lender, Mezzanine Borrower and each other Loan Party hereby acknowledge and agree that upon the filing of a bankruptcy petition by or against any Loan Party under any bankruptcy, insolvency or other similar law now or hereafter in effect, including, but not limited to, the Bankruptcy Code, any amounts held in the Mezzanine Cash Collateral Account and all other revenues of the Collateral (whether then already in the Mezzanine Cash Collateral Account, or then due or becoming due thereafter) shall be deemed not to be property of the bankrupt Loan Party's bankruptcy estate within the meaning of Section 541 of the Bankruptcy Code. In the event, however, that a court of competent jurisdiction determines that, notwithstanding the foregoing characterization of the funds in the Mezzanine Cash Collateral Account and the revenues of the Collateral, that the funds in the Mezzanine Cash Collateral Account and such revenues of the Collateral do constitute property of such Loan Party's bankruptcy estate, then Mezzanine Lender, Mezzanine Borrower and each other Loan Party hereby further acknowledge and agree that all such funds in the Mezzanine Cash Collateral Account and revenues of the Collateral, whether due and payable before or after the filing of the petition, are and shall be cash collateral of Mezzanine Lender. Mezzanine Borrower acknowledges that Mezzanine Lender does not consent to Mezzanine Borrower's use of such cash collateral and that, in the event Mezzanine Lender elects (in its sole discretion) to give such consent, such consent shall only be effective if given in writing signed by Mezzanine Lender. Except as provided in the immediately preceding sentence, Mezzanine Borrower shall not have the right to use or apply or require the use or application of such cash collateral unless (a) Mezzanine Borrower shall have received a court order authorizing the use of the same, and (b) Mezzanine Borrower shall have provided such adequate protection to Mezzanine Lender as shall be required by the bankruptcy court in accordance with the Bankruptcy Code.

NYC01_84033442_7_334016_00003 6/28/2005 3:59 PM

Section 8.24.  Sole Discretion of Mezzanine Lender.  Except as may otherwise be expressly provided to the contrary, wherever pursuant to the this Agreement or any other Mezzanine Loan Document or otherwise with respect to the Mezzanine Loan, Mezzanine Lender exercises any right given to it to consent or not consent, or to approve or disapprove, or any arrangement or term is to be satisfactory to Mezzanine Lender, the decision of Mezzanine Lender to consent or not consent, or to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory, shall be in the sole and absolute discretion of Mezzanine Lender and shall be final and conclusive.

Section 8.25.  Reasonableness.  If at any time Mezzanine Borrower believes that Mezzanine Lender has not acted reasonably in granting or withholding any approval or consent under the Mezzanine Loan Documents or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise with respect to the Mezzanine Loan, as to which approval or consent either Mezzanine Lender has expressly agreed to act reasonably, or absent such agreement, a court of law having jurisdiction over the subject matter would require Mezzanine Lender to act reasonably, then Mezzanine Borrower's sole remedy shall be to seek injunctive relief or specific performance and no action for monetary damages or punitive damages shall in any event or under any circumstance be maintained by Mezzanine Borrower or any other Loan Party against Mezzanine Lender.

Section 8.26.  Absolute and Unconditional Obligation.  Mezzanine Borrower and each other Loan Party acknowledges that the payment and performance of its obligations in accordance with the provisions this Agreement and the other Mezzanine Loan Documents is and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Agreement or any other Mezzanine Loan Document or such obligations or otherwise with respect to the Mezzanine Loan, and Mezzanine Borrower and each other Loan Party absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or cross-claim of any nature whatsoever with respect to this Agreement or any other Mezzanine Loan Document or such obligations or otherwise with respect to the Mezzanine Loan in any action or proceeding brought by Mezzanine Lender to collect the Outstanding Loan Obligations, or any portion thereof, or to enforce such obligations or to foreclose or otherwise realize upon the lien and security interest created by the Mezzanine Loan Documents.

Section 8.27.  Waiver of Statutory Rights.  Neither Mezzanine Borrower nor any Loan Party shall apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any similar laws now existing or hereafter enacted, in order to prevent or hinder the enforcement of the Mezzanine Loan Documents, but hereby waives the benefit of such laws to the full extent that it may do so under applicable law.  Mezzanine Borrower and each Loan Party for itself and all who may claim through or under it waives any and all right to have the property and estates comprising the Collateral marshaled and agrees that any court having jurisdiction over any exercise of Mezzanine Lender's remedies may order the Collateral sold as an entirety or in separate parts.  Mezzanine Borrower and each other Loan Party hereby waives for itself and

- 77 -

all who may claim through or under it, and to the full extent it may do so under applicable law, any and all rights of redemption from sale under any order or decree of foreclosure granted under any statute now existing or hereafter enacted.

ARTICLE IX

CONDOMINIUM PROVISIONS

References in this Article 9 to Mezzanine Borrower shall also include and apply to Mortgage Borrower, as the context shall require.

Section 9.1.    Condominium Conversion of the Property.

9.1.1.  Mezzanine Borrower shall, subject in all events to the terms and conditions of this Agreement, convert the Property to a condominium form of ownership (the "Condominium") in accordance with all applicable Legal Requirements, including, without limitation, the Florida Condominium Act, and shall record or file all Condominium Documents and obtain all approvals of Governmental Authorities necessary in order to (i) create a total of four hundred fifty-one (451) individual residential condominium units (each, a "Unit" and collectively, the "Units") within the Condominium, and (ii) commence the sale of the Units, as provided herein (collectively, the "Condominium Conversion").

9.1.2.  Prior to filing the prospectus for the sale of the Units (the "Prospectus") or any other documents relating to the Condominium Conversion with the Florida Division of Condominiums (the "Division") or offering any Unit for sale, Mezzanine Borrower shall deliver to Mezzanine Lender the following materials and obtain Mezzanine Lender's approval thereof:

(a)    A proposed prospectus for the sale of Units (with all exhibits required by Legal Requirements) in form for filing with the Division and all other Condominium Documents, which shall be acceptable to Mezzanine Lender in all respects and shall, among other things, provided (A) that Mezzanine Lender shall be entitled to written notification from the condominium association of any default by Mezzanine Borrower of any obligation under the Condominium Documents or, if the foregoing notice is not permitted by the Division, that copies of any notice to Mezzanine Borrower shall be addressed to Mezzanine Borrower, c/o Mezzanine Lender, at its address set forth herein, and (B) if permitted by the Division, that Mezzanine Lender shall have the right to cure such default. Mezzanine Lender shall have a period of twenty (20) days after delivery of said materials to Mezzanine Lender within which to approve or comment on the same. The term "Condominium Documents" shall mean all documents required to be recorded or filed with Governmental Authorities or delivered to prospective purchasers to establish, or otherwise relating to, condominium ownership and/or the sale of condominium units, including, without limitation, the question and answer sheet, the prospectus, the condominium declaration and by-laws, floor plans, plats, condominium plans, form contract of sale and any other report or disclosure statement and all exhibits, amendments or supplements thereto from time to time.

- 78 -